## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 7 |
| AMC Investors, LLC, | ) Case No. 08-12264 (CSS) |
| Debtor. | ) |
| | ) |
| In re | ) Chapter 7 |
| AMC Investors II, LLC, | ) Case No. 08-12265 (CSS) |
| Debtor. | ) |
| EUGENIA VI VENTURE HOLDINGS, LTD. ON BEHALF OF AMC INVESTORS, LLC AND AMC INVESTORS, II, LLC, | ) Adv. Pro. No. 11-52317 |
| Plaintiffs, | ) Adv. Pro. No. 11-52318 |
| vs. | ) |
| MAPLEWOOD HOLDINGS LLC, MAPLEWOOD MANAGEMENT LP, MAPLEWOOD PARTNERS LP, ROBERT V. GLASER, AND ROBERT J. REALE, | ) |
| Defendants. | ) |

### AKERMAN LLP'S MOTION FOR PROTECTIVE ORDER AND/OR MOTION TO QUASH SUBPOENA IN ADVERSARY PROCEEDING AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 26(c) and 45(c), made applicable to these

adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7026, the law firm of

Akerman LLP (f/k/a Akerman Senterfitt) ("Akerman"), counsel for adversary defendants

MapleWood Holdings LLC, MapleWood Management LP, MapleWood Partners LP, Robert V.

Glaser and Robert J. Reale (collectively, the "**Adversary Defendants**"), hereby moves for a

protective order relating to any and all documents sought pursuant to the Subpoena in Adversary Proceeding, dated July 24, 2013 (the "**Subpoena**"), served on Akerman by Plaintiff Eugenia VI Venture Holdings, Ltd. ("**Plaintiff**"), and/or an order quashing the Subpoena.

## I. INTRODUCTION

Through the Subpoena, Plaintiff is once again seeking to obtain a broad set of privileged documents relating to AMC Investors LLC and AMC Investors II, LLC (collectively, the "**Debtors**") directly from their former attorneys.[1] As Plaintiff is well-aware, however, the production of the requested documents is inappropriate for a number of reasons. First, and most significantly, the Court has <u>already ruled</u> that production to the Plaintiff of the documents sought is inappropriate given that the documents relate directly to the defense of an <u>ongoing litigation</u> (that is currently stayed due to this bankruptcy) between Plaintiff and the Debtors. This prior production was the subject of significant motion practice and multiple hearings before this Court.[2] Enough is enough, there simply is no justification for Plaintiff's third bite at the apple on issues adjudicated years ago. Second, even though the Debtors' attorney/client privilege has been waived by the bankruptcy trustee, the documents sought are also protected by the work product doctrine – a privilege held by the attorneys, not the client. Third, a portion of the documents sought are also protected by the joint defense privilege, and the other parties to that

---

[1] In addition to the Akerman Subpoena, Plaintiff has served a nearly identical subpoena on another of the Debtors' former law firms – Stevens & Lee.

[2] *See* Eugenia VI Venture Holdings, Ltd's Motion Pursuant to Bankruptcy Rule 2004 to Authorize Examination of Debtors and Production of Documents (D.I. 35); Objection To Eugenia Vi Venture Holdings, Ltd.'s Motion Pursuant To Bankruptcy Rule 2004 To Authorize Examination Of Debtors And Production Of Documents (D.I. 38); Eugenia Venture Holdings, Ltd.'s Motion to Enforce Compliance with This Court's Rule 2004 Order and Authorize the Production of Documents from Maplewood Entities Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 2004 Filed by Eugenia VI Venture Holdings Limited (D.I. 49); Debtors' Opposition To Motion To Enforce Compliance (D.I. 51); Eugenia VI Venture Holdings, Ltd.'s Reply in Support of Motion to Enforce Compliance With This Court's Rule 2004 Order and For Other Relief (D.I. 52); Order Granting in Part and Denying in Part Motion to Enforce Compliance and Authorizing Production of Documents from Maplewood Entities (D.I. 59).

joint defense arrangement have not agreed to waive the privilege. Finally, the requests are harassing, duplicative, overly broad and unduly burdensome, and it would Akerman and/or the Defendants tens of thousands of dollars to review and produce the requested documents.

### A.    Procedural Background

The parties to these adversary proceedings have been litigating against each other for over eight years, in countless different actions in numerous courts, regarding claims arising out of the same factual nucleus. The following is a summary description of the lawsuits and proceedings relevant to this discovery dispute:

*The Guaranty Lawsuit*

In September 2005, Plaintiff filed a lawsuit against the Debtors alleging that AMC Computer Corp. ("**AMC Computer**") defaulted on its debt obligations to Plaintiff and that the Debtors, who guaranteed the loan, were liable to Plaintiff for approximately $8.9 million (the "**Guaranty Lawsuit**"). *Eugenia VI Venture Holdings, Ltd. v. AMC Investors, LLC & AMC Investors II, LLC*, Index No. 603193/05, (N.Y. Sup. Ct.). Given that the Debtors are only holding companies required by Plaintiff (as lender to AMC Computer) to have no assets, to have no employees, and to do nothing but hold stock in AMC Computer, the Debtors did not contest liability and judgment was entered against them for $8.2 million. After the Debtors contested the amount of the judgment, the appellate court reversed the $8.2 million judgment against the Debtors, vacated the judgment, and remanded the case for a trial on damages. A bench trial on damages followed in New York Supreme Court, and a judgment in the amount of approximately $10.7 million was entered against the Debtors. The Debtors appealed that judgment, but on the eve of oral argument before the New York Appellate Division, that appeal was stayed when Plaintiff filed the instant involuntary bankruptcy petitions.

Plaintiff was represented in the Guaranty Lawsuit by Mitchell Karlan, Esq., of Gibson Dunn & Crutcher LLP – the same attorney and law firm that is representing Plaintiff in the above-captioned lawsuit. The Debtors were represented by Akerman Senterfitt.

*The Bankruptcy Proceeding and Rule 2004 Discovery*

These bankruptcy proceedings were commenced on September 30, 2008, when Plaintiff filed involuntary bankruptcy petitions against the Debtors (the "**Bankruptcy Proceeding**"). During the pendency of the Bankruptcy Proceeding, the United States Trustee appointed a Chapter 7 trustee to manage the Debtors. In the course of his duties, the Chapter 7 Trustee waived the Debtors' attorney/client privilege but concluded that he would not challenge any joint privilege asserted by the Adversary Defendants over documents and communications with the Debtors,[3] and Plaintiff conducted Rule 2004 discovery. During this process, Plaintiff sought <u>all</u> of the Debtors' documents, *including all attorney/client and work product protected documents relating to the Guaranty Lawsuit and the Bankruptcy Proceeding*. *See* Exhibit A to Eugenia VI Venture Holdings, Ltd.'s Motion Pursuant to Bankruptcy Rule 2004 to Authorize Examination of Debtors and Production of Documents at 7, a copy of which is attached hereto as Exhibit B. The Debtors (through their counsel – Akerman Senterfitt) produced all of the documents sought by Plaintiff, with the exception of: (1) the attorney/client (and/or joint defense) documents; and (2) the litigation files of the attorneys who represented the Debtors in connection with the Guaranty Litigation and the defense of the Bankruptcy Proceeding.

Not satisfied with the Debtors' production, Plaintiff moved to compel the production of withheld categories of documents pursuant to Rule 2004. Following briefing and hearing argument, the Court ruled that production of these categories of documents to Plaintiff was <u>not</u>

---

[3] *See* Transcript of Hearing on April 26, 2010 (the "Transcript") at 22:6-16. A copy of the Transcript is attached hereto as Exhibit A.

appropriate – even in the context of broad Rule 2004 discovery where Plaintiff was acting, in effect, on behalf of the estates, *see* Transcript at 13:16-16 (the court noting that "Eugenia acting under [Rule] 2004, in effect, on behalf of the estate") – given that Plaintiff was adverse to the Debtors in the Guaranty Lawsuit and that the production of such documents would essentially be handing over privileged documents to a directly adverse party in an ongoing litigation. *See* Transcript at 30:22-23 ("Because of the ongoing litigation, I believe that producing those documents to Eugenia is not appropriate").

### *The Adversary Proceeding*

Thereafter, over objection, Plaintiff was granted standing to assert breach of fiduciary duty claims on behalf of the Debtors against the Adversary Defendants. On June 3, 2011, Plaintiff filed a derivative complaint generally alleging that the Adversary Defendants breached their fiduciary duties allegedly owed to the Debtors (the "**Adversary Proceeding**").[4] Since that time, Plaintiff has been conducting fact discovery in the Adversary Proceeding, and issued the Subpoena to Akerman.

### B.     The Subpoena

The Subpoena essentially requests three broad categories of documents. First, the Subpoena requests all of the Debtors' documents in Akerman's possession, i.e., contracts, correspondence, corporate governance documents, etc. There is nothing, however, more to produce; all of these documents (with the exception of those protected by the joint defense privilege that the Trustee has conceded are appropriately withheld from production) have been produced by the Debtors to Plaintiff during the Rule 2004 production, including any attorney/client privileged documents that may fall into this category. In accordance with the

---

[4] The Adversary Defendants continue to maintain, *inter alia*, that Plaintiff's claims are time-barred.

Court's ruling, the Debtors completed their production on April 14, 2011. Planitiff did not move for reconsideration of the Court's ruling nor seek leave to take an appeal.

Second, the Subpoena requests all documents by and between Akerman and the Debtors, including documents relating to the Debtors' defense of the Guaranty Litigation and the Bankruptcy Proceeding. As with the first category, all of these documents were produced years ago, even attorney/client documents, with the exception of Akerman's work product, joint defense documents, and/or the documents contained in Akerman's litigation file relating to the defense of the Guaranty Lawsuit and/or the Bankruptcy Proceeding consistent with the Court's ruling on April 26, 2010.

Third, the Subpoena requests all documents between Debtors and the Adversary Defendants. Similar to the other two categories, this category of documents has also been produced, including attorney/client privileged documents, with the exception of documents protected by the joint defense privilege (which privilege, as the Trustee has agreed, can only be waived by all parties associated with the joint defense) and/or the documents which are contained in Akerman's litigation file. A copy of the Subpoena is attached hereto as Exhibit C.

Paring down the requests, and recognizing that the Debtors (through Akerman) have already produced all of the documents requested from them, the remaining documents at issue are Akerman's litigation files relating to the defense of the Guaranty Lawsuit and/or the Bankruptcy Proceeding, Akerman's internal work product documents, and documents protected by the joint defense privilege. Plaintiff is not entitled to these documents as set forth below. Further, in light of the fact that the Court has already ruled that Plaintiff is not entitled to production of these categories of documents, it is clear that the intent of the Subpoena is to

attempt to side-step the prior ruling made by this Court, and/or to harass the Adversary Defendants and their counsel.

Therefore, Akerman requests that the Court enter a protective order relating to any and all documents sought pursuant to the Subpoena, and/or an order quashing the Subpoena.

## II.  ARGUMENT

Rule 45 of the Federal Rules of Civil Procedure provides that "[o]n timely motion, the issuing court must quash or modify a subpoena that:  . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A).  For the following reasons, the Subpoena must be quashed.

### A.  This Court Has Already Ruled that Plaintiff is Not Entitled to the Discovery Sought in the Subpoena.

The Court should quash the Subpoena because the Court has already ruled on this exact issue, following extensive motion practice and two hearings, and determined that it would be inappropriate for Akerman's litigation file and/or work product to be produced to Plaintiff. Plaintiff should not be permitted to burden this Court or Akerman a third time for the same documents.

In the Bankruptcy Proceeding, the Court ruled that the Debtors were required to comply with Plaintiff's Rule 2004 discovery.  The Debtors did so and produced all documents (including certain attorney/client privileged documents) required under Rule 2004 – a much broader discovery standard than that governing the Subpoena.  The Debtors, however, objected to producing Akerman's work product, Akerman's litigation file, and joint defense privileged documents.  Plaintiff moved to compel these documents under Rule 2004, and the Bankruptcy Court held a hearing on the matter on April 26, 2010.

During that hearing, the Akerman attorney representing the Debtors explained to the Court that the Debtors had already produced all responsive documents, except the documents now sought by the Subpoena:

> I can tell Your Honor the full universe of other documents with respect to these debtors that exist that have not been produced, and they are all the documents, emails, correspondence pleadings, legal research by these debtors in defending the judgment that we're here about today, as well as this bankruptcy case. That's it. That's the only other thing that exists.

Transcript, at p. 10.

The Debtors' counsel went on to explain that all responsive documents protected by the joint defense privilege had been identified on the Debtors' privilege log. After hearing argument from both parties' counsel, the Court ruled as follows:

> Let's start with the documents that have been reviewed by the debtor and the real open issues I feel there are whether Eugenia should receive the documents, the attorney/client documents or the litigation file in connection with the judgment litigation and the defense of the involuntary.
>
> ***Because of the ongoing litigation, I believe that producing those documents to Eugenia is not appropriate***[5]

Transcript, at p. 30. (emphasis added).

This ruling could not be any clearer – Plaintiff is not entitled to these documents.[6] Given this prior ruling, particularly where the Court viewed Eugenia's discovery requests as being sought on behalf of the estates, *see id.*, the Subpoena cannot be viewed as anything less than an attempt to side step this Court's order and harass the Adversary Defendants and their counsel.

---

[5] The Court went on to order that MapleWood perform an additional computer search of its documents for additional responsive documents. That search was completed, and all additional relevant documents were produced on April 14, 2011.

[6] During the hearing, the Court acknowledged that, with respect to the Rule 2004 production, Plaintiff was acting on behalf of the Debtors' estate; therefore, there is no meaningful distinction now that Plaintiff has been granted formal standing in the Adversary Proceeding. *See* Transcript at 13:15-16 (the court noting that "Eugenia acting under [Rule] 2004, in effect, on behalf of the estate").

Because the Court has already ruled that the documents sought by the Subpoena should not be produced to Plaintiff given the fact that Plaintiff is an adverse party to the Debtors in ongoing (albeit stayed) litigation, the Court should quash the Subpoena.

**B.      The Documents Sought in the Subpoena are Protected by the Joint Defense Privilege.**

The Debtors were entities created to own the stock of AMC Computer, a portfolio company of the MapleWood private equity funds (the "Funds").  The Adversary Defendants are all associated with the Funds.  Given the multiple cases involving the Funds and their portfolio companies, mostly initiated by Plaintiff and its sister company, the individuals and entities associated with the Funds have been, and continue to, operate under a joint defense arrangement.

"In a joint representation, the joint privilege applies when multiple clients hire the same counsel to represent them on a matter of common interest." *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 479 (D. Del. 2012).  It is well-settled that "[w]aiving the joint privilege requires the ***consent of all joint clients***." *Id.*  (emphasis added).  While one client may unilaterally waive its own communications with the joint attorney where the communications concern only the waiving client, "[a] client may not. . . unilaterally waive the privilege of the other joint clients' communications or of its communications that relate to the other joint clients." *Id.*, at 479.

Here, while the bankruptcy trustee waived the Debtors' attorney/client privilege during the course of the Bankruptcy Proceeding, no other party associated with the Funds and operating under the joint defense arrangement, including the Adversary Defendants, have waived their

attorney/client privilege. Therefore, all documents protected by attorney/client privilege under the joint defense arrangement are still protected documents and are immune from discovery.[7]

**C. The Documents Sought in the Subpoena are Protected by the Work Product Doctrine.**

Even if the Court had not already ruled on the relevant subset of documents, Akerman's litigation file (and the related documents) are protected by the work product doctrine – protection that may only be waived by Akerman, not the Debtors. "The work product doctrine protects documents and theories prepared by an attorney in the course of an investigation if litigation is pending or anticipated." *Magnetar Techs. Corp.*, 886 F. Supp. 2d at 477. Although the attorney/client privilege belongs to the client and can only be asserted by the client, "the work product protection belongs to the attorney. As a result, an attorney, and not his client, would alone be capable of asserting the work product protection." *Id*. at 479; *see also Chimie v. PPG Indus, Inc.*, 218 F.R.D. 416, 421 (D. Del. 2003).

The fact that the Debtors have produced documents, and the fact that the trustee waived the attorney/client privilege does not change the analysis. "[T]he work product protection is not automatically waived through a client's (or former client's) production of documents since that protection is invoked by the attorney." *Magnetar*, 886 F. Supp. 2d at 484. Furthermore, "a waiver of the attorney-client privilege does not, in and of itself, constitute a waiver of the protections afforded by the work product doctrine." *Chimie*, 218 F.R.D. 416, 420-421 ("It does not follow that a waiver of the one necessarily means, or ought to mean, a waiver of the other. That approach 'fail[s] to consider that the protection stemming from the work product doctrine

---

[7] All privileged documents relating only to the Debtors have been produced to Plaintiff as part of the Rule 2004 production. The Court acknowledged that the documents protected by the joint defense privilege were identified on the Debtors' privilege log produced to Plaintiff as part of the Rule 2004 production. As noted above, at the April 26, 2010 hearing, counsel to the Trustee acknowledged the existence of the joint privilege and represented to the Court that the Trustee did not intend to challenge the assertion of joint privilege. Transcript at 22:6-16.

belongs to the professional, rather than the client, and that the efforts to obtain disclosure of opinion work product should be evaluated with particular care.'"); *see also Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 866 (3d Cir. 1994). The case law is clear that, even though the bankruptcy trustee waived the Debtors' attorney/client privilege, that waiver does not allow for the disclosure of Akerman's work product. Only Akerman has the ability to waive its work product, and Akerman has not (and will not) waive that protection.

Plaintiff may rely on cases such as *Lomas Financial Corp. v. Locke Purnell Rain Harrell*, 1999 WL 33495524 (D. Del. 1999), and *American Metrocomm Corp. v. Duane Morris & Heckscher, LLP, et al.*, 274 B.R. 641 (D. Del. 2002), for the proposition that where a debtor or trustee seeks work product of the debtors' attorneys in a bankruptcy proceeding, then they may be entitled to said work product. However, the rationale in *Lomas* and *American Metrocomm* is not applicable here. In those cases, the trustee (or party assigned debtor's interest) seeking the documents *was not directly adverse to the debtor* relating to the subject matter of the documents being sought, as is the case here.

As described above,[8] Plaintiff has clearly been, and continues to be, adverse to the Debtors with respect to the Guaranty Litigation. Notwithstanding, Plaintiff, shrouding itself under the pretext of acting "on behalf of the Debtors," [9] now seeks Akerman's litigation file and work product relating to the Guaranty Litigation – an ongoing lawsuit in which Plaintiff and the

---

[8] *See supra*, p. 3-4.

[9] Although Plaintiff has been conferred limited derivative standing, the true plaintiff remains Eugenia Venture VI Holding, Ltd., the Debtors' adversary in the Guaranty Lawsuit. As the Court is aware, Eugenia Venture VI Holding, Ltd. is the **only** creditor of either Debtor as the Debtors were simply holding companies with no operations or employees. *See* Schedule D of AMC Investors, LLC (D.I. 26, in Case No. 08-12264); Schedule D of AMC Investors II, LLC (D.I. 26 in Case No. 08-12265).

Moreover, unlike *Lomas* and *American Metrocomm*, Plaintiff is not the bankruptcy trustee; it is merely representing the Debtors' interests in the Adversary Proceeding. As ruled by the Court at the April 26, 2010 hearing, the Chapter 7 Trustee is entitled to review these materials – he is just not allowed to provide them to Plaintiff due to Plaintiff's status as a directly adverse party. Transcript, at 30:16-31:1.

Debtors are directly adverse.[10] In this scenario, where the work product relates to a subject matter where the debtor and trustee (or assignee seeking production) are <u>directly adverse</u>, the work product doctrine prevents the production of documents relating to the adverse matter. *See, e.g.*, *Foster v. Hill (In re Foster)*, 188 F.3d 1259 (10th Cir. 1999) (recognizing that a bankruptcy trustee would not be entitled to work product from a debtor's attorney if the trustee was adverse to the debtor in any way relevant to the work-product doctrine); *In re Rice*, 224 B.R. 464, 472 (Bankr. D. Or. 1998) (refusing a Ch. 7 trustee's demand for the turnover of an attorney's work product when the trustee and debtor held adversarial positions).[11]

Indeed, the Court predicated its previous rejection of Plaintiff's request for these same documents on this clear adversity of interests. Given this prior ruling and the adverse interests of the Plaintiff and the Debtors relating to the subject work product, this Court should quash the Subpoena relating to these documents.

D.     **The Discovery Sought in the Subpoena is Harassing, Duplicative, Overly Broad and Unduly Burdensome.**

Even if the documents are discoverable (which they are not), the Subpoena is harassing, duplicative, overly broad and unduly burdensome. The Federal Rules require that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative. . .; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit[.]" Fed. R. Civ. P. 26(b)(2)(C). The Rules further provide that "[t]he court may, for good cause, issue an order to

---

[10] Moreover, Plaintiff is represented by the same lawyer in both lawsuits; therefore, not only would such a production result in the adverse party receiving the work product, but it would also result in the exact same attorney being provided with his opponent's litigation strategy.

[11] This result is dictated by the objective of the work product doctrine, which is intended to further "society's interest in protecting the adversary system by shielding litigants' work product from their opponents, and thus freeing lawyers to create such materials without fear of discovery and exploitation." *Foster*, 188 F.3d at 1272.

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1); *see also United States v. Federation of Physicians and Dentists, Inc.*, 63 F. Supp. 2d 475, 478 (D. Del. 1999) ("The Court has the discretion to issue a protective order to modify the request or prevent the discovery, if necessary to protect the person served with the request from 'annoyance, embarrassment or oppression, or undue burden or expense.'").

Here, Akerman formerly represented the Debtors and continues to represent the Adversary Defendants in multiple litigations – most of which were initiated by Plaintiff or its affiliates – and transactions over the span of nearly a decade. Numerous Akerman attorneys have participated in these representations. Moreover, on behalf of the Debtors and related MapleWood entities, Akerman has produced tens of thousands of documents to Plaintiff and its affiliated entities in approximately fifteen different lawsuits relating to the Funds and their portfolio companies. The only arguably relevant documents that Akerman possesses with respect to the Debtors, or the Adversary Defendants, are the documents which have been produced to Plaintiff, as well as Akerman's own internal work product and joint defense documents relating to the various lawsuits. The Subpoena is nothing more than a duplicative request for documents, and an inappropriate (and harassing) request for work product and documents protected by joint privilege.

Additionally, requiring Akerman to conduct a search, review, and produce documents that are duplicative of those documents already produced in the 2004 production would require the review of a large number of hard document files (many of which will need to be retrieved from storage) as well as electronic files pertaining to numerous custodians. To review the electronic files, Akerman would be required to retain an e-discovery vendor to search Akerman's

files to create a reviewable subset. Then, attorneys would need to review each and every email for relevancy and privilege – an extensive review given work product protection, joint defense protection, and the large amount of documents dating back to at least January 1, 2000, all of which have previously been searched and produced if not covered by work product or joint privilege.

Although Akerman previously represented the Debtors and currently represents the Adversary Defendants, due to the breadth of the requests and the extended time period that is the subject of the requests, the costs associated with this production, including e-discovery hard costs and attorney review time could potentially reach tens of thousands of dollars. To the extent that the Court requires the production of these documents, Plaintiff should be required to pay for any and all fees and costs associated with the retrieval, review and production of the documents. *See* Fed. R. Civ. P. 45(c)(3)(C)(ii) (allowing court to ensure subpoenaed person will be reasonably compensated for compliance).

## Local Rule 7026-1(c) Certification

Undersigned counsel certifies that he has conferred, unsuccessfully, with Plaintiff's counsel in an attempt to resolve this discovery issue prior to filing this Motion.

### III.  CONCLUSION

For the foregoing reasons, Akerman respectfully request that the Court enter an order: (a) issuing a protective order relating to any and all documents sought pursuant to the Subpoena; (b) quashing the Subpoena; and (c) granting any further relief that the Court deems just and necessary.[12]

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Dated:  November 8, 2013

*/s/ Curtis S. Miller*

Curtis S. Miller, Esq. (Bar No. 4583)
1201 North Market Street
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email: CMiller@MNAT.com

and

Brian P. Miller, Esq.
AKERMAN LLP (f/k/a Akerman Senterfitt)
One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Telephone: (305) 374-5600
Facsimile:  (305) 374-5095
Email: brian.miller@akerman.com

7539958.3

---

[12] Pursuant to Local Rule 7012-1, Akerman does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.