# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| AMC Investors, LLC, | ) | Case No. 08-12264 (CSS) |
| Debtor. | ) | |

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| AMC Investors II, LLC, | ) | Case No. 08-12265 (CSS) |
| Debtor. | ) | |

| | | |
|---|---|---|
| EUGENIA VI VENTURE HOLDINGS, LTD. ON BEHALF OF AMC INVESTORS, LLC AND AMC INVESTORS, II, LLC, | ) ) ) | Adv. Pro. No. 11-52317 |
| Plaintiffs, | ) ) | |
| vs. | ) | Adv. Pro. No. 11-52318 |
| MAPLEWOOD HOLDINGS LLC, MAPLEWOOD MANAGEMENT LP, MAPLEWOOD PARTNERS LP, ROBERT V. GLASER, AND ROBERT J. REALE, | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES
## AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7037, Defendants

MapleWood Holdings LLC, MapleWood Management LP, MapleWood Partners LP, Robert V.

Glaser and Robert J. Reale (collectively, "Defendants"), by and through their attorneys, hereby

move this Court for the entry of an order compelling Plaintiff Eugenia VI Venture Holdings, Ltd.

("Plaintiff") to (a) respond to Interrogatory Nos. 10-13 of Defendants' First Set of Interrogatories

and respond to Request Nos. 1-4, 21-22, 26-30, 31-37 and 39-43 of Defendants' First Request for Admissions, and (b) compel Ekkehart Hassels-Weiler to answer questions at his deposition relating to his knowledge regarding the condition of AMC Computer Corp., as well Plaintiff's relationship with Casita LP. In support of this Motion, Defendants state as follows:

## I. INTRODUCTION

### A. Factual Background

For the better part of a decade, Plaintiff and its sister company, Casita LP ("Casita"), have been filing lawsuits against Defendants relating to the May 2005 demise of AMC Computer Corp. ("AMC Computer"), a portfolio company of private equity funds associated with Defendants. The majority of the stock in AMC Computer was owned by two investment entities – AMC Investors, LLC and AMC Investors II, LLC (collectively, the "Debtors"), until November 2002, after which, as the result of a recapitalization done at the insistence of Plaintiff, the Debtors continued to own approximately one-third of the common equity. Plaintiff was a lender to, and, after January 2003, a minority shareholder of, AMC Computer. Casita, its sister company, was an investor in the private equity fund which invested into AMC Computer, and also separately invested $2.5 million into AMC Computer through equity in Debtor AMC Investors, LLC. While technically separate legal entities, both Plaintiff and Casita are operated and managed by the same individuals - Ekkehart Hassels-Weiler and David Alexander – through a management entity called Eagle Advisors.

First, Plaintiff sued Defendants Glaser and Reale for fraud and breach of fiduciary duty with respect to AMC Computer (the "Eugenia Lawsuit"). Plaintiff lost the Eugenia Lawsuit on summary judgment in the District Court for the Southern District of New York. The District Court outright dismissed all claims, including the breach of fiduciary duty claim, because

Plaintiff could not prove any harm to AMC Computer from any alleged improprieties. *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F.Supp.2d 105 (S.D.N.Y. 2008). The United States Court of Appeals for the Second Circuit affirmed that decision. *Eugenia VI Venture Holdings, Ltd. v. Glaser et al.*, 370 F. App'x 197 (2d Cir. 2010).

While that first suit was pending, Casita brought a derivative action in New York Supreme Court against Defendants (with the exception of Defendant Reale) premised, in part, on the same allegations of accounting fraud at AMC Computer. That lawsuit is still pending.

Despite losing the Eugenia Lawsuit and the existence of the ongoing Casita Lawsuit, Plaintiff took a third shot at asserting the same breach of fiduciary duty claims relating to AMC Computer. On May 19, 2011, Plaintiff requested standing in the involuntary bankruptcy proceeding it initiated to bring nearly identical claims for fiduciary duty, and aiding and abetting breach of fiduciary duty, against Defendants relating to the operation of AMC Computer (the "Adversary Claims"). This request was granted, over Defendants' objections, and the Adversary Claims were asserted immediately thereafter.

In defending against the Adversary Claims, Defendants have asserted a number of legal defenses, including but not limited to: (1) Plaintiff's claims are barred by the three-year statute of limitations to bring breach of fiduciary duty claims under Delaware law; and (2) Plaintiff's claims are barred by collateral estoppel because they were fully litigated in federal court in New York where Plaintiff lost on summary judgment.

## B. Discovery Requests

On April 1, 2013, Defendants propounded their First Request for Admissions (the "Requests") and First Set of Interrogatories (the "Interrogatories") upon Plaintiff. (A true and correct copy of the Requests is attached hereto as **Exhibit "A,"** and a true and correct copy of

the Interrogatories is attached hereto as **Exhibit "B"**). Included among the Requests and Interrogatories are a number of requests aimed at discovering facts and information relating to the statute of limitations and collateral estoppel defenses.

Specifically, the Requests and Interrogatories at issue seek information relating to: (1) Plaintiff's knowledge (and the timing of when it gained that knowledge) regarding the condition of AMC Computer; and (2) Plaintiff's relationship with Casita. This discovery relates obviously to the factual circumstances which would tend to prove (and/or disprove) Defendants' statute of limitations and collateral estoppel arguments, as well as the imputation of knowledge between Casita and Plaintiff. Defendants are entitled to discover this type of information.

Even so, Plaintiff has objected to all of the Interrogatories and the Requests relating to these two categories, taking the position that its knowledge is irrelevant since it is bringing claims "on behalf of the Debtors." (A true and correct copy of Plaintiff's Objection and Responses to the Requests and the Interrogatories is attached hereto as **Exhibit "C"**).

Plaintiff is wrong. Plaintiff knew of the actions at AMC Computer forming the basis of its claims no later than May 2005. Indeed, according to Plaintiff, in May 2005 telephone conversation, Defendants told Plaintiff and Casita (through their representative Eagle Advisors) that they had concern regarding potential accounting irregularities at AMC Computer. In possession of this knowledge, in early June 2005, Plaintiff had the opportunity to take total control of the Debtors – and the opportunity to assert its bankruptcy and/or adversary claims at that point in time. Specifically, in early June 2005, all of the equity interests in the Debtors were offered to Plaintiff (or its designated affiliate). This offer was rejected. This offer and rejection was memorialized on June 6, 2005 in a letter from Defendants' attorney to Plaintiff's attorney stating as follows:

Since your client Eugenia appears to be the real party in interest as it relates to any actions which may be taken by the shareholders of AMC Computer, and in anticipation of the recently received demand by your client with respect to the guaranty obligations of AMC I and AMC II [the Debtors] relating to the Eugenia loan to AMC Computer, AMC I and AMC II had offered to voluntarily assign their equity interests in AMC I and AMC II to Eugenia or its designated affiliate to facilitate Eugenia's collection efforts. With respect to the guaranty, it is our understanding that you are aware that AMC I and AMC II were formed specifically for the purpose of making an investment in AMC Computer and do not have any significant assets other than the shares of AMC Computer which they own. As I understand it, you rejected that offer, stating that under the terms of the Pledge Agreement executed by AMC I and AMC II to secure the above-described guaranty obligations, Eugenia could vote the shares of AMC Computer pledged as security, and accordingly any such conveyance was therefore unnecessary. You should note that we do not believe that the Pledge Agreement provides Eugenia the ability to vote the shares controlled by the Proxy; it merely permits Eugenia to vote the shares that have been pledged.

In a further effort to assist Eugenia in securing its collateral, AMC I and AMC II renew their offer described in the preceding paragraph. *Also, MapleWood and its affiliates would be willing to convey to Eugenia or its designated affiliate their equity interests in AMC I and AMC II. This would provide Eugenia majority control of AMC I and AMC II, with all attendant rights* including possible rights to exercise the Proxy granted by Mr. Chabra and certain of his affiliates to AMC I and AMC II. This could permit Eugenia to have voting control of a majority of the outstanding voting shares of AMC Computer.[1] (emphasis added).

Accordingly, as of June 6, 2005, Plaintiff had the opportunity to take complete control of the Debtors, which would have necessarily given them the legal right to bring suit on behalf of the Debtors relating to AMC Computer, or petition for bankruptcy. They refused to take advantage of that opportunity. In addition, Plaintiff's affiliate, Casita, who was a shareholder of Debtor AMC Investors, LLC also had the right to bring a derivative suit at that time. Instead, Plaintiff chose to wait more than three years to bring suit or file the involuntary bankruptcy petition. Plaintiff's claims are time barred and Defendants are entitled to discovery to develop their statute of limitations defense.

---

[1] A copy of the June 6, 2005 Letter from T. Klinghoffer to M. Karlan is attached hereto as **Exhibit "D."**

Moreover, Plaintiff and Casita (which is a shareholder of one of the Debtors) are closely related affiliates run by the same two individuals: Ekkehart Hassels-Weiler and David Alexander. The knowledge of either Hassels-Weiler or Alexander, no matter which hat they were wearing at the time, was therefore gained by both Plaintiff and Casita. If either of these individuals (or Casita) had pertinent knowledge, then Plaintiff had that same knowledge, and could have asserted its claims at that time. It is clear that Plaintiff and Casita's knowledge is vital to Defendants' defenses, particularly, the statute of limitations defense. Plaintiff cannot hide behind thin procedural veils to argue that their knowledge/actions are completely irrelevant to the claims asserted.

In addition to refusing to respond to the Interrogatories and the Requests, Plaintiff's counsel has also affirmatively stated that he will instruct Hassels-Weiler not to answer any questions relating to these topics areas at this upcoming deposition. Plaintiff's counsel makes this assertion even though Plaintiff's counsel has already allowed Alexander to testify as to nearly all of these topic areas without an instruction not to answer, nor a substantive objection.

Despite the undersigned's efforts to resolve this matter without burdening the Court, Plaintiff has refused to reconsider its objections. Therefore, Defendants request that this Court grant the instant motion, strike Plaintiff's objections, require Plaintiff to respond to the referenced Requests and Interrogatories, and compel Hassels-Weiler to answer deposition questions on these topic areas.

## II.  ARGUMENT

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and "[r]elevant information need not be admissible at trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence." (emphasis added). Thus, a district court has broad discretion to compel discovery. *See* Fed. R. Civ. P. 37. Once the moving party has demonstrated the material sought is relevant, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Robinson v. Marsh*, 2013 WL 183377, *3 (M.D. Pa. 2013) (citations omitted).

Plaintiff cannot meet this burden because Defendants have proved that the discovery is reasonable and their requests for information are relevant to this litigation, especially to the defenses asserted by Defendants.

### A. PLAINTIFF HAS IMPROPERLY OBJECTED TO REQUEST FOR ADMISSION NOS. 1-4, 21-22, 26-28, 31-37 & 39.

Request Nos. 1-4, 21-22, 26-28, 31-37 and 39 are aimed towards discovering when Plaintiff had (or should have had) knowledge regarding the alleged breaches of fiduciary duty at AMC Computer, as well as information relating to Plaintiff's right/opportunity to take control of the Debtors in June 2005 (which would have provided Plaintiff with voting control over AMC Computer). Specifically, the requests seek the following:

1. Admit that, before September 30, 2005, you suspected fraudulent activity occurred in AMC Computer.

2. Admit that Glaser alerted you of his "concerns" regarding possible accounting mis-statements at AMC Computer on or about May 5, 2005.

3. Admit that, prior to May 5, 2005, you had information at your disposal that would alert you to the fraudulent activity you came to believe was occurring at AMC Computer.

4.  Admit that you served your Default Notice because you suspected fraudulent activity to be occurring at AMC Computer.

21. Admit that you knew all of the facts alleged in paragraph 13 through 33, 35 through 40, and 42 through 51 of the Adversary Complaints prior to May 5, 2008.

22. Admit that you knew all of the facts alleged in paragraph 52 of the Adversary Complaints prior to May 5, 2008.

26. Admit that you had sufficient information to file the Involuntary Petitions before May 5, 2008.

27. Admit that, prior to the Default Notice, you knew that the Defendants "managed the Debtors and effectively ran [AMC] Computer" as alleged in paragraph 1 of the Adversary Complaints.

28. Admit that, under the terms of the Pledge Agreement, you could vote the shares of AMC Computer pledged as security from and after June 3, 2005.

31. Admit that an assignment of the Debtors' equity interests would have provided you with majority control of AMC Investors and AMC Investors II.

32. Admit that an assignment of the Debtors' equity interests would have permitted you to have voting control of AMC Computer.

33. Admit that you rejected the Debtors' offer to assign their equity interests in AMC Investors and AMC Investors II to you.

34. Admit that Management offered to convey the Funds' equity interests in the Debtors to you before June 30, 2005.

35. Admit that you rejected Management's offer to convey the Funds' equity interests in the Debtors to you.

36. Admit that an assignment or conveyance of the Debtors' equity interests would have given you standing, prior to May 5, 2008, to commence litigation against the Defendants asserting the claims alleged in the Adversary Complaints.

37. Admit that, prior to May 5, 2008, you believed that Defendants breached their fiduciary duties to the Debtors.

39. Admit that from July 18, 2007 forward you had the ability to file involuntary bankruptcy petitions against the Debtors.

(*See* Exhibit "A").

In response to these requests, Plaintiff issued the following blanket response: "Plaintiffs object to Request for Admission Nos. 1-4, 21 and 22, 27 and 37, on the grounds that they are irrelevant. Plaintiffs bring this action on behalf of Debtors, and do so with the permission and authority of the Court. Eugenia is a nominal party only. Eugenia's knowledge, suspicions, and actions have no relevance to the Adversary Proceedings."[2] (*See* Exhibit "C").

To the contrary, such evidence is directly relevant to Defendants' defenses. The facts show that as of May 5, 2005, Plaintiff was made aware of the alleged accounting mis-statements at AMC Computer. The facts also show that as of June 3, 2005, Plaintiff put the Debtors into default on the guaranties.[3] The facts further show that as of June 6, 2005, Plaintiff was offered complete control over the Debtors – facts evidenced by the June 6, 2005 letter from Klinghoffer to Karlan. Instead of accepting the Debtors' equity, gaining complete voting control over Debtors, and initiating their lawsuit (and/or bankruptcy petition) at that time, Plaintiff rejected this unconditional offer. Given this turn of events, as of June 6, 2005, Plaintiff had the required knowledge, and the means necessary, to file not only the involuntary petition, but also the adversary claims. For whatever reasons, Plaintiff chose not to do so. Instead, Plaintiff waited over three years – without justification – to file those claims. Now, Plaintiff cannot hide behind its claim that it is a "nominal plaintiff" to avoid discovery into case dispositive defenses, such as Defendants' statute of limitations defense.

Additionally, there is no dispute that Plaintiff and Casita are closely related entities. They are both investment arms of German billionaire, Hans Werner Hector, and both are

---

[2] Plaintiff's actual response to these Requests is entitled "Response to Request for Admission Nos. 1-4; 21-22; 26-28; 31-37; 39;" however, the body of the response only references Nos. 1-4, 21 and 22, 27 and 37. *See* Exhibit "C." It is unclear whether this is an administrative error or if Plaintiff meant to only reference those requests.

[3] *See* June 3, 2005 Default Notice Letter, a copy of which is attached hereto as **Exhibit "E."**

managed and operated by Eagle Advisors, Inc., Ekkehart Hassels-Weiler[4] and David Alexander[5] (Eagle Advisors is Mr. Hector's family office; it has no other clients). Furthermore, Plaintiff was a shareholder of AMC Computer, and Casita was a shareholder of AMC Investors, LLC – one of the Debtors. This inter-relationship is highly relevant because, given its status as a shareholder, Casita had the legal authority to, and could have, filed a derivative lawsuit relating to AMC Computer, on behalf of Debtor AMC Investors, LLC, at any time prior to the expiration of the limitations period.

Moreover, all of the information sought in these Requests is aimed at discovering what Plaintiff – more specifically what Hassels-Weiler and Alexander – knew and when they knew it. This is vitally important because whatever Hassels-Weiler and Alexander knew, both Plaintiff and Casita knew. *See In re Wayport, Inc. Litig.*, No. 4167-VCL, 2013 WL 5345477 (Del. Ch. 2013) (partners of a venture capital firm had knowledge regarding false representations which was imputed to the firm); *Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 671 n. 23 (Del. Ch. 2006) ("[I]t is the general rule that knowledge of an officer or director of a corporation will be imputed to the corporation."); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005) (imputing knowledge of member-employees to limited liability companies); *Nolan v. E. Co.*, 241 A.2d 885, 891 (Del. Ch. 1968) ("Knowledge of an agent acquired while acting within the scope of his authority is imputable to the principal.").

As set forth more fully above, if Plaintiff knew (through Hassels-Weiler, Alexander or Casita) of AMC's alleged accounting mis-statements as of May 5, 2005, and had the opportunity to take full control of the Debtors as of June 6, 2005, then the statute of limitations on these claims began to run at that point. *See In re Marvel Entm't Grp., Inc.*, 273 B.R. 58, 76-77

---

[4] Hassels-Weiler is the President of Eagle Advisors, and he also owns a limited partnership interest in Casita.
[5] Alexander is the Senior Vice-President of Eagle Advisors, and he is also the general partner of Casita.

(holding that none of the tolling doctrines applied to save a reorganized debtor's otherwise time-barred fiduciary duty claims because its former minority shareholders possessed inquiry notice of the claims). In any event, Defendants are entitled to discover this information to prove its statute of limitations defense.

## B. PLAINTIFF HAS IMPROPERLY OBJECTED TO INTERROGATORIES NOS. 10-13.

Interrogatories Nos. 10-13 are also aimed towards discovering when Plaintiff knew or should have known of the alleged breaches of fiduciary duties and when Plaintiff could have first asserted claims for these alleged breaches. Specifically, the interrogatories seek the following:

10. Identify all events which prompted you to send the Default Notice.

11. Identify any and all actions by Defendants that prevented you from filing the Involuntary Petitions before May 5, 2008.

12. Identify any and all actions by Defendants that prevented you from seeking to bring derivative claims on behalf of the Debtors before May 5, 2008.

13. Identify any and all actions by Defendants that prevented Casita from seeking to bring derivative claims on behalf of the Debtors before May 5, 2008.

(*See* Exhibit "B").

In response to each of the above-listed interrogatories, Plaintiff issued the same boiler-plate objection: "Plaintiffs object to these Interrogatories as irrelevant." (*See* Exhibit "C").

Because this discovery is relevant to Defendants' statute of limitations defense, for the same reasons set forth above, and in light of the broad scope of discovery under the Federal rules, Plaintiff's "relevancy" objection is indefensible. Plaintiff should be required to answer these interrogatories.

## C.    PLAINTIFF HAS IMPROPERLY OBJECTED TO REQUESTS FOR ADMISSION NOS. 40-43.

Requests Nos. 40 through 43 are aimed towards discovering evidence regarding the relationship between Plaintiff and Casita, including the derivative claims already filed by Casita for alleged breaches of fiduciary duty relating to AMC Computer. Specifically, the requests seek the following:

40.    Admit that Casita is an affiliate of Eugenia.

41.    Admit that Casita is a member of AMC Investors.

42.    Admit that Casita had standing to seek to bring a derivative action on behalf of AMC Investors prior to May 5, 2008.

43.    Admit that Casita filed a derivative action against Glaser, Holdings, Management and Partners on or about March 13, 2007 on behalf of MapleWood Equity Partners (Offshore) Ltd.

(*See* Exhibit "A").

In response to these requests, Plaintiff issued the following response: "Plaintiffs object to Interrogatory [sic] Nos. 40-43 on the grounds that they are irrelevant. Casita is not a party to this action, and its conduct is not at issue." (*See* Exhibit "C").

This objection is unfounded for a number of reasons. First, as set forth above, Plaintiff and Casita are affiliates which are run by the exact same individuals – Hassels-Weiler and Alexander. These two individuals cannot put on their "Casita Hat" and distance themselves from everything they knew in their roles with Plaintiff.

Second, where a judgment has been rendered against a shareholder in one derivative lawsuit, re-litigation of the claim is precluded as to other shareholders – even the shareholders who did not bring the prior action. *See Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981) ("In shareholder actions arising under Fed. R. Civ. P. 23.1, parties and their privies include the

corporation and all non-party shareholders."); *Cramer v. Gen. Tel & Elec. Corp.*, 582 F.2d 259, 266-67 (3d Cir. 1978) (judgment against shareholder in one derivative case precluded relitigation of the claim by other shareholders); *LeBoyer v. Greenspan*, 2006 WL 2987705, at *3 (C.D. Cal. 2006) (giving prior state ruling on demand futility issue preclusive effect against federal derivative plaintiffs, concluding "[t]he differing groups of shareholders who can potentially stand in the corporation's stead are in privity for the purposes of issue preclusion" and "[w]ere the demand futility issue not final and on the merits it could be infinitely litigated in subsequent suits by successive individual plaintiffs suing in a derivative capacity"); *Henik v. LaBranche*, 433 F. Supp. 2d 372, 380 (S.D.N.Y. 2006) (under both res judicata and collateral estoppel, judgment on demand futility in derivative suit has preclusive effect for corporation and shareholders, including shareholders who did not bring prior action).

Here, Plaintiff has already lost, in New York federal court, a derivative lawsuit relating to the alleged fraud and breach of fiduciary duty at AMC Computer.[6] Additionally, Casita is an affiliated entity, and Casita had the ability to, and could have, filed a derivative claim on behalf of Debtor AMC Investors, LLC within the requisite limitations period. As such, the knowledge of both of these entities is highly relevant to Defendants' collateral estoppel and statute of limitations defenses.

Accordingly, the information sought in these requests is relevant and must be provided by Plaintiff.

---

[6] Moreover, Casita is currently prosecuting another derivative lawsuit against most of the Defendants in New York state court in which it re-asserted many of the same allegations regarding the activities at AMC Computer. However, after discovery was completed, in its Response Memorandum to Defendants' Summary Judgment Motion, Casita withdrew its claims for damages relating to the purported fraud at AMC Computer, acknowledging that the New York federal court judge found that Plaintiff could not prevail in the Eugenia litigation because it had failed to prove all the elements of its fraud cause of action.

13

## C. PLAINTIFF HAS NOT ADEQUATELY RESPONDED TO REQUESTS FOR ADMISSION NOS. 29 AND 30.

Requests Nos. 29 and 30 are aimed towards discovering additional facts relating to Plaintiff's right to take control of the Debtors as of June 6, 2005. Specifically, the requests seek the following:

29. Admit that you received the June 6, 2005 letter attached hereto as Exhibit A.

30. Admit that the Debtors offered to assign their equity interests in AMC Investors and AMC Investors II to you prior to June 30, 2005.

*(See* Exhibit "A").

In response to these requests, Plaintiff issued the following response: "In response to Interrogatory Nos. 29 and 30, Plaintiff states that they have not been able to locate a copy of Exhibit A that was attached to the Interrogatories, but will not contest testimony by the author that he sent it." *(See* Exhibit "C").

This response is clearly inadequate. Plaintiff's response only states that they will not contest testimony that the letter was sent, but does not admit that it was received (or stipulate that it was received). Furthermore, Plaintiff's response entirely neglects to respond to Request 30. Plaintiff should be required to provide complete responses to these two requests.

## D. HASSELS-WEILER MUST BE REQUIRED TO ANSWER QUESTIONS RELATING TO THESE DISCOVERY TOPICS AT HIS UPCOMING DEPOSITION.

In the undersigned's "meet and confer" conferences with Plaintiff's counsel, Plaintiff's counsel has affirmatively stated that he will instruct Hassels-Weiler, at his upcoming deposition,[7] not to answer questions relating to Plaintiff's knowledge (and the timing of when it gained that

---

[7] Indeed, given this affirmative representation, the undersigned agreed to postpone the deposition, which was scheduled to take place in late October 2013, until the Court has ruled upon these discovery issues.

14

knowledge) regarding the condition of AMC Computer or questions relating to Plaintiff's relationship with Casita.

For the same reasons that the written discovery relating to these topics is highly relevant, Hassels-Weiler must be compelled to testify with respect to these topics. Defendants must be allowed an opportunity to conduct discovery sufficient to support its legal defenses. Hassels-Weiler's testimony in this regard is key, given that he is President of Eagle Advisors – the firm which makes all the investment decisions for both Plaintiff and Casita.

Furthermore, Plaintiff has already allowed Defendants' to question Alexander (Vice President of Eagle Advisors and General Partner of Casita) on these topic areas *without objection and/or instruction not to answer*. At his deposition in August 2013, Alexander was allowed to answer questions on nearly every topic which is the subject of this motion. The following are examples of the questions Alexander was allowed to answer (without substantive objection):

### Questions Regarding MapleWood's Disclosure to Eugenia

Q:    Do you remember having a conversation with Bob Glaser in May of 2005 regarding AMC Computer and the borrowing base certificates?

A:    No, I do not.

Q:    Do you recall ever discussing that subject with Mr. Glaser?

A:    No, I do not.

Q:    Do you recall ever discussing that subject with anyone else from MapleWood?

A:    The borrowing base certificates?

Q:    Correct.

A:    MapleWood, um, I don't recall.

Q:     Do you recall any conversation with Mr. Glaser in 2005 where he discussed any kind of problem taking place at AMC Computer Corp.?

A:     No, I do not.

Q:     Do you recall that Eugenia declared a default on the AMC Computer credit facility in June of 2005?

A:     I know they did. I don't know the exact date.

Q:     Okay, fair enough, but you do recall that Eugenia declared a default on the AMC Computer credit facility at some point in time, correct?

A:     At some point.

Q:     Do you remember whether it was in 2005?

A:     Uh, I don't recall.

*See* August 21, 2013 Deposition Transcript of David Alexander ("Alexander Depo."), at 38:15-39:23, a copy of which is attached hereto as **Exhibit "F."**

### Questions Regarding Suspicion of Fraud at AMC Computer

Q:     Do you know who decided to send the letter that is Exhibit 13 [6/3/05 Default Notice[8]]?

A:     No.

Q:     Did you ever have any discussions with anyone regarding sending a default notice to AMC Investors or AMC Investors II?

A:     Not that I recall.

*See* Alexander Depo, at 41:24-42:7.

\*        \*        \*        \*        \*

Q:     Why did Eugenia declare a default under the credit agreement?

---

[8] The document referenced here is attached as Exhibit "E" to this Motion.

MR. KARLAN:          Objection. No foundation. You may answer.

Q:       I'm talking about the default that you recall, sir.

MR. KARLAN:          Objection. No foundation. You may answer.

A:       I don't recall the exact specifics of why it was called.

Q:       Tell us generally what you recall, please.

A:       Um, I don't really want to speculate.

Q:       That's fine, I'm not asking you to speculate. I just want you to tell us to the best of
your recollection generally what you recall.

A:       That there was a default.

Q:       Do you recall whether Eugenia believed that there was fraud taking place at AMC
Computer Corp.?

A:       I don't know if that was the - - I don't recall which parties were the exact parties to
the fraud.

Q:       Do you recall some allegation of fraud - -

A:       Yes, I do.

Q:       - - with respect to AMC Computer Corp.?

A:       Yes.

*See* Alexander Depo, at 45:19-47:3.

*        *        *        *        *

Q:       When did you first suspect that there was fraudulent activity taking place at AMC
Computer Corp.?

A:       I don't recall exactly when.

Q:       Can you remember generally when?

A:     Um, I believe it was the same year that the, um, first action, I think you said there was a suit in June of '05, so it was sometime at that point.

Q:     Prior to June of 2005?

A:     I would believe this was, un, the suit was filed at that point in time, yes.

Q:     When did you first suspect that anyone at MapleWood may have breached any fiduciary duties that they owed in connection with the Eugenia loan to AMC Computer Corp.?

MR. KARLAN:        Fiduciary duties to whom?

MR. MILLER:        To anyone.

MR. KARLAN:        To anyone.

A:     Um, it's a broad question, um, so I don't really recall or I wouldn't know, I guess.

Q:     Do you recall ever suspecting that anyone from MapleWood had breached any fiduciary duties to anyone in connection with AMC Computer Corp.?

A:     Um, yes.

Q:     Okay, tell us what you recall about that.

A:     Uh, once I think it was established that they had, uh, committed fraud I believe that would be a breach of fiduciary duty.

Q:     And when you say it was established that they had committed fraud, are you referring to the same suspicions you testified a moment ago prior to the June 2005 Complaints?

A:     Yeah, once we believed that they had committed fraud and the suit was filed, that would go hand-in-hand with fiduciary duty.

*See* Alexander Depo, at 65:12-67:9.

### Questions Regarding MapleWood's Offer to Turn Over Interests in Debtors

Q:     Have you ever seen Exhibit 14 [6/6/05 Letter[9]] before?

A:     Not that I'm aware.

Q:     Did you know that MapleWood had offered to turn over to Eugenia its interest in AMC Investors, LLC and AMC Investors II, LLC back in June of 2005?

A:     No, I'm not.

Q:     I think I asked you whether you were aware, okay?

A:     I am not aware.

Q:     Okay, thank you. Why did Eugenia not accept the offer to turn over the interest in AMC Investors, LLC and AMC Investors II, LLC that is set forth in Exhibit 14?

MR. KARLAN:     Objection to the - - objection to the form of the question to the extent it characterizes the documents as an offer and the witness has just testified he was unaware of any such proposal; so I don't see how he can answer that question.

MR. MILLER:     Would you like to have the court reporter read the question back?

MR. KARLAN:     Would you like to withdraw the question and ask one that he can answer?

MR. MILLER:     No. Why don't we ask the court reporter to read it back since its' been a while since I asked the question now.

(The requested portion of the record was read).

A:     I have no knowledge of that.

Q:     Did you ever discuss that subject with anyone at any point in time?

A:     Not that I'm aware.

*See* Alexander Depo, at 43:5-44:22.

---

[9] The document referenced here is attached as Exhibit "D" to this Motion.

### Questions Regarding Eugenia's Failure to File Within the Limitations Period

Q:      Why did Eugenia wait until 2011 to seek to file the claims against the MapleWood entities, Mr. Glaser and Mr. Reale that are set forth in this Complaint, Exhibit 22?

MR. KARLAN:      Objection to the form of the question. You may answer it if you understand it.

A:      Um, I do not know.

*See* Alexander Depo, at 60:15-24.

\*      \*      \*      \*      \*

Q:      What did MapleWood Management LP do to prevent Eugenia from seeking to file the claims contained in Exhibit 22 prior to 2011?[10]

A:      I do not know.

*See* Alexander Depo, at 62:25-63:5.

### Questions Regarding Eugenia's Ability to Vote Shares Under Pledge Agreement

Q:      Did Eugenia every seek to vote the shares of AMC Computer stock that had been pledged to Eugenia as security under the January 2003 credit agreement?

A:      I don't recall.

*See* Alexander Depo., at 67:10-14.

Given the fact that Alexander was allowed to answer all of these questions, without instruction not to answer or substantive objection, it is clear that Plaintiff's counsel found this information to be relevant enough for deposition questioning at that time. There is no reason why Defendants should be allowed to question Alexander on these topics, but not be allowed to question Hassels-Weiler on these topics. At the very least, Plaintiff has waived its right to object

---

[10] The same question was also asked and answered for the other Defendants. *See* Alexander Depo., at 63:6-20. Similar questions were asked and answered for the filing of the involuntary bankruptcy petitions as well. *See* Alexander Depo., at 67:19-68:24.

to the relevance of these topics given their failure to object/instruct not to answer at the Alexander deposition.

## Local Rule 7026-1(c) Certification

Undersigned counsel certifies that he has conferred, unsuccessfully, with Plaintiff's counsel in an attempt to resolve this discovery issue prior to any scheduled hearing on this motion.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order: (a) granting Defendants' Motion to Compel; (b) compelling Plaintiff to promptly respond to Interrogatory Nos. 10-13 of Defendants' First Set of Interrogatories and respond to Request Nos. 1-4, 21-22, 26-30, 31-37 and 39-43 of Defendants' First Request for Admissions within five (5) days from the date of the court order; (c) directing Ekkehart Hassels-Weiler to answer questions at his upcoming deposition relating to his knowledge (and the timing thereof) regarding the condition of AMC Computer, as well as Plaintiff's relationship with Casita; and (d) granting any further relief that the Court deems just and necessary.[11]

Dated: November 8, 2013
      Wilmington, Delaware

Respectfully submitted,

*/s/ Curtis S. Miller*
Curtis S. Miller (Bar No. 4583)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: CMiller@MNAT.com

and

AKERMAN LLP (f/k/a Akerman Senterfitt)
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1714
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
Attn: Brian P. Miller, Esq.

*Attorneys for MapleWood Holdings, LLC,*
*MapleWood Management LP, MapleWood Partners*
*LP, Robert V. Glaser, and Robert J. Reale*

---

[11] Purusant to Local Rule 7012-1, Defendants do not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.