UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
| **AMC INVESTORS, LLC,** | ) | Case No. 08-12264 (CSS) |
| Debtor. | ) | |
| In re: | ) | Chapter 7 |
| **AMC INVESTORS II, LLC,** | ) | Case No. 08-12265 (CSS) |
| Debtor. | ) | |
| **EUGENIA VI VENTURE HOLDINGS, LTD., ON BEHALF OF AMC INVESTORS, LLC AND AMC INVESTORS II, LLC,** | ) | Adv. Pro. No. 11-52317 (CSS) |
| Plaintiffs, | ) | Adv. Pro. No. 11-52318 (CSS) |
| vs. | ) | |
| **MAPLEWOOD HOLDINGS LLC, MAPLEWOOD MANAGEMENT LP, MAPLEWOOD PARTNERS LP, ROBERT V. GLASER, AND ROBERT J. REALE,** | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OBJECTION TO (I) DEFENDANTS' MOTION TO COMPEL
DISCOVERY RESPONSES; AND (II) AKERMAN LLP'S MOTION FOR PROTECTIVE
ORDER AND/OR MOTION TO QUASH SUBPOENA**

Eugenia VI Venture Holdings, Ltd. ("Eugenia"), on behalf of debtors AMC Investors,

LLC and AMC Investors II, LLC (together, the "Debtors" or "Plaintiffs"), files this objection

(the "Objection") to (i) *Defendants' Motion to Compel Discovery Responses and Incorporated*

*Memorandum of Law* [Docket No. 98][1] (the "Defendants' Motion to Compel), and (ii) *Akerman LLP's Motion for Protective Order and/or Motion to Quash Subpoena in Adversary Proceeding and Incorporated Memorandum of Law* [Docket No. 97] (the "Akerman Motion for Protective Order," and together with Defendants' Motion to Compel, the "Motions").  In further support of this Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

Plaintiffs in these Adversary Proceedings are the Debtors: AMC Investors, LLC and AMC Investors II, LLC.  The causes of action being prosecuted belong to the Debtors' estates.  Any recovery will go to the Debtors' estates.

Each of the Motions is predicated on ignoring these basic facts and instead pretending that Eugenia is the plaintiff simply because the Court conferred standing on Eugenia to bring the causes of action.  Eugenia is not the plaintiff.  Accordingly, Eugenia's knowledge, suspicions, actions, and inactions are all irrelevant to these Adversary Proceedings.

## RELEVANT BACKGROUND

### 1.  The Court's Grant of Standing to Prosecute Estate Causes of Action

Defendants completely control the Debtors and have breached their fiduciary duties owed to the Debtors—misusing the Debtors for their own personal gain.[2]  After the chapter 7 cases were filed, Defendants continued to breach their fiduciary duties to the Debtors by causing them to take actions to the detriment of their estates and creditors, such as by causing the Debtors to resist entry of orders for relief.  *See* Case No. 08-12264, Docket No. 12.  Unsurprisingly,

---

[1] Unless otherwise noted, references to docket numbers are references to the docket of Adversary Proceeding case number 11-52317 (CSS).

[2] The general factual background for these proceedings has been discussed in previous court filings and opinions, most recently in *Plaintiffs Motion (I) To Compel the Production of Documents and Testimony; and (ii) For Sanctions* [Docket No. 96] ("Plaintiffs' Motion to Compel").  Capitalized terms used but not otherwise defined in this Objection have the meanings ascribed to them in the Plaintiffs' Motion to Compel.

2

Defendants prevented the Debtors from bringing an action for redress of these breaches of fiduciary duty.

The Debtors' estates have very limited assets outside of their right to recovery from Defendants for Defendants' breaches of fiduciary duties. Thus, the chapter 7 trustee lacked the financial resources needed to hold Defendants liable for their misdeeds. To ensure that the estates were able to recover all of their assets, Eugenia filed a motion for standing to bring an action against Defendants on behalf of the Debtors' estates. *See* Case No. 08-12264, Docket No. 62.

Continuing their longstanding misuse of the Debtors, Defendants caused the Debtors to object to Eugenia's motion for standing—notwithstanding the fact that there was no conceivable downside to the Debtors' estates in allowing the motion to be granted. *See* Case No. 08-12264, Docket No. 71. This Court overruled Defendants' objection and granted the standing motion. In its order, the Court appointed Eugenia "as estate representative on behalf of the Debtors to assert all estate causes of action set forth in the Adversary Complaint...." *Order Granting Eugenia VI Venture Holdings, Ltd. Standing to Assert Estate Fiduciary Duty Claims* ¶ 2 [Case No. 08-12264, Docket No. 79] (the "Standing Order") (emphasis added).[3] The Standing Order went on to clarify that "[a]ny and all proceeds...from the claims asserted by the Adversary Complaint – whether by verdict, judgment, settlement or other compromise – are the property solely of the Estates, and shall be promptly remitted to the Trustee for estate administration in accordance with the Bankruptcy Code...." *Id.* ¶ 3 (emphasis added).[4]

---

[3] A copy of the Standing Order was annexed to Plaintiffs' Motion to Compel as Exhibit A.
[4] After entry of the Standing Order, Defendants continued to breach their fiduciary duties owed to the Debtors by, *inter alia*, causing the Debtors to seek leave to appeal the Standing Order. *See* Case No. 08-12264, Docket No. 89. The District Court dismissed the Debtors' request. *See* Case No. 08-12264, Docket No. 108.

3

### 2. Defendants' Conflation of Eugenia with the Debtors

Despite the clear language of the Standing Order, Defendants have refused to acknowledge that these Adversary Proceedings are being brought on behalf of the Debtors' estates.  Instead, Defendants pretend that the causes of action belong to Eugenia.  For example, in their motion to dismiss (which this Court denied), Defendants consistently alleged that "Eugenia's claims in the Complaint are barred...."  Docket No. 5, at 3 (emphasis added).  Similarly, in their reply in support of their failed motion to dismiss, Defendants complained that "Eugenia continues to re-litigate claims under Delaware state law...."  Docket No. 29, at 1 (emphasis added).  This conflation of Eugenia with the Debtors continued in Defendants' motion for a protective order (which this Court denied), wherein Defendants claimed that "Eugenia initiated these adversary proceedings."  Docket No. 57, at 3 (emphasis added).  In their reply in support of their failed motion for a protective order, Defendants again expressed their belief that "Eugenia is the real party-in-interest in both the prior Related Litigation and this adversary proceeding...."  Docket No. 62, at 8 (emphasis added).  In Defendants' Motion to Compel, they go so far as defining the "Plaintiff" as "Eugenia VI Venture Holdings, Ltd."

Thus, it came as no surprise when Defendants served requests for admission and interrogatories on "adversary plaintiff Eugenia VI Venture Holdings, Ltd."  Therein, Defendants included the following definition:

> "Eugenia," "Plaintiff," "you" or "your" shall mean and refer to Eugenia VI Venture Holdings, Ltd., Plaintiff in the Adversary Proceedings, including any of its agents, officers, directors, employees, representatives, consultants, attorneys, and all other persons acting or purporting to act on its behalf.

Using the above-referenced definition of "you" and "your," Defendants propounded numerous requests for admission and interrogatories on Eugenia, seeking to have Eugenia make admissions and answer interrogatories in its personal capacity.  As explained more fully below,

since it is the Debtors (and not Eugenia) that are the Plaintiffs here, Eugenia's knowledge,

suspicions, actions, and inactions are completely irrelevant to the present Adversary Proceedings.

## ARGUMENT

### 1. Defendants' Motion to Compel Should Be Denied

#### a. The Information Defendants Seek Is Not Relevant

The motion to compel should be denied because the information Defendants seek is not

relevant to the resolution of any claims or defenses in these Adversary Proceedings.[5]

As Defendants acknowledge, a party may only obtain discovery regarding matters that

are "'relevant to . . . [a] claim or defense,'" Defendants' Motion to Compel, at 6-7 (quoting Fed.

R. Civ. P. 26(b)(1)), with the burden placed on the party seeking to compel discovery to

"demonstrate[] the material sought is relevant." *Id.* (citing *Robinson v. Marsh*, No. 11-CV-1376,

2013 WL 1833797, at *3 (M.D. Pa. 2013); *see also Chladek v. Pa.*, No. 97-0355, 1998 U.S. Dist.

LEXIS 3237, at *11 (E.D. Pa. Mar. 9, 1998) ("[T]he party seeking discovery has the burden of

showing clearly that the information sought is relevant to the subject matter of the action and

would lead to admissible evidence.") (quotation marks and citation omitted); *Zoological Soc'y of*

*Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A (Sr), 2013 U.S. Dist. LEXIS 148340, at *6-7

(W.D.N.Y. Oct. 15, 2013) ("The burden is upon the party issuing the subpoena to demonstrate

that the information sought is relevant and material to the allegations and claims at issue in the

---

[5] As a technical matter, Defendants' Motion to Compel should also be denied because Eugenia is not a party to these Adversary Proceedings and cannot be compelled to answer requests for admission or interrogatories. *See, e.g.*, *Bryant v. Gallagher*, No. 11-CV-00446-LJO-BAM, 2013 U.S. Dist. LEXIS 100048, at *19-20 (E.D. Cal. July 17, 2013) ("Plaintiff may not serve interrogatories and requests for admissions on non-parties."). Here, despite Defendants' best efforts to cast Eugenia as the "plaintiff," Eugenia is in fact a mere estate representative acting on behalf of the Debtors. It is "the corporation," (Debtors here) and not the representative (Eugenia here) that is the "real party in interest" in a derivative suit. *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978). As such, Eugenia is not a party to this suit within the meaning of the Federal Rules of Civil Procedure and Defendants therefore do not have a right to discovery by request for admission or interrogatory from Eugenia. Nonetheless, in the interest of avoiding unnecessary procedural disputes, the Debtors are willing to proceed as if the RFAs and interrogatories had been properly directed to the Debtors.

5

proceedings."). "As discovery under the Federal Rules is limited in scope to that which is relevant to any party's claim or defense . . . the court may also quash or modify a subpoena that calls for irrelevant information," *Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC*, 2013 U.S. Dist. LEXIS 148340, at \*6-7 (W.D.N.Y. Oct. 15, 2013) (quoting *GMA Accessories, Inc., v. Elec. Wonderland, Inc.*, No. 07-Civ-3219 (PKC) (DF), 2012 U.S. Dist. LEXIS 72897, at \*16 (S.D.N.Y. May 22, 2012)), or deny a party's motion to compel production of irrelevant information. *See, e.g.*, *Wilson v. Hill*, No. 08-CV-552, 2010 U.S. Dist. LEXIS 25443, at \*7-8 (S.D. Ohio Feb. 22, 2010).

The analysis of relevance is done on a topic-by-topic basis, with courts denying motions to compel when the topics are not legally relevant to any claim or defense. *See, e.g.*, *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 624 (S.D. Ill. 2007) ("[T]he Court concludes that all of the six topics should be quashed, . . . because none of those topics are sufficiently probative of relevant facts . . . ."); *Wilson v. Hill*, 2010 U.S. Dist. LEXIS 25443, at \*7-8 (S.D. Ohio Feb. 22, 2010) (denying motion to compel because the Court determined that the "prior use of force on the part of defendant" was "not relevant to the claim presented in th[e] action").

Here, Defendants seek information as to (i) the timing and details of Eugenia's knowledge of Defendants' breaches of fiduciary duty; (ii) Eugenia's alleged opportunity to take ownership of the Debtors in June 2005; and (iii) the relationship between Eugenia and Casita. *See* Defendants' Motion to Compel, at 7-14. None of these topics have any relevance to the resolution of any claims or defenses in these Adversary Proceedings and therefore Defendants "fail to meet their burden." *Chladek*, 1998 U.S. Dist. LEXIS 3237, at \*12.

      (i)     *Eugenia's Knowledge Has No Relevance to These Adversary Proceedings and Inquiries Into Eugenia's Knowledge are Inappropriate*

Defendants argue that Eugenia's knowledge of the breaches of fiduciary duty is relevant to Defendants' "statute of limitations defense."    Defendants' Motion to Compel, at 9. Specifically, Defendants argue that as of May 5, 2005, Eugenia "was made aware of the alleged accounting mis-statements at AMC Computer," *Id.* at 9; *see also id.* at 4, and that, as a result, the claims asserted in these Adversary Proceedings "are barred by the three-year statute of limitations to bring breach of fiduciary duty claims under Delaware law." *Id.* at 3. Defendants are wrong; Eugenia's knowledge (or lack thereof) is entirely irrelevant to the resolution of their statute of limitations defense.

"It is a rule of general application that a cause of action accrues for limitations purposes only when it could be prosecuted to a successful conclusion," *Kucera v. Metropolitan Life Ins. Co.*, 719 F.2d 678, 681 (3d Cir. 1983) (citing numerous cases), *i.e.*, when the party has "standing to assert" the claim. *Id.*; *see also Colt Indus. v. Marsh*, No. 86-2642, 1992 U.S. Dist. LEXIS 22815, at *34-35 (W.D. Pa. Oct. 5, 1992) ("Generally, a cause of action does not begin to accrue until the right to sue vests.") (citing *Bolender v. Farm Bureau Mutual Insurance Co.*, 474 F.2d 1360 (3d Cir. 1973)).    As a creditor of the Debtors, which are Delaware limited liability companies, Eugenia did not have standing to assert claims on behalf of the Debtors in 2005 or at any other point in time prior to entry of this Court's Standing Order in June 2011. *CML V, LLC v. Bax*, 6 A.3d 238, 241 (Del. Ch. 2010) ("[T]he literal terms of the LLC Act control, and they bar a creditor of an insolvent LLC from suing derivatively.").    Thus, even assuming that Eugenia's knowledge could ever count for statute of limitations purposes, the statute of limitations did not begin to run against Eugenia, as a matter of law, until it obtained standing to assert claims on behalf of the Debtors on June 3, 2011. These Adversary Proceedings were filed

7

on the same date.  Any knowledge that Eugenia did or did not have prior to entry of the Standing

Order is irrelevant for statute of limitations purposes (or any other purposes).

The Third Circuit's decision in *Kucera* is particularly instructive.  In that case, it was

"undisputed" that Mrs. Kucera had the requisite knowledge of the wrongs underlying her

complaint in the fall of 1974, and that she did not file her complaint until December 1981, more

than six years later, where the relevant statute of limitations was six years.  *Kucera*, 719 F.2d at

680.  However, because Mrs. Kucera had no "standing to assert" her cause of action until "her

husband's death on July 2, 1979," the statute of limitations did not begin to run until that date.

*Id.* at 680-81.  So, too, here:  Even if all of Defendants' allegations of Eugenia's knowledge as of

May 2005 are true, that knowledge is legally irrelevant because—whatever knowledge Eugenia

had—the statute of limitations could not begin to run, and did not begin to run, as to Eugenia

until Eugenia had standing to assert the claims brought in this action.  What Defendants are

asking for is a ruling that Eugenia's right to sue expired <u>before it was ever obtained</u>.  Not

surprisingly, such an approach is uniformly rejected by the courts as inequitable and contrary to

the purposes of statutes of limitations.[6]

(ii)    *Defendants' Hypotheticals Do Not Make Their Inquiries Relevant*

Recognizing that Eugenia did not actually have standing to assert derivative claims on

behalf of the Debtors prior to entry of the Standing Order—and thus, under well-established law,

the statute of limitations did not begin to run with respect to Eugenia until the entry of the

Standing Order, entirely negating the potential relevance of Eugenia's knowledge—Defendants

argue that Eugenia's knowledge is nevertheless relevant because it hypothetically <u>could have</u>

---

[6]   Defendants also argue that discovery regarding Ekkehart Hassels-Weiler and/or David Alexander is relevant because whatever Hassels-Weiler and/or Alexander knew, Eugenia also actually or constructively knew.  However, since Eugenia's knowledge is legally irrelevant to the statute of limitations defense, information regarding the knowledge of Hassels-Weiler and/or Alexander, even if imputed to Eugenia, is also irrelevant.

8

taken steps at an earlier date to gain standing to sue on behalf of the Debtors. Specifically, Defendants argue that Eugenia had the "opportunity" to take control of the Debtors in June 2005—an "opportunity" that Defendants concede Eugenia "chose not to" take—and that, as a result, as of June 6, 2005, Eugenia "had the required knowledge, and the means necessary, to file not only the involuntary petition, but also the adversary claims." Defendants' Motion to Compel, at 9-10.

Defendants seek discovery regarding this alleged "opportunity" to bolster the gaping hole in their statute of limitations argument created by Eugenia's lack of standing to assert the claims in this suit prior to 2011. But Defendants' hypothetical chain of events regarding what Eugenia might have done in 2005 is no more relevant to the claims and defenses than Eugenia's knowledge of wrongdoing at that time because standing cannot be established by, and does not turn on, "speculation" as to events that might have been. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). Simply put, if the basis for standing cannot be described "without beginning [the] explanation with the word 'if,'" there is no standing. *Id.* at 43. It is just such a "what if" argument that Defendants make, asserting that as of June 6, 2005, Eugenia "had the opportunity to take complete control of the Debtors, which <u>would have</u> necessarily given them the legal right to bring suit on behalf of the Debtors relating to AMC Computer, or petition for bankruptcy." Defendants' Motion to Compel, at 5 (emphasis added). Implicit in this contention is a concession that Eugenia did <u>not</u> have the "legal right to bring suit on behalf of the Debtors" prior to the Standing Order, because it did <u>not</u> "take complete control of the Debtors." *Id.*

Defendants' assertion that Eugenia could have hypothetically taken steps that would have given it the right to bring suit at an earlier date simply do not provide a basis to assert that Eugenia had standing at that earlier date. *See, e.g., Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169,

9

175 (D.C. Cir. 2012) ("This hypothetical chain of events fails as a showing of Article III standing."); *CollegeSource, Inc. v. Academyone, Inc.*, No. 10-3542, 2012 U.S. Dist. LEXIS 153197, at *59-60 (E.D. Pa. Oct. 25, 2012) (claim of standing is unpersuasive where it is "contingent upon hypothetical events").  Because Eugenia did not have standing to assert the claims raised in these Adversary Proceedings until the issuance of the Standing Order, the statute of limitations did not run as to Eugenia until the Order was actually entered, regardless of whether there was a potential for standing at some earlier time. *Cf. Colt Indus. v. Marsh*, 1992 U.S. Dist. LEXIS 22815, *34-35 (W.D. Pa. Oct. 5, 1992) ("In the case of conditional contracts, the statute of limitations does not accrue until the condition is performed or exists.") (citing *Kucera v. Metropolitan Life Ins. Co.*, 719 F.2d 678 (3d Cir. 1983)).  Under these circumstances, Eugenia's knowledge (or lack thereof) is entirely irrelevant to Defendants' statute of limitations defense, which must fail as a matter of law.[7]

Defendants further attempt to plug the gaping hole in their relevance argument by alleging that a non-party to this suit, Casita, "had the ability to, and could have, filed a derivative claim on behalf of Debtor AMC Investors, LLC within the requisite limitations period." Defendants' Motion to Compel, at 13.  Since the statute of limitations was not triggered as to Eugenia until it gained standing to act in 2011—whatever its knowledge before then—the question of whether Casita could have filed a derivative claim on behalf of one (but not both) of the Debtors at an earlier date simply has no bearing on Defendants' statute of limitations defense against Eugenia.  It is also a matter of public record that Casita did not file a derivative claim on behalf of AMC Investors, LLC.  And, since both Eugenia and Casita are entities that cannot have any knowledge outside of the knowledge possessed by their principals, inquiries into Eugenia's

---

[7]  This is only one of the many reasons that Defendants' statute of limitations argument is without merit.  *See* Response in Opposition to Defendants' Motion to Dismiss, Docket No. 25, at 4-11.  None of the arguments turns on Eugenia's knowledge.

10

legal relationship with Casita do not have anything to do with the question of what Casita's principals knew and when they knew it, even if the knowledge of Casita's principals was relevant.

As the statute of limitations defense is the only claim or defense identified by Defendants as to which the contested topics—primarily, Eugenia's knowledge—is asserted to be relevant, Defendants have failed to meet their burden of "showing clearly that the information sought is relevant" to any specific claim or defense. *Chladek*, 1998 U.S. Dist. LEXIS 3237, at *11.[8]  The motion to compel should be denied.

      **b.  Mr. Hassels-Weiler Cannot Be Forced to Testify On Behalf of Eugenia at His Personal Deposition and Should Not be Forced to Give Duplicative Testimony As to Irrelevant Topics**

Defendants complain that Plaintiffs' counsel has "stated that he will instruct Hassels-Weiler, at his upcoming deposition, not to answer questions relating to [Eugenia's] knowledge (and the timing of when it gained that knowledge) regarding the condition of AMC Computer or questions relating to [Eugenia's] relationship with Casita." Defendants' Motion to Compel, at 14-15.

The information sought by Defendants is irrelevant and duplicative. It is well-settled that discovery is limited to matters that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Thus, it is axiomatic that a party may not ask deposition questions that are irrelevant.

---

[8] Defendants also make passing reference to collateral estoppel as a defense regarding which Eugenia's and Casita's knowledge are relevant, in connection with the purported preclusive effect of a prior lawsuits filed against Defendants. Defendants' Motion to Compel, at 4, 12-13. But the Third Circuit has made clear that the "[a]pplication of collateral estoppel is a question of law." *Cospito v. Attorney General of the United States*, 539 F.3d 166, 171 (3d Cir. 2008); *accord, e.g., Szehinskyj v. Attorney General of the United States*, 432 F.3d 253, 255 (3d Cir. 2005); *Prusky v. Reliastar Life Ins. Co.*, 502 F. Supp. 2d 422, 427 n.9 (E.D. Pa. 2007) (claims that a "cause of action is barred by res judicata and/or collateral estoppel, turn not on questions of fact, but on pure questions of law"). Because the court "need not consider the factual record to resolve those questions," *Prusky*, 502 F. Supp. 2d at 427 n.9, discovery regarding Eugenia or Casita's knowledge is plainly irrelevant to the collateral estoppel defense. Defendants have failed to carry their burden of clearly demonstrating the relevance of the sought-after discovery to any claim or defense.

*See, e.g.*, *Smith v. BIC Corp.*, 869 F.2d 194, 197-198, 202 (3d Cir. 1989) ("[T]he district court upheld the magistrate's order prohibiting the[] depositions on the basis that any information [the deponents] could provide was irrelevant.... [W]e agree with the magistrate and the district court that much of the information sought is irrelevant. Therefore, we affirm the order quashing the subpoenas."); *Joint Stock Soc'y v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 399 (D. Del. 2000) (Deposition "questions related to issues which the prior district judge found to be irrelevant...never should have been asked."); *Bell v. Bd. of Educ.*, 225 F.R.D. 186, 193 (S.D. W. Va. 2004) ("[T]he Rule 26(b)(1) limitation of discovery to information relevant to the claim or defense of any party, appl[ies] equally with respect to depositions of parties and non-parties."); *De Seversky v. Republic Aviation Corp.*, 2 F.R.D. 183, 185 (E.D.N.Y. 1941) ("If it should appear...that the testimony is clearly irrelevant then, of course, such examination should not be permitted.").

The questions Defendants seek to ask relate to Eugenia's knowledge of Defendants' fraudulent misdeeds and Eugenia's relationship with Casita. As noted above, Eugenia is not a real party in interest in this suit, and since Eugenia lacked standing to prosecute these causes of action prior to entry of the Standing Order, its knowledge, suspicions, actions, and inactions are completely irrelevant to the issue at hand—whether Defendants breached their fiduciary duties owed to the Debtors—or any statute of limitations defense. Also, as noted above, inquiries into Eugenia's relationship with Casita have no bearing at all on the issues Defendants allege are relevant as to Casita—namely, what Mr. Hassels-Weiler knew and whether that knowledge

12

should be imputed to Casita. Because the questions Defendants seek to ask are completely irrelevant, Mr. Hassels-Weiler should not be forced to answer these questions.[9]

In any event, Mr. Hassels-Weiler has already testified as to the topics Defendants seek to re-examine him on now. As the Court may recall, the parties have agreed that any depositions taken in the Related Litigation will be treated for all purposes as though the deposition was taken in these Adversary Proceedings. At his prior deposition, Mr. Hassels-Weiler was asked numerous questions regarding the date he learned that Defendants were conducting a massive fraud at AMC Computer. In fact, Defendants have cited Mr. Hassels-Weiler's prior deposition testimony in several filings as the reason that these Adversary Proceedings should be dismissed. *See, e.g.*, Defendants' Objection to Standing Motion, Case No. 08-12264, Docket No. 62, at 10; Defendants' Motion to Dismiss, Docket No. 5, at 8. Defendants' view is that for individuals that were deposed in the Related Litigation, the Court should "limit the scope of the depositions in the present actions to topics on which these individuals have not been previously deposed."[10] Defendants' Motion for Protective Order, Docket No. 57, at 2 (citing, *inter alia*, *Lobb v. United Air Lines, Inc.*, No. 92-15846, 1993 U.S. App. LEXIS 17495, at *3 (9th Cir. 1993) ("Even in cases when second depositions have been permitted, the district court often imposes the restriction that the second deposition not cover the same ground.")). The Debtors cannot conceive of any relevant questions that have not already been asked of Mr. Hassels-Weiler and therefore there is no need for Mr. Hassels-Weiler to be re-deposed at all.

---

[9]    Although Defendants opted to file a motion to compel before Plaintiffs filed a motion for a protective order under Rule 26(c), to avoid unnecessary motion practice Plaintiffs respectfully request that the Court enter a protective order consistent with the Court's ruling if the Court denies Defendants' motion to compel.

[10]    As noted in the Debtors' opposition to Defendants' failed motion for a protective order, the Debtors understand that Defendants are entitled to ask relevant non-duplicative questions, even if the "topic" has been covered before. However, Defendants should be ordered not to ask duplicative questions and, as noted above, Defendants should not be allowed to ask questions on irrelevant topics.

13

Puzzlingly, Defendants devote six pages of their brief to the argument that since they asked numerous irrelevant questions of another witness in this case "without instruction not to answer or substantive objection," the Debtors have somehow "waived [their] right to object to the relevance of these topics." *See* Defendants' Motion to Compel, at 15-21. Defendants' argument is completely ungrounded in law—indeed, they cite no cases in support of their novel concept—and illustrates Defendants' misapprehension of appropriate deposition objections/instructions not to answer.

Pursuant to Rule 30(c)(2), "[a] person may instruct a deponent not to answer <u>only when</u> necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." (emphasis added). Thus, "it is improper to instruct a witness not to answer a question based on form and relevancy objections." *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla. 1999); *see also, e.g., Tuerkes-Beckers, Inc. v. New Castle Assocs.*, 158 F.R.D. 573, 575 (D. Del. 1993) ("Counsel may not instruct a witness not to answer a question unless . . . answering the question would require the disclosure of information that is protected from disclosure as privileged or work product."); *Hearst/ABC-Viacom Entertainment Servs. v. Goodway Mktg., Inc.*, 145 F.R.D. 59, 63 (E.D. Pa. 1992) ("[T]he fact that a question is repetitive or irrelevant is not an appropriate ground for instructing a witness not to answer a question, since it does not involve a matter of privilege.") (citation omitted).

Although Defendants' counsel freely violated these rules by instructing Defendants' witnesses not to answer various questions based on relevancy objections,[11] Defendants' suggestion that the Debtors "waived [their] right to object to the relevance of these topics given

---

[11] Defendants' improper instructions not to answer are the subject of Plaintiffs' pending Motion to Compel. *See generally* Docket No. 96.

their failure to object/instruct not to answer at the Alexander deposition" is preposterous. The law could not be more clear that it is inappropriate to instruct a witness not to answer just because the defending lawyer believes that the pending question is not relevant. The law is also crystal clear that objections to the "relevance, or materiality of testimony [are] not waived by a failure to make the objection[s] before or during the deposition...." Fed. R. Civ. P. 32(d)(3)(A); *see also United States v. Dentsply Int'l, Inc.*, No. 99-5 MMS, 2000 U.S. Dist. LEXIS 6925, at *9 (D. Del. May 10, 2000) ("The United States argues that Dentsply did not make a relevancy objection to any of the above-cited deposition testimony and that the United States is entitled to discovery requesting information regarding these issues 'to clarify, confirm, or supplement the selected information Dentsply has produced.' This argument is not persuasive, because relevancy objections need not be raised at depositions.") (citations omitted).

Given these clear rules of law, and the absence of law supporting Defendants' assertions, the Debtors are at a loss to discern why their failure to assert improper instructions not to answer and/or unnecessary objections the last time Defendants wasted the Debtors' time with irrelevant questions somehow gives Defendants *carte blanche* to waste even more of the Debtors' time by conducting another deposition filled with similar irrelevant questions.[12] In fact, the opposite is true. Now that Defendants have clearly shown that they seek to pursue a completely irrelevant line of questioning, the Court should cut Defendants off at the pass and enter an order preventing Defendants from proceeding down that slippery slope again.

---

[12] The Debtors are confused by Defendants' statements that the Debtors allowed Alexander to testify without "substantive" objection. It is unclear to the Debtors what counts as a "substantive" objection in Defendants' minds. Whenever Alexander was asked to testify regarding the knowledge, suspicions, actions, or inactions of Eugenia, the Debtors objected because the witness, who was testifying in his individual capacity, could not testify on behalf of Eugenia. The Debtors intended this to be a substantive objection.

## 2. Akerman's Motion For a Protective Order Should Be Denied

Akerman's introduction to its Motion for a Protective Order sets the stage quite well: "Through the Subpoena, Plaintiff is once again seeking to obtain a broad set of…documents relating to AMC Investors LLC and AMC Investors II, LLC," this time "directly from their…attorneys." In other words, there is no dispute that a "broad set" of documents exists that has never been produced and that Plaintiffs have been stonewalled in their efforts to obtain these documents on numerous occasions. The dispute over their production centers on (i) whether the Debtors' counsel can continue to assert privilege with respect to these documents in the face of the chapter 7 trustee's waiver of any applicable privileges, and (ii) whether a ruling this Court issued in connection with Rule 2004 discovery of the Debtors does or should prevent production of a subset of the withheld and demonstrably relevant documents.

### a. The Joint Defense Privilege Cannot Be Asserted Against Co-Clients

As discussed in more detail in Plaintiffs' Motion to Compel, the co-client doctrine compels disclosure of an attorney's entire file to each of the co-clients that has hired the lawyer to represent them in related matters. *See, e.g., Teleglobe Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 366 (3d Cir. 2007) ("When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable."); *In re Hotels Nev., LLC*, 458 B.R. 560, 571 (Bankr. D. Nev. 2011) (observing that the "theory that the content of joint communications belongs equally to the clients is recognized…by cases examining the issue"); *Scroggins v. Powell, Goldstein, Frazer & Murphy (In re Kaleidoscope, Inc.)*, 15 B.R. 232, 244 (Bankr. N.D. Ga. 1981) ("[T]he court believes that with regard to legal files created . . . during the course of joint representation . . . the entire contents of those legal files belong jointly to the clients in question, with each having an

16

undivided ownership interest in, and equal right of access to, all of those files."), *rev'd on other grounds*, 25 B.R. 729 (N.D. Ga. 1982).

Applying this rule to the MapleWood Defendants, the United States District Court for the Southern District of Florida recently observed as follows:

> [T]he Court finds that Plaintiffs and Defendant essentially were co-clients of Miller (and the related attorneys) as to the defense of the Underlying Matters and, thus, have no privilege to assert against the disclosure of communications or documents to each other which were shared between any party and Miller (and the related attorneys) on that subject.
>
> ***
>
> Alternatively, even if Plaintiffs and Defendant were not effective co-clients, they - at a minimum - had a common legal interest in the defense of the Underlying Matters such that they are not entitled to avoid disclosure between themselves as to otherwise privileged materials.

*Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, No. 08-23343, 2013 U.S. Dist. LEXIS 103309, at *229-*231 (S.D. Fla. July 15, 2013) (footnotes omitted).

Here, Akerman admits that the "individuals and entities associated with the [MapleWood private equity] Funds have been, and continue to, operate under a joint defense arrangement" whereby each (including the Debtors) is represented by Akerman in "multiple cases involving the Funds and their portfolio companies...." Akerman Motion for Protective Order at 9. Thus, "all communications made in the course of the joint representation are discoverable." *Teleglobe Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 366 (3d Cir. 2007).

Akerman refuses to acknowledge this wide-ranging body of case law and instead points the Court to the unsurprising, yet inapplicable rule that joint defense communications need not be disclosed to parties outside of the joint representation. That rule does not apply here because it was the Debtors—one of the co-clients to the joint representation—that issued the subpoena to

17

Akerman.  *See, e.g.*, *In re Cardinal Fastener & Specialty Co.*, No. 11-15719, 2013 Bankr. LEXIS 452, at *19 (Bankr. N.D. Ohio Feb. 4, 2013) ("As the trustee points out, the established rule is that joint clients who have employed an attorney as their common agent with respect to a matter may not assert the privilege in later litigation between the joint clients.") (collecting cases); *see also In re Equaphor Inc.*, No. 10-20490 (BFK), 2012 Bankr. LEXIS 2129, at *18 (Bankr. E.D. Va. May 11, 2012) (ordering production of documents to chapter 7 trustee of joint client and allowing trustee to use the documents in litigation against the other joint clients; but holding that trustee could not waive the joint-client privilege to allow use of the documents in other actions).[13]

### b.  Akerman Cannot Assert Work Product Protection as a Basis for Refusing to Produce Documents to Its Client

Akerman acknowledges, as must, the existence of a large body of case law holding that an attorney may not assert work product protection as a basis for refusing to turn over documents to his or her client, or to the party standing in the shoes of the client.  *See, e.g.*, *Teleglobe Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.)*, No. 04-CV-1266 (SLR), 2006 U.S. Dist. LEXIS 101309, at *51 (D. Del. Feb. 22, 2006) ("the doctrine protects an attorney's work product from being disclosed to the opposing party, but not from the client") (citing *Saito v. McKesson HBOC, Inc.*, Civ. Action No. 18553, 2002 WL 31657622, at *3-4 (Del. Ch.)); *see also Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1992) ("the work product doctrine does not apply to the situation in which a client seeks access to documents or other tangible things created or amassed by his attorney during the course of the representation."); *In re Cardinal Fastener &*

---

[13]  Akerman also makes reference to the fact that the chapter 7 trustee in this case did not challenge the assertion of joint privilege with respect to productions made in the context of Rule 2004 discovery.  The trustee's failure to challenge Akerman's misplaced assertions of privilege does not operate to create a privilege where none existed before.  Instead, "a party who asserts a privilege has the burden of proving its existence and applicability."  *In re Grand Jury Investigation*, 918 F.2d 374, 385 n. 15 (3d Cir. 1990).

*Specialty Co.*, 2013 Bankr. LEXIS 452, at *24 (Bankr. N.D. Ohio Feb. 4, 2013) ("The trustee in this case has stepped into the shoes of the debtor and is the client for these purposes; the work product doctrine cannot be asserted against him."); *In re Equaphor Inc.*, 2012 Bankr. LEXIS 2129, at *15 (Bankr. E.D. Va. May 11, 2012) ("But this is not a discovery dispute in the ordinary sense of the term. It is a motion to compel the turnover of the law firm's files … to the party who now stands in the shoes of the former client, the Debtor. Under these circumstances, the courts have been uniform in holding that the work product doctrine does not prevent the turnover of the files.") (collecting cases).

Yet, Akerman incorrigibly insists that "even though the bankruptcy trustee waived the Debtors' attorney/client privilege, that waiver does not allow for the disclosure of Akerman's work product. Only Akerman has the ability to waive its work product, and Akerman has not (and will not) waive that protection." Akerman Motion for Protective Order at 11. To convince the Court to arrive at this unsupported conclusion, Akerman concocts an argument with respect to a narrow subset of the unproduced documents (the work product documents created in connection with the Guaranty Litigation), and uses that argument as a smokescreen for its blanket, unsupported assertion of work product protection with respect to other files. Akerman does not, and indeed cannot, present a valid basis for refusing to produce work product files that are unrelated to Guaranty Litigation. *See, e.g.*, *In re Cardinal Fastener & Specialty Co.*, 2013 Bankr. LEXIS 452, at *25 (Bankr. N.D. Ohio Feb. 4, 2013) ("Moreover, to the extent the work product relates to the joint representation, the work product doctrine would not permit the firm to deny access to its joint client, the debtor. The trustee now holds that position and is similarly entitled to the documents.") (citing *In re Michigan Boiler & Eng'g Co.*, 87 B.R. 465, 469 (Bankr. E.D. Mich. 1988)).

With respect to work product files related to the Guaranty Litigation, Akerman alleges that "Plaintiff has clearly been, and continues to be, adverse to the Debtors with respect to the Guaranty Litigation." Akerman Motion For Protective Order, at 11. Thus, Akerman argues that turnover is improper. Akerman's argument misses the mark. First, Akerman's argument reflects Defendants' continued conflation of Eugenia with Plaintiffs here—the Debtors. By definition, the Debtors are not and never have been "adverse to the Debtors with respect to the Guaranty Litigation."[14]

Second, the Guaranty Litigation is over and done. A judgment against the Debtors has been entered—a judgment that was inevitable since the insolvent Debtors admitted liability to the tune of millions of dollars. The only question remaining from the Guaranty Litigation is whether Defendants breached their fiduciary duties to the Debtors by causing the Debtors to resist entry of that judgment. And that is precisely the question that the Debtors are seeking to answer by reviewing documents related to the Guaranty Litigation.[15]

### c. The Court's Ruling on Rule 2004 Discovery in the Chapter 7 Cases Does Not and Should Not Apply to These Adversary Proceedings

In the context of Eugenia's motion to compel Rule 2004 discovery that Defendants were causing the Debtors to resist, this Court ruled that the <u>Debtors</u> did not need to produce documents relating to the Guaranty Litigation or Defendants' defense of the bankruptcy petitions to <u>Eugenia</u>. *See* Compel Hr'g Tr. 30:22-23, Apr. 26, 2010 [Case No. 08-12264 (CSS), Docket

---

[14] Akerman appears to understand this fact, and therefore continues its argument by complaining that Eugenia is "shrouding itself under the pretext of acting 'on behalf of the Debtors.'" Akerman Motion for Protective Order, at 11. *Cf.* Standing Order ¶ 2 (appointing Eugenia "as estate representative on behalf of the Debtors to assert all estate causes of action").

[15] As of the petition date in the chapter 7 cases, Defendants were continuing to breach their fiduciary duties owed to the Debtors by causing the Debtors to appeal the amount of the judgment (again). Defendants downplay the finality of the Guaranty Litigation by contending that it was merely "stayed" by the filing of the chapter 7 petitions. This argument ignores the fact that Defendants' control over the Guaranty Litigation has been completely displaced by the chapter 7 trustee, who has expressed no interest in continuing the appeal or otherwise objecting to Eugenia's claim based on the trial court's judgment. In short, the Guaranty Litigation is over.

No. 58]. Significantly, the Court held that the chapter 7 trustee could review the documents; and at the time the chapter 7 trustee still had the right to prosecute the claims being brought in these adversary proceedings on the Debtors' behalf. *See id.* at 30:24-31:8. Subsequently, the Court entered the Standing Order conferring standing on Eugenia to prosecute the Debtors' causes of action for breach of fiduciary duty. In the meantime, it also became clear that the Guaranty Litigation has reached its conclusion. Thus, the Debtors respectfully submit that given the change in circumstances and in order to facilitate Plaintiffs' ability to prosecute these causes of action on behalf of the Debtors' estates, the documents falling into these categories ought to be turned over to Plaintiffs at this time. The documents are extremely relevant to the present causes of action because the Debtors believe that the actions that Defendants caused the Debtors to take or not take with respect to the bankruptcy proceeding and Guaranty Litigation constitute breaches of fiduciary duty that are the subject of these Adversary Proceedings. Even if the Court continues to believe that documents relating to the merits of the Guaranty Litigation should not be turned over, Plaintiffs should, at a minimum, be entitled to review documents relating to Defendants' decision to cause the Debtors to contest entry of the inevitable judgment in that action—a decision the Debtors believe constituted a breach of Defendants' fiduciary duties. Without access to the documents, the Debtors will be denied key evidence that supports their case and this Court's grant of standing to Eugenia to prosecute estate causes of action will be undermined.

### d. The Requests Are Not Unduly Burdensome

Responding to the subpoena will not impose undue burden or expense on Akerman. The

21

RLF1 9627606v.1

Debtors are merely asking that the Debtors' attorneys[16] turn over the Debtors' files to the Debtors' estates. The Debtors are not asking for extensive review for relevance or any other issues.

In any event, according to Akerman all relevant documents "have previously been searched and produced if not covered by work product or joint privilege." Akerman Motion for Protective Order, at 14. Thus, assuming it properly identified these documents on its privilege logs, all Akerman really needs to do is to look at its privilege logs and produce all of the documents identified on those logs or otherwise withheld from production.[17]

Also, since Akerman is Defendants' agent and the documents being sought were first sought from Defendants, Defendants should bear the cost of Akerman's production. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (observing the "presumption . . . that the responding party must bear the expense of complying with discovery requests.").

## CONCLUSION

The Motions reflect Defendants' continued disregard of the corporate form. Although this Court has ordered that these Adversary Proceedings be prosecuted "on behalf of the Debtors" and that "[a]ny and all proceeds...from the claims asserted by the Adversary Complaint...are the property solely of the Estates," Defendants stubbornly persist in averring that Eugenia is the "real" plaintiff here. These Adversary Proceedings relate to the Debtors and Defendants' conduct with respect to the Debtors—nothing less and nothing more. As such,

---

[16] In its Motion for Protective Order, Akerman alleges that it "formerly represented the Debtors and continues to represent the Adversary Defendants...." Akerman Motion for Protective Order, at 13 (emphasis added). A review of the docket in the chapter 7 cases demonstrates that Akerman has never withdrawn as counsel to the Debtors even though it "continues to represent the Adversary Defendants." This obvious conflict of interest gives rise to many issues in these cases, including Akerman's refusal to provide documents to its clients—the Debtors.

[17] Obviously, Plaintiffs are not asking Akerman to produce documents that have previously been produced to Plaintiffs' counsel.

22

discovery related to the Debtors and Defendants' conduct with respect to the Debtors should be compelled—and no more.

Dated: November 22, 2013
      Wilmington, Delaware

                                _____

Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Cory D. Kandestin (No. 5025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan
200 Park Avenue
50th Floor
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Jeremy L. Graves
1801 California Street
Suite 4200
Denver, Colorado 80202
Telephone: (303) 298-5700
Facsimile: (303) 298-5907

*Counsel for Eugenia VI Venture Holdings,*
*Ltd. for and on behalf of debtors AMC*
*Investors, LLC and AMC Investors II, LLC*

RLF1 9627606v.1