## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 7 |
| AMC Investors, LLC, | Case No. 08-12264 (CSS) |
| Debtor. | |
| In re | Chapter 7 |
| AMC Investors II, LLC, | Case No. 08-12265 (CSS) |
| Debtor. | |
| EUGENIA VI VENTURE HOLDINGS, LTD. ON BEHALF OF AMC INVESTORS, LLC AND AMC INVESTORS, II, LLC, | Adv. Pro. No. 11-52317 |
| Plaintiffs, | **Re: D.I. 96, 100** |
| vs. | Adv. Pro. No. 11-52318 |
| MAPLEWOOD HOLDINGS LLC, MAPLEWOOD MANAGEMENT LP, MAPLEWOOD PARTNERS LP, ROBERT V. GLASER, AND ROBERT J. REALE, | |
| Defendants. | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S CORRECTED MOTION (I) TO COMPEL DOCUMENTS AND TESTIMONY; AND (II) FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 26, 30, 34 and 37, made applicable to these

Adversary Proceedings by Rules 7026, 7030, 7034 and 7037 of the Federal Rules of Bankruptcy

Procedure, Defendants MapleWood Holdings LLC, MapleWood Management LP, MapleWood

Partners LP, Robert V. Glaser and Robert J. Reale (collectively, "**Defendants**"), by and through

their attorneys, hereby file their Response in Opposition to Plaintiff's Corrected Motion (I) to

Compel Documents and Testimony; and (II) for Sanctions and Incorporated Memorandum of Law (the "Opposition Brief").  In support of this Opposition Brief, Defendants state as follows:

## I.  INTRODUCTION

This is not your run-of-the-mill bankruptcy/adversary proceeding, and the specific facts and procedural posture of this proceeding do not lend themselves to the typical discovery disputes and/or resolutions.  This is a single creditor bankruptcy that is nothing more than the continuation of a two-party dispute that has spanned more than 8 years and 14 completed and pending lawsuits concerning the same facts and parties (or their affiliates).  Because ***Eugenia is the only creditor of the Debtors' estates***,[1] any action taken on behalf of the "estate" is nothing more than a self-interested action taken by Eugenia.  By this motion, Eugenia is using the bankruptcy/adversary proceeding as a cloak to obscure its real motive:  trying to gain access to privileged documents that it would never be entitled to obtain on its own accord.

In fact, the documents that Eugenia is trying to gain access to are documents pertaining to lawsuits in which Eugenia and its affiliate are currently adverse to the Defendants and/or the Debtors.  If Eugenia were allowed to unfairly manipulate the system to obtain privileged documents it would otherwise have no chance of obtaining, the end result would be Eugenia's attorneys having access to all of their adversary's work product and privileged documents – a result this Court already specifically rejected on April 26, 2010.  *See* Apr. 26, 2010 Hr'g Tr. at 30:22-23 ("Because of the ongoing litigation, I believe that producing those documents to

---

[1]    *See* Schedules of Assets and Liabilities of AMC Investors, LLC (D.I. 26 in Case No. 08-12264); Schedules of Assets and Liabilities of AMC Investors II, LLC (D.I. 26 in Case No. 08-12265).

Eugenia is not appropriate.").[2]   Eugenia's attempt to gain such an unfair advantage flies in the face of our adversary justice system, and this Court should reject such blatant tactical maneuvers.

To better understand the game Eugenia is trying to play with respect to the disputed discovery, a review of the relevant lawsuits underlying this litigation is necessary:

*The Eugenia Lawsuit*

In 2005, Eugenia sued Defendants Glaser and Reale for fraud and breach of fiduciary duty with respect to AMC Computer (the "**Eugenia Lawsuit**").[3]   The Eugenia Lawsuit related to the May 2005 demise of AMC Computer Corp. ("**AMC Computer**"), a portfolio company of private equity funds associated with Defendants.   Eugenia was a lender to, and, after January 2003, a minority shareholder of, AMC Computer.   In that derivative lawsuit, Eugenia sought discovery of all facts related to AMC Computer, including but not limited to, the alleged accounting fraud at the company, the financial condition of the company, and the loan with Eugenia.   In response to that discovery, Defendants produced over 130,000 pages of documents to Eugenia, and Defendants provided Eugenia with multiple privilege logs (totaling over 100 pages of privileged entries).[4]

Eugenia lost the Eugenia Lawsuit on summary judgment in the United States District Court for the Southern District of New York.[5]   The District Court outright dismissed all claims, including the breach of fiduciary duty claim, because Eugenia could not prove any harm to AMC

---

[2]  A copy of the Transcript of Hearing on April 26, 2010 (the "**Transcript**") is attached hereto as **Exhibit "B."**

[3]  The Eugenia Lawsuit was prosecuted by Gibson Dunn & Crutcher, LLP ("**Gibson Dunn**") – the same firm which represents Eugenia in this Adversary Proceeding.   Indeed, Eugenia is still represented by the exact same lawyer, Mitchell Karlan, Esq.

[4]  All of these documents, as well as the privilege logs, were produced to Gibson Dunn.

[5]  While the Eugenia Lawsuit was pending, Eugenia's sister company, Casita L.P., brought a derivative action in New York Supreme Court against Defendants (with the exception of Defendant Reale) premised, in part, on the same allegations of accounting fraud at AMC Computer.   That lawsuit is still pending.

Computer from any alleged improprieties. *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105 (S.D.N.Y. 2008). The United States Court of Appeals for the Second Circuit affirmed that decision. *Eugenia VI Venture Holdings, Ltd. v. Glaser et al.*, 370 F. App'x 197 (2d Cir. 2010).

*The Guaranty Lawsuit*

While the Eugenia Lawsuit was pending, in September 2005, Eugenia filed a lawsuit against the Debtors alleging that AMC Computer defaulted on its debt obligations to Eugenia and that the Debtors, who were holding companies who guaranteed the loan, were liable to Eugenia for approximately $8.9 million (the "**Guaranty Lawsuit**"). *Eugenia VI Venture Holdings, Ltd. v. AMC Investors, LLC and AMC Investors II, LLC*, Index No. 603193/05, New York County Supreme Court, New York.[6] Given that the Debtors are only holding companies required by Eugenia (as lender to AMC Computer) to have no assets, to have no employees, and to do nothing but hold stock in AMC Computer, the Debtors did not contest liability. Judgment was entered against them for $8.2 million. After the Debtors contested the amount of the judgment, the appellate court reversed the $8.2 million judgment against the Debtors, vacated the judgment, and remanded the case for a trial on damages. A bench trial on damages followed in New York Supreme Court, and a judgment in the amount of approximately $10.7 million was entered against the Debtors. The Debtors appealed that judgment, but on the eve of oral argument before the New York Appellate Division, that appeal was stayed when Eugenia filed the instant involuntary bankruptcy petitions. Once the bankruptcy stay is lifted, that litigation between Eugenia and the Debtors will resume.

---

[6] As with the Eugenia Lawsuit, Eugenia was represented in the Guaranty Lawsuit by Mitchell Karlan, Esq., of Gibson Dunn.

### *The Bankruptcy Proceeding and Rule 2004 Discovery*

These bankruptcy proceedings were strategically commenced on September 30, 2008, abruptly staying the Debtors' appeal on the eve of the oral argument scheduled for October 10, 2008, in the Guaranty Lawsuit, when Plaintiff filed involuntary bankruptcy petitions against the Debtors (the "**Bankruptcy Proceeding**").  During the pendency of the Bankruptcy Proceeding, the United States Trustee appointed a Chapter 7 Trustee.  In the course of his duties, the Chapter 7 Trustee waived the Debtors' attorney/client privilege but concluded that he would not challenge any joint privilege asserted by the Adversary Defendants over documents and communications with the Debtors,[7] and Eugenia conducted Rule 2004 discovery.

During this process, Eugenia sought <u>all</u> of the Debtors' documents, ***including all attorney/client and work product protected documents relating to the Guaranty Lawsuit and the Bankruptcy Proceeding***.  *See* Exhibit "A" to Eugenia VI Venture Holdings, Ltd.'s Motion Pursuant to Bankruptcy Rule 2004 to Authorize Examination of Debtors and Production of Documents at 7, a copy of which is attached hereto as **Exhibit "A."**  The Debtors (through their counsel – Akerman Senterfitt) produced all of the documents sought by Eugenia, with the exception of:  (1) joint defense documents; and (2) the litigation files of the attorneys who represented the Debtors in connection with the Guaranty Litigation and the defense of the Bankruptcy Proceeding.

Not satisfied with the Debtors' production, Eugenia moved to compel the production of withheld categories of documents pursuant to Rule 2004.  Following briefing and argument, the Court ruled that production of these categories of documents to Eugenia was <u>not appropriate</u> – even in the context of broad Rule 2004 discovery where Eugenia was acting, in effect, on behalf

---

[7] *See* Exhibit B (Transcript at 22:6-16).

of the estates[8] – given that Eugenia was adverse to the Debtors in the Guaranty Lawsuit and the Bankruptcy Proceeding, and that the production of such documents would essentially hand over privileged documents to a directly adverse party in ongoing litigation.[9]

### The Adversary Proceeding

Thereafter, over objection, Eugenia was granted standing to assert breach of fiduciary duty claims on behalf of the Debtors against the Adversary Defendants despite the fact that Eugenia had already lost these exact same claims, in a similar derivative capacity, in the Eugenia Lawsuit. On June 3, 2011, Plaintiff filed a derivative complaint[10] generally alleging that the Adversary Defendants breached their fiduciary duties allegedly owed to the Debtors (the "**Adversary Proceeding**"). Even a cursory comparison of the complaint filed by Eugenia in the Adversary Proceeding complaint and the summary judgment opinion entered in the Eugenia Lawsuit reveals that Eugenia is using this Adversary Proceeding to re-litigate the alleged fraud issues at AMC Computer – issues which were already litigated, and which Eugenia lost, in federal court in New York. *See In re Eugenia VI Venture Holdings,* 649 F. Supp. 2d at 105. Moreover, Eugenia's claims are time-barred by the three-year statute of limitations to bring breach of fiduciary duty claims under Delaware law. In addition, Eugenia's claims are barred by collateral estoppel because they were fully litigated in federal court in New York where Eugenia lost on summary judgment.

---

[8] *See* Transcript at 13:16-16 (the court noting that "Eugenia acting under [Rule] 2004, in effect, on behalf of the estate").

[9] *See* Transcript at 30:16-23 ("Because of the ongoing litigation, I believe that producing those documents to Eugenia is not appropriate").

[10] A copy of the Adversary Proceeding Complaint is attached hereto as **Exhibit "C."**

## The Adversary Proceeding Discovery Dispute

In the Adversary Proceeding, Eugenia served the First Request for Production on January 11, 2013 (the "**Requests**").  The Requests seek production of documents which Eugenia already sought and obtained in the Eugenia Lawsuit and the Bankruptcy Rule 2004 production.  Generally, the Requests seek all documents relating to the alleged accounting fraud issues at AMC Computer and Eugenia's loan to AMC Computer (the identical subject matter of the discovery in the Eugenia Lawsuit), as well as all documents relating to the Debtors, including those relating to the defense of the Guaranty Lawsuit and the Bankruptcy Proceeding (the identical subject matter of the Rule 2004 discovery as well as similar to discovery previously produced to Eugenia and Gibson Dunn in a New York state court books  and records inspection lawsuit).

In response to the Requests, Defendants asserted their objections, including their privilege objections.  Defendants noted that relevant documents had previously been produced in the Related Litigation,[11] and Eugenia agreed that Defendants did not need to re-produce documents previously produced in the Related Litigation.[12]  Defendants also recently re-produced to Eugenia all the privilege logs they had served with those prior productions, even though each of these logs had previously been provided to Gibson Dunn.[13]

Eugenia filed its Motion to Compel.  In its Motion, Eugenia requests that the Court compel production of two primary categories of documents:  (1) privileged documents identified on the privilege logs in the Eugenia Lawsuit and/or the Related Litigation; and (2) privileged

---

[11] "Related Litigation" is defined in Defendants' Response to the Requests.  *See* **Exhibit "D,"** at pp. 3-5.

[12] In fact, Eugenia admits this in the Motion to Compel.  *See* Motion to Compel, at p. 8.

[13] *See* November 15, 2013 Letter to Mitchell Karlan, Esq. (without voluminous attachments), a copy of which is attached hereto as **Exhibit "E."**

documents relating to the defense of the Bankruptcy Proceeding and the Guaranty Lawsuit.  In

an effort to secure privileged documents to which it is not entitled, Eugenia asserts myriad

falsities and misstatements in the Motion to Compel including:

| **FALSE STATEMENT** | **ACTUAL FACTS** |
|---|---|
| Chapter 7 Trustee waived "any privilege." | Trustee has waived the attorney/client privilege only.  At the hearing on the Rule 2004 discovery issues, Trustee's counsel clearly stated that the Trustee "**would respect the joint privilege**."  Transcript at 22:6-16.  Moreover, the Trustee has also never indicated he would waive work product.  Even the emails cited by Eugenia from the Trustee state that he waives the Debtors' "privilege;" there is no mention of work product. |
| Eugenia is bringing these adversary claims "on behalf of the Debtors;" therefore, Eugenia is entitled to privileged documents relating to cases in which Eugenia is directly adverse. | This is a single creditor bankruptcy.  Despite Eugenia's undisguised attempt to gain access to privileged documents relating to cases in which Eugenia is directly adverse, Eugenia is the only creditor of the estate.   Eugenia represents no other interests but its own; it is undeniable that Eugenia is attempting to gain an unfair tactical advantage by obtaining privileged documents to which it would never be entitled in the pending Guaranty Lawsuit. |
| Defendants "belatedly claim reliance" on the Court's ruling at the Rule 2004 hearing. | The Rule 2004 hearing took place on April 26, 2010, and all discovery in this adversary proceeding has taken place since that time.  The Court's ruling at that hearing is a valid ruling that has a binding effect on these proceedings.  In the parties' "meet and confer" conference calls regarding discovery, Defendants made their position abundantly clear and, at Eugenia's request, this position was then reduced to writing.  There is nothing "belated" about Defendants' position and Eugenia has been aware of the Court's ruling at all relevant times. |

| | |
|---|---|
| Circumstances have changed (given the filing of the adversary complaint), and the Rule 2004 hearing ruling is no longer applicable. | The circumstances have not changed.  At the Rule 2004 hearing, the Court acknowledged that Eugenia was "acting under [Rule] 2004, in effect, on behalf of the estate[.]"  Given that the Court acknowledged that, at the time of the hearing, Eugenia was acting on behalf of the estate, and given that in the adversary proceeding, Eugenia is still purporting to act on behalf of the estate, the ruling is unquestionably applicable and relevant.  The parties are required to abide by this ruling. |
| Defendants attempted to "avoid legitimate discovery" by opposing the Rule 2004 production. | At the hearing on Eugenia's motion to compel the Rule 2004 production, neither party prevailed entirely.  In fact, the Court ruled in Defendants' favor regarding the documents relating to ongoing lawsuits in which Eugenia was the adverse party (holding that such documents need not be produced); therefore, Defendants' good faith opposition to the scope of the Rule 2004 discovery was substantiated and, in part, upheld by the Court. |
| Defendants did not produce any new documents pursuant to the First Request for Production in this adversary proceeding. | Defendants did produce additional documents, Bates-labeled AMC-INV 3540-3735, to Eugenia's counsel on February 18, 2013.[14] |
| Defendants and Akerman only told Eugenia that it did not produce the documents which were the subject of the Rule 2004 hearing ruling by way of its letters dated October 25, 2013. | These letters were generated at the request of Eugenia after two lengthy "meet and confer" conference calls which took place on October 10, 2013 and October 21, 2013.  During those conference calls, the parties discussed each other's discovery issues, and undersigned counsel made clear Defendants' reliance upon the Court's Rule 2004 ruling.  At the conclusion of the second call, Eugenia requested that Defendants' position be stated in writing.  Now, Eugenia disingenuously claims that these letters were their first indication of Defendants' reliance on that ruling with respect to their production.  That is simply not true. |

---

[14] *See* February 18, 2013 Letter from Brian Miller, Esq. to Mitchell Karlan, Esq., a copy of which is attached hereto as **Exhibit "F."**

| | |
|---|---|
| Defendants' waived their privilege objections by failing to revise the privilege logs from their prior productions in the Related Litigation because those privileges are no longer applicable. | The privileges set forth on Defendants' prior privilege logs produced in the Related Litigation are all still applicable. Indeed, to the extent that the log entries do not include the Debtors, the privilege is absolute. To the extent that log entries do include the Debtors, the Trustee has not waived – and cannot waive – the joint privilege, and it is proper to continue to withhold those documents. |
| Defendants' withheld the privilege logs from their prior productions from Eugenia's counsel. | All of the prior logs were originally produced directly to Gibson Dunn. Counsel's failure to locate documents in his own files is not Defendant's problem. Even so, during the "meet and confer" conference calls, Defendants stated that they would re-produce the logs to Eugenia. Defendants did so on November 15, 2013. |
| Defendants improperly instructed deponents not to answer relevant questions. | As to Mr. Augustin, the undersigned re-visited his instruction as part of the "meet and confer" calls, and Defendants have provided an affidavit to Eugenia answering the one question which Mr. Augustin was instructed not to answer. <br><br> As to Mr. Glaser, the undersigned instructed Mr. Glaser not to answer questions relating to his personal finances, because these questions clearly seek irrelevant discovery that could only possibly be relevant to future post-judgment discovery, if any. Given that Eugenia has never obtained a judgment against Mr. Glaser, in any lawsuit, these questions are harassing and irrelevant, and the instructions given were appropriate. |

In reality, Defendants have produced over 130,000 pages of documents that are responsive to the Requests. Eugenia has sued Defendants over these exact same issues on multiple occasions over the past eight years; therefore, the bulk of relevant discovery documents have already been produced in these prior litigations. As Eugenia's counsel has agreed, there is no need to re-produce this multitude of documents. As to the privilege logs relating to these

prior productions, Eugenia's counsel has had these logs in their possession for years (some of them since 2005); even so, Defendants have recently re-produced copies to Eugenia's counsel. As set forth in more detail below, the privileges asserted on these logs are still wholly applicable, and Defendants continue to have a valid basis for withholding privileged documents. *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("[T]he attorney and client must be able to predict with some degree of certainty whether particular discussion will be protected. An uncertain privilege . . . is little better than no privilege at all.").

Turning to the remaining sub-set of documents – documents relating to the Debtors' defense of the Bankruptcy Proceeding and the Guaranty Lawsuit – this Court has <u>already ruled</u> on the relevance of those documents, holding that they are not subject to production given that Eugenia is directly adverse to the Debtors in that ongoing litigation. The Court also found that Eugenia was acting on behalf of the estate when seeking those documents under Rule 2004, which is the identical circumstance now. These documents are not subject to production, so Defendants are not required to create a privilege log relating to this sub-set of documents.[15]

This Court must deny Eugenia's blatant attempt to back-door its way into obtaining privileged documents that it would otherwise never be entitled to given its adverse position to the Debtors and/or Defendants.

## II. <u>ARGUMENT</u>

### A. DEFENDANTS' OBJECTIONS ARE WELL-FOUNDED AND CONFORM TO THIS COURT'S PRIOR RULING.

Eugenia makes the claim that Defendants' objections are "boilerplate" and should be overruled as a matter of course. This is simply untrue. Just because Defendants make similar

---

[15]  The same is true for Akerman's production and their obligation to create a privilege log with respect to these documents.

objections to each request does not make them "boilerplate." Eugenia focuses on Defendants' "vague and overbroad" objections, as well as their "unreasonable burden or expense" objection. However, Defendants explain the basis for each of these objections[16] in their response to the Requests. For example, in general objection paragraphs 10 and 11, Defendants state that the basis for their claim that the Requests are overbroad and unreasonably burdensome is that the Requests seek documents outside the relevant time frame, and Eugenia should not be permitted to gain an unfair tactical advantage in the Related Litigation. Eugenia's claim that Defendants' objections are boilerplate is unsubstantiated. Even further, Defendants' withholding of the documents to which it objected is completely supported by case law and/or the specific rulings of this Court.

### 1. This Court Has Already Ruled that Eugenia is Not Entitled to the Discovery it Seeks.

Eugenia attempts to argue around a direct ruling by this Court denying Eugenia's request for the Debtors' documents relating to the defense of the Bankruptcy Proceeding and/or the Guaranty Litigation. The Court should deny the Motion to Compel because the Court has already ruled on this exact issue.

In the Bankruptcy Proceeding, the Debtors produced all documents (including certain attorney/client privileged documents) responsive to Eugenia's Rule 2004 discovery – notably propounded under a much broader standard than that governing the instant Requests. The Debtors, however, objected to producing documents prepared in the Debtors' defense of the Bankruptcy Proceeding and/or the Guaranty Litigation, as well as joint defense privileged documents. Eugenia moved to compel these documents under Rule 2004, and the Bankruptcy Court held a hearing on the matter on April 26, 2010.

---

[16] With respect to the vague objection, the vagueness of the Requests is self-evident.

During that hearing, Debtors' counsel explained to the Court that the Debtors had already produced all responsive documents, except the documents relating to the Guaranty Lawsuit and the Bankruptcy Proceeding; documents that are now sought by the Subpoena:

> I can tell Your Honor the full universe of other documents with respect to these debtors that exist that have not been produced, and they are all the documents, emails, correspondence pleadings, legal research by these debtors in defending the judgment that we're here about today, as well as this bankruptcy case. That's it. That's the only other thing that exists.

Transcript, at p. 10.

Debtors' counsel further explained that all responsive documents protected by the joint defense privilege had been identified on the Debtors' privilege log. After hearing argument from both parties' counsel, the Court made its ruling:

> Let's start with the documents that have been reviewed by the debtor and the real open issues I feel there are whether Eugenia should receive the documents, the attorney/client documents or the litigation file in connection with the judgment litigation and the defense of the involuntary.
>
> **Because of the ongoing litigation, I believe that producing those documents to Eugenia is not appropriate.**[17]

Transcript, at p. 30.  (emphasis added).

The Court's ruling could not be any clearer – Eugenia is not entitled to these documents.[18] Eugenia attempts to side-step this ruling by making a thin procedural distinction that it is now acting "on behalf of the Debtors' estate" (even though it is the sole creditor of the

---

[17]  The Court went on to order that MapleWood perform an additional computer search of its documents for additional responsive documents.  That search was completed, and all additional relevant documents were produced on April 14, 2011.

[18]  In no way are Defendants "surreptitiously holding back . . . documents" or "hiding something," as Eugenia suggests.  Defendants are simply complying with a binding Court ruling.  Defendants have disclosed the categories of documents which they are withholding from production both to this Court, and to Eugenia.

estate), but this argument also fails.[19]   During the Rule 2004 hearing, this Court acknowledged that, with respect to the Rule 2004 production, Eugenia was acting on behalf of the Debtors' estate; therefore, there is no meaningful distinction now that Eugenia has been granted formal standing in the Adversary Proceeding.   *See* Transcript, at 13:13-16 (the court noting that "Eugenia acting under [Rule] 2004, in effect, on behalf of the estate").

Eugenia's efforts to obtain privileged documents to gain an unfair litigation advantage cannot be granted by this Court.   The Court has already ruled that the documents sought by the Requests[20] should not be produced to Plaintiff in light of the fact that Plaintiff is an adverse party to the Debtors in ongoing (albeit stayed) litigation;[21] the Court should uphold its prior ruling and deny Eugenia's Motion to Compel.

## 2.    The Documents Sought are Protected by the Joint Defense Privilege.

Eugenia next claims it is entitled to all documents involving the Debtors, including those protected by the joint defense privilege, because the Chapter 7 Trustee "waived all privileges." This representation is simply not true.   While the Chapter 7 Trustee waived the Debtors' attorney/client privilege, he did <u>not</u> waive the joint defense privilege.   Indeed at the Rule 2004

---

[19]   Indeed, at one point in its Motion to Compel, Eugenia acknowledges that "these categories **ought to be turned over to Eugenia** at this time."   Motion to Compel, at p. 20.   (emphasis added).

[20]   In addition to documents relating to the Debtors' defense of the Bankruptcy Proceeding and/or the Guaranty Litigation, the Requests also seek privileged documents relating to the Eugenia Lawsuit and/or Related Litigation.   While the Court's ruling in the Rule 2004 discovery dispute did not include this category of documents (because they were not requested at that time), the logic of that rulings still applies to this category of documents.   Indeed, Eugenia is attempting to gain access to Defendants' privileged documents in the Eugenia Litigation (a litigation in which Eugenia was directly adverse to some of the Defendants), and which issues are currently being re-litigated in the Adversary Proceeding.   Allowing Eugenia access to these documents while there is continued litigation of claims relating to AMC Computer would be highly prejudicial to Defendants.

[21]   Eugenia argues that it is entitled to the privileged and/or work product documents so it can prove its case that Defendants breached a fiduciary duty relating to Debtors' conduct in these lawsuits; however, there is no difference between this situation and any other privilege situation.   A plaintiff is not entitled to receive privileged documents just because it makes allegations which makes privileged documents relevant.   This is just common sense.

hearing, the following exchange between this Court and counsel for the Chapter 7 Trustee took

place:

THE COURT:        All right.  And does he [the Chapter 7 Trustee] take any position
                  on whether there is, in fact, a joint privilege or simply is he taking
                  the position that he can't waive another party's privilege and if it's
                  a joint privilege, it's a joint privilege?

MS. DUBE:         I believe the -- you know, his view is that unless there is some
                  evidence to indicate that there's an alter ego or something that
                  would allow one to pierce the, what appears to be separate legal
                  entities who are asserting this joint privilege, then **he would
                  respect the joint privilege**.

Transcript, at 22:6-16 (emphasis added).  The Chapter 7 Trustee's position was not only correct,

*see Fogel v. Zell (In re Madison Mgmt. Group, Inc.)*, 212 B.R. 894, 897-98 (Bankr. N.D. Ill.

1997) (refusing to allow a trustee to disclose privileged documents jointly privileged between a

debtor and its parent to a third party), it is also a recognition that Eugenia was and is not a party

to the joint representation, but instead an adversary of the Debtors and Defendants in multiple

lawsuits.

Here, the Debtors were entities created to own the stock of AMC Computer, a portfolio

company of the MapleWood private equity funds (the "**Funds**").  Defendants are all associated

with the Funds.  Given the multiple lawsuits involving the Funds and their portfolio companies,

mostly initiated by Eugenia and its sister company, the individuals and entities associated with

the Funds have been, and continue to, operate under a joint defense arrangement.

"In a joint representation, the joint privilege applies when multiple clients hire the same

counsel to represent them on a matter of common interest."  *Magnetar Techs. Corp. v. Six Flags

Theme Park, Inc.*, 886 F. Supp. 2d 466, 479 (D. Del. 2012).  It is well-settled that "[w]aiving the

joint privilege requires the **consent of all joint clients**."  *Id.*  (emphasis added).  It is also true,

however, that "[w]hen former co-clients sue one another, the default rule is that all

communications made in the course of the joint representation are discoverable." *Teleglobe USA Inc. v. BCE, Inc.* (*In re Teleglobe Commc'ns Corp.*), 493 F.3d 345, 366 (3d Cir. 2007).

Eugenia hangs its hat on its claim that the Debtors are now adverse to the Defendants.[22] But, although perhaps applicable in a typical discovery dispute, this "default rule" is inapplicable to the instant discovery dispute for two reasons.  First, the Chapter 7 Trustee has not, and cannot, waive the joint privilege to permit disclosure of the documents to Eugenia.  Although the joint interest privilege may permit the Chapter 7 Trustee to obtain documents subject to the joint privilege with the Defendants, he is not permitted to disclose those documents to third parties, particularly not third parties in directly adverse litigation with the parties to the joint representation, *Madison*, 212 B.R. at 897-88, and none of the other parties to the joint defense arrangement have agreed to waive the privilege.  Second, as previously discussed, although Eugenia purports to be seeking privileged documents on behalf of the estates, Eugenia is the sole creditor of the Debtors.  Under these circumstances, Eugenia should not be allowed to utilize procedural auspices to obtain documents to which it is otherwise not entitled.

Given that the joint privilege still attaches to all documents previously withheld pursuant to the joint privilege, Eugenia is still not entitled to these documents, and the Motion to Compel should be denied on these grounds.[23]

---

[22]  In its Motion, Eugenia makes reference to *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 2013 U.S. Dist. LEXIS 103309 (S.D. Fla. July 15, 2013), and implies that this ruling has some bearing on this discovery dispute, but the *Indian Harbor* suit dealt with the joint defense privilege in the context of the relationship between an insurer and its insured, and is completely inapposite.

[23]  To the extent that the Chapter 7 Trustee seeks any documents related to the joint privilege in the future, Defendants re-assert their offer (which was previously asserted at the Rule 2004 hearing) to allow the Chapter 7 Trustee to review the documents; however, no such documents should be produced to Eugenia or its counsel given their adverse status.

### 3.    The Documents Sought are Protected by the Work Product Doctrine.

Even if the Court had not already ruled on these discovery issues, the documents sought by Eugenia in the Motion to Compel are protected by the work product doctrine.   While the Chapter 7 Trustee waived the attorney/client privilege, there is no indication that he waived the protection of the work product doctrine.   "[T]he work product protection is not automatically waived through a client's (or former client's) production of documents since that protection is invoked by the attorney."   *Magnetar*, 866 F. Supp. 2d at 484.   Furthermore, "a waiver of the attorney-client privilege does not, in and of itself, constitute a waiver of the protections afforded by the work product doctrine."   *Chimie v. PPG Indus. Inc.*, 218 F.R.D. 416, 420 (D. Del. 2003); *see also id.* at 421 ("It does not follow that a waiver of the one necessarily means, or ought to mean, a waiver of the other.   That approach 'fail[s] to consider that the protection stemming from the work product doctrine belongs to the professional, rather than the client, and that the efforts to obtain disclosure of opinion work product should be evaluated with particular care.'" (quoting *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 866 (3d Cir. 1994))).

Eugenia cites a number of cases which stand for the proposition that the work product "doctrine protects an attorney's work product from being disclosed to the opposing party, but not from the client."   *In re Teleglobe Commc'ns Corp.*, 2006 WL 2568371, at *16 (Bankr. D. Del. Feb. 22, 2006).   While Defendants do not dispute this black-letter law proposition, such law is inapplicable to the current situation because Eugenia is the "opposing party" with respect to the documents sought.   Eugenia's thinly veiled attempt to distance itself from this fact, by claiming it is bringing the claims "on behalf of the estate," is improper given that it is the <u>only</u> creditor of the estate, and that any relief it obtains is for Eugenia's sole benefit.

Eugenia has clearly been, and continues to be, adverse to the Debtors and Defendants with respect to the Guaranty Litigation and the Bankruptcy Proceeding. Eugenia is also adverse to the Defendants as it relates to the Eugenia Lawsuit documents, which Eugenia is now seeking to aid in its prosecution of the Adversary Proceeding. Notwithstanding, Eugenia seeks work product relating to the Guaranty Litigation and Bankruptcy Proceeding – ongoing lawsuits in which Eugenia and the Debtors and Defendants are directly adverse – as well as work product relating to the Eugenia Lawsuit and/or Related Litigation.[24]

In this scenario, where the work product relates to a subject matter where the debtor and trustee (or assignee seeking production) are <u>directly adverse</u>, the work product doctrine prevents the production of documents relating to the adverse matter.[25] *See*, *e.g.*, *Foster v. Hill (In re Foster)*, 188 F.3d 1259 (10th Cir. 1999) (recognizing that a bankruptcy trustee would not be entitled to work product from a debtor's attorney if the trustee was adverse to the debtor in any way relevant to the work-product doctrine); *In re Rice*, 224 B.R. 464, 472 (Bankr. D. Or. 1998) (refusing a chapter 7 trustee's demand for the turnover of an attorney's work product when the trustee and debtor held adversarial positions).[26]

Indeed, the Court predicated its previous rejection of Eugenia's request for these same documents on the clear adversity of interests. Given this prior ruling and the adverse interests of

---

[24] As discussed above, Eugenia is represented by the same lawyer in both lawsuits; therefore, not only would such a production result in the adverse party receiving the work product, but it would also result in adverse counsel being provided with his opponent's litigation strategy.

[25] Defendants have no objection to letting the Chapter 7 Trustee review any work-product protected documents, so long as these documents are kept from Eugenia and its counsel given their adverse status.

[26] This result is dictated by the objective of the work product doctrine, which is intended to further "society's interest in protecting the adversary system by shielding litigants' work product from their opponents, and thus freeing lawyers to create such materials without fear of discovery and exploitation." *Foster*, 188 F.3d at 1272. To allow Eugenia to obtain the work product materials here – when such documents would be delivered to a defendant's adversary, represented by the same counsel and asserting the same claims being litigated in other fora – would eviscerate the work product doctrine.

the Eugenia and the Debtors (and/or Defendants) relating to the subject work product, this Court

should deny the Motion to Compel.

> **4.** **The Discovery Sought is Overly Broad and Would Cause Defendants Unreasonable Burden or Expense.**

As set forth in the objections to the Requests, the Requests are unduly burdensome given

Eugenia's "concerted campaign . . . to harm Defendants' business and increase litigation expense

in order for [Eugenia] to gain an unfair tactical advantage in other related litigation between the

parties and their affiliates."    *See* Defendants' Responses to Plaintiff's First Request for

Production, at p. 5, a copy of which is attached hereto as **Exhibit "D."**   The Federal Rules

require that "the court must limit the frequency or extent of discovery otherwise allowed by these

rules or by local rule if it determines that:  (i) the discovery sought is unreasonably cumulative or

duplicative. . .; or (iii) the burden or expense of the proposed discovery outweighs its likely

benefit[.]"  Fed. R. Civ. P. 26(b)(2)(C).   The Rules further provide that "[t]he court may, for

good cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c)(1); *see also United States v.*

*Fed'n of Physicians and Dentists, Inc.*, 63 F. Supp. 2d 475, 478 (D. Del. 1999) ("The Court has

the discretion to issue a protective order to modify the request or prevent the discovery, if

necessary to protect the person served with the request from 'annoyance, embarrassment or

oppression, or undue burden or expense.'").

The  harassing  and  duplicative  nature  of  the  Requests  is  clearly  demonstrated  by

Eugenia's willingness to completely ignore not only this Court's ruling in the Rule 2004

discovery dispute that Eugenia is not entitled to documents relating to the Debtors' defense of

the Bankruptcy Proceeding and the Guaranty Litigation, but also the Chapter 7 Trustee's

decision to "respect the joint privilege."  Eugenia's efforts to create more litigation with respect

to this discovery dispute does nothing more than establish that these Requests (and this Motion to Compel) were designed to harass Defendants, stir up additional litigation, and drive up defense costs.

In addition, the Requests are overly broad to the extent that they seek documents prior to September 1, 2002 – which represents the very earliest time frame in which the Defendants and Eugenia began discussing the credit facility which underlies the fraud claims at AMC Computer related to allegedly fraudulent borrowing base certificates, and which is the credit facility pursuant to which the Debtors executed the guaranties which are the subject of the Guaranty Litigation (which spurred the Bankruptcy Proceeding). This was also the date agreed upon by Defendants and Eugenia (including Eugenia's current counsel – Gibson Dunn) in the Eugenia Litigation as the proper starting period for the discovery into the claims of alleged fraud at AMC Computer.

Finally, production of the documents related to the defense of the Bankruptcy Proceeding and the Guaranty Litigation (not to mention a re-review of the privileged documents listed on the 100+ pages of the privilege logs in the Eugenia Litigation), including e-discovery hard costs and attorney review time, could potentially cost Defendants tens of thousands of dollars. Additionally, their demands are particularly inappropriate given that Eugenia has had the privilege logs for years, and it never raised objections until now.

To the extent that the Court requires the production of these documents (which it should not), Eugenia should be required to pay for any and all fees and costs associated with the retrieval, review and production of the documents. *See* Fed. R. Civ. P. 45(c)(3)(C)(ii) (allowing court to ensure subpoenaed person will be reasonably compensated for compliance).

**B.    DEFENDANTS HAVE ADEQUATELY, AND PROPERLY, RESPONDED TO PLAINTIFF'S DOCUMENT REQUESTS.**

    **1.    Documents Related to Eugenia Lawsuit and/or Related Litigation**

        **a.    Eugenia Has All Documents Produced by Defendants in the Eugenia Lawsuit and/or Related Litigation.**

With respect to the Eugenia Lawsuit and/or Related Litigation, Defendants have already produced over 130,000 pages of documents to Eugenia.    Indeed, at Eugenia's request, Defendants even provided Eugenia's counsel with a list of all relevant documents that had been produced in the Related Litigation to ensure that Eugenia had all of the documents in its possession.[27]

Eugenia acknowledges these prior productions, and its counsel has agreed that Defendants do not need to re-produce these documents.    *See* Motion to Compel, at p. 8 ("Plaintiffs agreed that documents which were already produced in the Related Litigation to Plaintiffs' counsel of record in these Adversary Proceedings would not need to be re-produced.").    Defendants have no other responsive, non-privileged documents, from the Eugenia Lawsuit and/or the Related Litigation, to produce to Eugenia; thus, there is nothing for Eugenia to compel with respect to this category of documents.

        **b.    Eugenia is Not Entitled to Privileged Documents from the Eugenia Lawsuit and/or the Related Lawsuit, and Eugenia Has All Associated Privilege Logs.**

Despite acknowledging that Eugenia did not require Defendants to re-produce the documents previously produced in the Related Litigation, Eugenia now argues that Defendants should have re-produced the privilege logs.    This is a ridiculous position, especially given that the privilege logs were previously produced to Gibson Dunn who already agreed that prior

---

[27]    See October 21, 2013, email from Brian Miller, Esq. to Marcos Ramos, Esq., a copy of which is attached hereto as **Exhibit "G."**

productions did <u>not</u> need to be repeated.  Eugenia apparently believes that Defendants waived their privilege because they did not re-send privilege logs to Mr. Karlan which have been in his possession for about eight years.[28]  Eugenia is unquestionably attempting to use procedural posture to obtain documents it is not otherwise entitled to obtain.  Why would Eugenia do this?  To gain an advantage prosecuting claims that it has already lost.

Despite Eugenia's absurd position, nothing has changed with respect to the privileged nature of these documents.  To the extent the Debtors are not a party to certain documents on the privilege logs, the attorney/client privilege still applies.  As set forth in more detail above, to the extent the Debtors are a party to certain documents on the privilege log, while the Chapter 7 Trustee waived the attorney/client privilege, he did not waive or contest the joint privilege assertion; therefore, all the documents on these privilege logs are still protected.

Finally, even if this were not the case, the Court's ruling in the Rule 2004 production is applicable to these documents.  In its decision, the Court ruled that Eugenia (even though acting on behalf of the Debtors' estate) was not entitled to discover the Debtors' privileged documents in the Bankruptcy Proceeding or the Guaranty Litigation because Eugenia was directly adverse to the Debtors in those actions.  Transcript at p. 30.  Here, Eugenia was directly adverse to some of the Defendants in the Eugenia Lawsuit, and Eugenia (as the sole creditor of the Debtors' estate) is directly adverse to Defendants in the Adversary Proceeding – a suit in which Eugenia is making nearly identical allegations as to those asserted in the Eugenia Lawsuit.

Essentially, Eugenia is attempting to back-door its way into obtaining privileged documents so that it can gain an unfair advantage in its effort to re-litigate issues that it previously lost.

---

[28]  Even so, Defendants recently re-sent all the privilege logs to Mr. Karlan.  *See* Exhibit "E."

2. **Documents Related to Debtors' Litigation**

    a. **Bankruptcy Proceeding and/or Guaranty Litigation**

Defendants have properly objected to documents relating to the defense of the Bankruptcy Proceeding and the Guaranty Litigation on the basis of joint privilege and work product. Defendants have also represented to Eugenia and this Court, and continue to represent, that they have previously produced documents responsive to the Requests propounded in these two lawsuits, with the exception of documents relating to the defense of the Debtors in the Guaranty Lawsuit and the Bankruptcy Proceeding.

Not only are these documents protected by the applicable privileges, but as discussed supra, those documents are not even subject to production based upon the Court's ruling relating to the 2004 Production in the Bankruptcy Proceeding, which specifically addressed this category of documents. Transcript at p. 30.

    b. **Privilege Logs**

There is no dispute that a privilege log was produced with respect to the Debtors' Rule 2004 production. That log did not contain references to documents relating to the defense of the Guaranty Lawsuit or the Bankruptcy Proceeding because this Court had previously ruled that those documents, i.e., documents related to the defense of the Guaranty Litigation and/or Bankruptcy Proceeding, are not subject to production. Because they are not subject to production, the documents created after the initiation of the lawsuits are not required to be referenced on a privilege log, and this Court never ruled that such documents must be recorded on a privilege log.[29]

---

[29]   To the extent the Court believes that a privilege log is necessary for that category of documents, Defendants could provide a privilege log, but given that the log will encompass all of Defendants' documents relating to two lawsuits covering a span of over 8 years, Eugenia should be required to compensate Defendants for the creation of that log.

### 3.    Akerman Subpoena

With respect to the subpoena directed to Akerman, the exact same principles apply, and Akerman has set forth their objections and arguments relating to that subpoena in their Motion for Protective Order [D.I. 97].  Defendants hereby adopt the arguments set forth in that Motion, as well as the arguments set forth in Sections A and B of this Opposition Brief, as they pertain to the Akerman Subpoena.

With respect to Akerman's privilege log, Akerman submitted a log of privileged documents up through the date of the filing of the Guaranty Litigation.[30]  In addition to the fact that documents created after that date are privileged, this Court has ruled that documents created after that date, i.e., documents related to the defense of the Guaranty Litigation and/or Bankruptcy Proceeding, are not subject to production and, therefore, Akerman is not required to create a privilege log.[31]

### C.    DEPONENTS AUGUSTIN AND GLASER TESTIFIED PROPERLY AND THEY SHOULD NOT BE ORDERED TO BE RE-DEPOSED.

### 1.    Ron Augustin Testimony

In the Motion to Compel, Plaintiff contests only the singular following line of questioning with respect to Mr. Augustin's deposition (in summary):  Who paid the Debtors' accountants (Berkowitz Dick Pollack & Brant) for the accounting services performed on behalf of the Debtors (i.e., tax returns, etc.)?

---

[30]    Eugenia claims that some of the documents produced by Akerman were redacted.  This is true; however, these redactions were performed because the documents contained information irrelevant to the Debtors.  Akerman is not required to provide a log of irrelevant information redacted; only privileged documents, which it has done.

[31]    To the extent the Court believes that a privilege log is necessary for that category of documents, Akerman could provide a privilege log, but given that the log will encompass Akerman's entire litigation file relating to two lawsuits covering a span of over 8 years, Eugenia should be required to compensate Akerman for the creation of that log.

At the time of the deposition, Mr. Augustin was instructed not to answer this question;[32] however, as a result of the parties' "meet and confer" with respect to this issue,[33] Defendants have produced to Eugenia an affidavit of Mr. Augustin which states:

> The source of the compensation paid to Berkowitz Dick Pollack & Brant in connection with the Debtors' tax preparation work for the year ending December 31, 2006 was MapleWood Equity Partners L.P. and MapleWood Equity Partners (Offshore) Ltd.

A copy of the Augustin Affidavit is attached hereto as **Exhibit "H."**

Mr. Augustin's affidavit should resolve Eugenia's Motion to Compel on those grounds, and Mr. Augustin should not be required to be re-deposed.

      2.      **Robert Glaser Testimony**

      a.      **Glaser was Adequately Prepared to Testify as the 30(b)(6) Corporate Representative of the MapleWood Entity Defendants.**

In the Motion to Compel, Plaintiff asserts that Mr. Glaser, who appeared as the 30(b)(6) corporate representative on behalf of MapleWood Holdings LLC, MapleWood Management LP, MapleWood Partners LP, and the Debtors, was not adequately prepared to appear as the corporate representative for these companies merely because he could not answer every specific detail of every single question asked by Plaintiff's counsel.

---

[32] At the time that Mr. Augustin was instructed not to answer this question, counsel for both parties had forgotten that this Court had already ruled on the issue of who paid fees for the Debtors, as that ruling was made nearly four years ago during a December 16, 2009 hearing.  Upon further research, spurred by an exhibit introduced by Eugenia's counsel at the deposition of Mr. Glaser, Defendants' counsel reviewed the transcript of that hearing (during a break in Mr. Glaser's deposition), alerted Eugenia's counsel of this ruling on the record, and withdrew their instruction not to answer questions related to this subject matter. *See* Exhibit "I," at 150:19-153:17.  Given that this information was not re-discovered until after Mr. Augustin's deposition took place, Defendants' counsel then offered to submit the affidavit of Augustin to Eugenia's counsel, as opposed to re-deposing Mr. Augustin to ask him one question.

[33] Indeed, Defendants offered to provide this type of affidavit to Plaintiff prior to Plaintiff's filing of the Motion to Compel.

Under Rule 30(b)(6), corporations have a duty to "take a conscientious good faith endeavor to designate the persons having knowledge of the matters sought. . . and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 189 (D.N.J. 2008) (citation omitted). The "duty of preparation goes beyond matters personally known to the designee or to matters in which the designee was personally involved, and if necessary the deponent must use documents, past employees or other sources to obtain responsive information." *Id.* (citation omitted).

Keeping the above standards in mind, "[r]ule 30(b)(6) is not designed to be a memory contest. It is not reasonable to expect any individual to remember every fact in a [document]." *Equal Emp't Opportunity Comm'n v. Am. Int'l Grp. Inc.*, No. 93 CIV 6390 (PKL) RLE, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994). Further, a deponent under 30(b)(6) can fulfill its preparation obligation without answering every question posed. *See Costa*, 254 F.R.D. at 190 ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness."); *see also Alexander v. F.B.I.*, 186 F.R.D. 137, 141-43 (D. D.C. 1998) (inability of defendant's designee to answer all questions did not warrant redesignation of new witnesses or sanctions).

Here, Mr. Glaser was clearly prepared. Of the entire 171 page deposition, Eugenia harps on responses that appear on a total of seven pages, covering three topic areas, and claims that because Mr. Glaser could not answer every specific detail of these few questions, he was inadequately prepared. Eugenia is wrong.

Eugenia claims that Mr. Glaser could not recite the amount and date of every payment ever made to him by MapleWood Management, MapleWood Partners, and MapleWood

Holdings, over a ten-year period.  That does not mean that Mr. Glaser was unprepared.  The specific questions cited in the Motion to Compel demonstrate the unreasonableness of the position Eugenia is taking on this issue.  For instance, Plaintiff cites the following:

> Q:    Did you receive cash?

> A:    Not physical cash, but I received probably checks or money transfers.

> Q:    In what amounts and on what dates and from whom, please?

> A:    No idea.

*        *        *        *        *

> Q:    And what was the approximate amount of the August/September fees?

> A:    I can't recall as I sit here right now.

It is clear that Eugenia was trying to make Mr. Glaser's deposition a "memory contest." To state that he was inadequately prepared because he could not recite, from memory, the amount and date of every payment made by the co-defendant entities to himself over a ten year period is ridiculous.  As Mr. Glaser explained during his deposition, he spent between 16-20 hours of time with his counsel, reviewed 2-3 bankers boxes of documents, and reviewed the hundreds of pages of transcripts from his prior depositions taken by Eugenia to prepare for the deposition.  *See* Transcript of Robert Glaser on July 30, 2013, at 158:3-159:24 (a copy of the relevant pages of this transcript are attached hereto as **Exhibit "I"**).

Eugenia is simply harassing Defendants through the discovery process.  Eugenia, and its affiliates, have deposed Mr. Glaser four times over the last seven years (mostly related to AMC Computer), and Mr. Glaser has answered hundreds, if not thousands, of questions on these topics.  Eugenia's claim that because Mr. Glaser was unprepared because he could not remember the answer to less than a handful of questions, further evidences Eugenia's improper motives.

Mr. Glaser's deposition transcript demonstrates that Mr. Glaser was adequately prepared to appear as the 30(b)(6) corporate representative of the subject entities, and Eugenia should not be allowed to re-depose Mr. Glaser.

**b.     Glaser's Personal Financial Information is Outside the Scope of Discovery in this Adversary Proceeding.**

Eugenia then claims that it should be entitled to depose Mr. Glaser about his own personal finances.  While counsel allowed Eugenia a certain amount of leeway (i.e., allowing Mr. Glaser to identify the name of the accounting firm that prepares his tax returns), counsel properly instructed Mr. Glaser not to answer any further questions relating to his personal finances or tax returns.  Mr. Glaser's personal finances bear no relevance to the allegations of this lawsuit, which focuses on Defendants' conduct relating to the operation of AMC Computer. Such information is clearly irrelevant at this point in the litigation before any judgment is obtained.

In addition to instructing Mr. Glaser not to answer the questions, the undersigned also made a proper objection as to the basis for the instruction:  Eugenia does not have a final judgment against Mr. Glaser and is not entitled to conduct post-judgment discovery into his personal finances.  *See, e.g.*, *Pinkert v. John J. Olivieri, P.A.*, No. 99-308-SLR, 2001 WL 641737, at *7 (D. Del. May 24, 2001) (finding that pre-trial discovery of a defendant's finances is generally not permitted under the Federal Rules of Civil Procedure) (citing *Gangemi v. Moor*, 268 F. Supp. 19, 21-22 (D. Del. 1967)).

Such potential post-judgment discovery has absolutely no bearing on the allegations made in the Adversary Proceeding, and Eugenia is not entitled to this information.  *See Topps Chewing Gum, Inc. v. Fleer Corp.*, 1985 WL 24928, at *2 (Del. Ch. Nov. 25, 1985) ("If the information sought, however, is irrelevant and can have no possible bearing on the issues or the

action, the discovery should not be allowed."); *see also Conner v. Purdue Farms, Inc.*, 2013 WL 5977361, at *7 (D.N.J. Nov. 7, 2013) (denying discovery into merits of action at class certification stage because such discovery is "not relevant or necessary at this…stage of litigation").   Because Eugenia is not entitled to any discovery into Mr. Glaser's personal finances, the Court should deny Eugenia's request that Mr. Glaser be re-deposed based upon the instruction not to answer this line of questioning.[34]

**D.    PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED.**

This entire dispute centers around the production of privileged documents to an obviously adverse party, in a number of separate ongoing litigations.   In its Motion to Compel, Eugenia suggests that Defendants should hand over privileged documents without Court intervention, and that their failure to do so equates to an attempt to obfuscate discovery.   This argument defies all logic.

The privileges and confidentialities between attorneys and their clients are the fundamental cornerstone upon which our legal system is based.   *See In re Teleglobe Commc'ns*, 493 F.3d, at 361, n.13 ("[T]he attorney-client privilege is integral to the functioning of our legal system.").   Defendants' efforts to prevent the disclosure of privileged documents is "substantially justified" in this instance, especially given the Court's prior ruling on some of these issues.

The undersigned has an obligation to its current, and former clients, to protect their privileged documents.   That motion practice is necessary on these issues is not sanctionable

---

[34]  While Defendants' counsel did not use the word "harassing" during the deposition, he clearly set forth the basis for his instruction by stating, "If you're entitled to discovery regarding Mr. Glaser's income or tax returns, that would be post judgment discovery.  You don't have a judgment from him to get this -- against him at this point."  To the extent that the Court believes that a "motion" is necessary to prevent Eugenia from asking questions regarding information clearly outside the scope of these proceedings, Defendants hereby make a motion, *nunc pro tunc*, for protective order relating to Eugenia's ability to depose Mr. Glaser to obtain post-judgment discovery regarding his personal finances given that Eugenia does not have a judgment against Mr. Glaser.

behavior. Additionally, given this Court's prior rulings, the Chapter 7 Trustee's position on the joint defense privilege, and the fact that Eugenia is in possession of all privilege logs, it is clear that Defendants are not required to produce any of the documents sought in the Motion to Compel.

Accordingly, Eugenia's request for sanctions should be denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order: (a) denying Plaintiff's Motion to Compel; (b) denying Plaintiff's Request for Sanctions; and (c) granting any further relief that the Court deems just and necessary.

Dated:  November 22, 2013
        Wilmington, Delaware

Respectfully submitted,


*/s/ Curtis S. Miller*
Curtis S. Miller (Bar No. 4583)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email: CMiller@MNAT.com

and

AKERMAN LLP (f/k/a Akerman Senterfitt)
One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Telephone: (305) 374-5600
Facsimile:  (305) 374-5095
Attn: Brian P. Miller, Esq.

*Attorneys for MapleWood Holdings, LLC,*
*MapleWood Management LP, MapleWood Partners*
*LP, Robert V. Glaser, and Robert J. Reale*