# EXHIBIT C

{27517212;1}

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| AMC INVESTORS, LLC, | ) | Case No. 08-12264 (CSS) |
| Debtor. | ) | |
| In re | ) | Chapter 7 |
| AMC INVESTORS II, LLC, | ) | Case No. 08-12265 (CSS) |
| Debtor. | ) | |
| EUGENIA VI VENTURE HOLDINGS, LTD., ON BEHALF OF AMC INVESTORS, LLC AND AMC INVESTORS II, LLC, | ) | Adv. Pro. No. 11-_____ |
| | ) | Adv. Pro. No. 11-_____ |
| Plaintiffs, | ) | |
| vs. | ) | |
| MAPLEWOOD HOLDINGS LLC, MAPLEWOOD MANAGEMENT LP, MAPLEWOOD PARTNERS LP, ROBERT V. GLASER, AND ROBERT J. REALE, | ) | |
| Defendants. | ) | |

## ADVERSARY COMPLAINT

Plaintiffs Eugenia VI Venture Holdings, Ltd. ("Eugenia"), on behalf of debtors AMC Investors, LLC and AMC Investors II, LLC (together, the "Debtors"), for their Adversary Complaint, allege as follows:

RLF1 4060733v. 2

## NATURE OF ACTION

1. This is an action for breach of fiduciary duty. The Debtors were shareholders of AMC Computer Corp. ("Computer"). The defendants managed the Debtors and effectively ran Computer. Defendants owed Debtors a duty to provide oversight of Computer's governance and monitor the performance of the company.

2. As a result of the defendants' actions or inactions, Computer could not pay its debts and was eventually liquidated. The Debtors were Computer's guarantors under its principal lending agreement. The Debtors were sued under that guaranty and are subject to a judgment against them for $10.7 million.

3. Defendants owed duties of care and loyalty to the Debtors. Defendants breached their fiduciary duties to the Debtors by instituting, directing and/or failing to discover and prevent a massive fraud by the Board and management of Computer. The Debtors seek in this adversary proceeding to recover the losses and costs that resulted from defendants' breaches of fiduciary duty when the Debtors suffered the $10.7 million judgment.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Eugenia VI Venture Holdings, Ltd. is a creditor of the Debtors.

5. Debtors AMC Investors, LLC and AMC Investors II, LLC are limited liability companies organized under the laws of Delaware. Involuntary petitions for relief under chapter 7 of Title 11 of the United States Code were filed against the Debtors on September 30, 2008, and orders for relief against the Debtors were entered on June 5, 2009.

6. Defendant Maplewood Holdings LLC ("Holdings") is a limited liability company organized under the laws of Delaware. Holdings is the general partner of defendant Maplewood Management LP and the general partner of defendant Maplewood Partners LP.

2

7. Defendant Maplewood Management LP ("Management") is a limited partnership organized under the laws of Delaware.

8. Defendant Maplewood Partners LP ("Partners") is a limited partnership organized under the laws of Delaware.

9. Defendant Glaser was the de facto chairman of Computer, and dominated and controlled its Board and management. Glaser is the managing member of Holdings and a partner of Management.

10. Defendant Reale was Vice-Chairman and a member of Computer's Board of Directors, chair of its Audit Committee, and its de facto Chief Executive Officer. Reale is a partner of Management. Reale was posted at Computer's offices and exercised substantial managerial discretion.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and 11 U.S.C. §§ 1109(b) and 1103(c)(5) because the claims asserted in this adversary proceeding arise in the above-captioned chapter 7 cases and are being brought on behalf of the Debtors and the Debtors' estates. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### DEFENDANTS' CONTROL OF DEBTORS AND COMPUTER

13. Computer was an information technology professional services firm whose principal business was the sale of computer hardware.

14. Defendants controlled the Debtors and managed the Debtors' investment in Computer.

15. The Debtors had the right to name a majority of Computer's 6-member Board of

3

Directors.

16. Defendants appointed four individuals to Computer's Board of Directors: Reale, Glen Dell, Ronald Augustin, and Buster Glosson (together with de facto director Glaser, the "Directors").

17. All of the Directors were members, limited partners, and/or employees of the Maplewood Entities. The Directors were at all times acting as agents of the Maplewood Entities.

## COMPUTER'S GOVERNANCE DURING THE DIRECTORS' TENURE

18. During the Directors' tenure, Computer's governance was marked by widespread improprieties and irregularities that contributed to Computer's deteriorating financial condition. Defendants actively initiated and directed these improprieties, or took no action to prevent or halt them.

### Lack of Ordinary Corporate Governance

19. Defendants failed to ensure ordinary corporate governance at Computer. The Audit Committee of Computer's Board met only once or twice and never prepared minutes. The Computer Board did not meet at all for many months at a time. The Board only met with Glaser, and only met when Glaser wanted a meeting. Computer had no Chief Financial Officer after October 2004. Computer's nominal Chief Executive Officer was stripped by Glaser of the power to hire or fire employees. Requests that Glaser hold more frequent meetings of the Board of Directors were ignored. The CFO of the company reported not to the CEO but to Reale.

### Computer's Breach of Its Loan Agreement with Eugenia

20. Eugenia was Computer's principal lender.

21. The Debtors guaranteed Computer's obligations to Eugenia.

22. In 2005, Computer disclosed to Eugenia that it was in breach of their loan

4

agreement in several respects. During the period of 2005 through 2007, the details of that breach slowly emerged. First, Computer's financial statements were not prepared and maintained in accordance with Generally Accepted Accounting Principles ("GAAP"). Second, Computer's financial statements were not given an annual audit by an independent accounting firm. Third, Computer was no longer solvent. Fourth, Computer had lied to Eugenia with respect to the value of the collateral for its loans and the size of Computer's accounts receivables.

**Accounting Improprieties**

23. At the direction of Reale, and with the knowledge of Glaser, Computer was involved in a wide-reaching and extensive accounting fraud pursuant to which it grossly overstated its accounts receivable in violation of GAAP.

24. Under GAAP, a seller of computer hardware may not recognize revenue from a sale unless and until the product has been received at and installed at the customer's place of business, and title has passed to the buyer. Accordingly, no account receivable may be booked in connection with such a transaction until those conditions are satisfied. This rule was routinely broken at Computer at the direction of Reale and with the knowledge of Glaser.

25. Pursuant to the loan agreement, Computer had to tender to Eugenia a "borrowing base certificate" any time it wanted to borrow money.

26. In each borrowing certificate, Computer had to represent to Eugenia the amount of its "Eligible" accounts receivable.

27. In each certificate, Computer made the following written representations:

> (i) there exists . . . no Default or Event of Default under the Loan Agreement; . . . and (iii) each of the representations and warranties contained in the Loan Agreement and the Other Loan Documents [are] true and correct.

28. These representations were false. Computer was not maintaining its books in

5

accordance with GAAP; Computer was not employing the practice of revenue recognition set forth in the Credit Agreement; the borrowing base certificates included accounts receivable that were not "Eligible;" Computer was not "solvent;" and Computer did not have audited financial statements. These facts were known by defendants.

29. All payments from customers of Computer were to be made to the lockbox maintained at Northern Trust. However, Computer's employees encouraged customers to send payments directly to Computer which then used those payments for a variety of inappropriate purposes.

30. The Directors engaged in a series of self-dealing transactions, using the assets of Computer and the loan collateral to: (a) pay unsecured creditors, including themselves; (b) pay employees, including themselves; (c) pay fees to Maplewood and directors; and (d) pay rent to one of the Directors.

## THE DEBTORS SUFFER AN ADVERSE JUDGMENT

31. After being told that the borrowing base certificates were incorrect, Eugenia stopped advancing funds and declared a default. Computer ceased operations shortly thereafter.

32. As a result of the defendants' actions or inactions, Computer was unable to pay its debts to Eugenia.

33. On July 18, 2007, Eugenia obtained a judgment (the "Judgment") against the Debtors for their liability under the guaranty in the amount of $10,710,455. A copy of that judgment is attached hereto as Exhibit A.

34. From and after the date of entry of the Judgment, defendants have continued to exercise control over the Debtors. Defendants have misused their control over the Debtors to protect defendants – including the Maplewood Entities – from any act by the Debtors to obtain

6

relief from one or more of the defendants, including but not limited to relief sufficient to satisfy Debtors' obligations under the Judgment in whole or in part. Defendants' misuse of their control of the Debtors to protect defendants has continued after the entry of the orders for relief in these proceedings.

## THE DIRECTORS' DEFAULT ON THEIR OBLIGATIONS

35. Despite defendants' duty to provide sufficient oversight of Computer's governance and adequately monitor the Directors' performance, defendants failed to supervise the Directors and allowed them to entirely default on their obligations as directors, which duties they did not understand, did not possess the abilities to meet, or affirmatively breached.

36. Augustin testified that he did not read the Credit Agreement before it was executed and did not understand its terms. He testified that he had no understanding concerning the accounting practices that were followed at Computer concerning the recognition of revenue from the sale of its products. Augustin testified that he was not aware that by failing to obtain an audit opinion, Computer was defaulting on the Credit Agreement. Augustin testified that he did not know who the Chairman of the Computer Board was. He claimed to not know that, under the Credit Agreement, the amount Computer was entitled to borrow could never be larger than its accounts receivables. By his own admission, however, no later than March 2005, he became aware of the fact that Computer had booked receivables prematurely but he did nothing to alert others on the Board nor did he attempt to stop or correct the practice.

37. Computer's nominal Chief Executive Officer signed the Credit Agreement without reading it or even seeing any portion of it other than the signature pages he executed. He testified that he never read or even possessed a copy of the agreement prior to the declaration of default by Eugenia. Although he signed scores of borrowing base certificates, he has testified

7

that he did not read them before signing, and that he had no idea that they were being sent to Eugenia as requests for borrowings. He claimed to have never heard the expression "eligible receivables" in connection with the loan before the declaration of default, and that he did not know what collateral secured the Eugenia loan. He testified that he was unaware of the existence of periodic inventory reports at Computer, and that he never saw any. He did not keep informed concerning the amounts outstanding under the Credit Agreement and is unaware that periodic reports on that subject were distributed to management and Board members. He testified that he was unaware whether the Credit Agreement required Computer to obtain independent audit opinions each year. He did not make it his practice to review the Company's audited financial statements and testified that he has "a very limited understanding of financial statement[s]."

38. Dell, Computer's nominal Chairman, never saw the Credit Agreement or related documents. He did not know whether the company's financial statements were the subject of an independent audit. Because of a family crisis, Dell, by his own admission, did not fully function as an active, informed Board member after September 2003, but he did not resign from the Board.

39. Glosson, a member of the Computer Board's Audit Committee, never read any part of the Credit Agreement except for some portions concerning covenants. He did not discuss Computer's accounting policies with the CFOs of the company. No Audit Committee meetings were held for months at a time, and no minutes of any Committee meeting were ever prepared. Glosson claimed not to know that there had been a failure to properly record all accounts payable at Computer. After learning of problems with the timing of revenue recognition, he testified that he did not do anything to ensure that the problem would not be repeated.

40. Computer's accounting improprieties, its making of false statements, its misuse of

8

the loan collateral and the other misconduct described above occurred at the direction of Reale and with the knowledge of Glaser.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

41. Plaintiffs repeat and reallege paragraphs 1 through 40 above, as if fully set forth herein.

42. Defendants owed the Debtors fiduciary duties. These duties required the defendants at all times to act on behalf of the Debtors in good faith, to exercise the care that an ordinarily prudent person in a like position would exercise under similar circumstances, and to conduct themselves in the best interests of the Debtors. As part of their fiduciary duties, defendants were required to appoint qualified and competent individuals to Computer's Board of Directors and to continuously monitor the conduct of those individuals in the carrying out of their responsibilities as directors. Defendants failed to do either.

43. Defendants knew or should have known that the Directors – the majority of whom defendants appointed to the Board themselves – were not qualified for the positions of Directors, and defendants knew or should have known that the Directors would be unable to understand, be unwilling to discharge, or would affirmatively breach, their responsibilities as directors.

44. Defendants acted in bad faith or were grossly negligent and intentionally failed to act (which was also in bad faith), by instituting, directing, and/or failing to discover and prevent repeated fraudulent acts and omissions by the Board and management of Computer which occurred over the course of several years. Defendants knew or should have known about the acts and omissions described in this Adversary Complaint, but defendants in no way employed or exhibited the standard of care or deliberative or knowledgeable actions or processes necessary to fulfill their fiduciary duties to the Debtors.

9

RLF1 4060733v. 2

45. The Directors rarely attended to matters of corporate governance, rarely reviewed the company's financial statements, did not realize Computer's widespread accounting improprieties, had no knowledge of the company's increasing dire financial condition, were even unaware of Computer's obligations under the Credit Agreement, and further in the few instances where a Director became aware of one of those issues, he or she failed to stop or correct it.

46. The repeated fraudulent acts or omissions by the Board and management of Computer occurred at the direction of Reale and with the knowledge of Glaser.

47. The defendants violated their duties of good faith, due care and loyalty by allowing Computer's governance to fall into egregious disarray, where ordinary corporate governance was entirely disregarded; where widespread accounting improprieties and irregularities, including "pre-billing," were practiced with abandon; and where the company failed to conduct annual audits and properly keep records of its accounts payable.

48. The defendants also violated their duties of good faith, due care and loyalty by permitting the Directors to enter into a Credit Agreement with Eugenia under circumstances where most of the Directors never read or otherwise made themselves aware of the material provisions thereof; where false representations and warranties were made by Computer in that Credit Agreement; and where false representations were made in borrowing base certificates issued in connection with that Credit Agreement.

49. The defendants also violated their duties of good faith, due care and loyalty by permitting the Directors to cause or allow to occur the misuse of the loan collateral and other Computer assets, including diverting monies paid by customers from the lockbox and repeated acts of self-dealing.

50. The defendants also violated their duties of good faith, due care and loyalty by

10

allowing the Directors to continue to take out loans even as Computer fell further into debt and it became clear that Computer would be unable to repay its debts, with Computer ultimately ceasing operations after Eugenia pulled its funding upon learning that Computer had defaulted under the Credit Agreement.

51. The defendants also violated their duties of good faith, due care and loyalty by allowing the repeated fraudulent acts or omissions described in this Adversary Complaint to occur at the direction of Reale and with the knowledge of Glaser.

52. After entry of the Judgment, the defendants violated their duties of good faith, due care and loyalty by exercising their control over the Debtors to prevent the Debtors from acting to obtain any relief from one or more the defendants, including but not limited to relief sufficient to satisfy Debtors' obligations under the Judgment in whole or in part.

53. The defendants have violated their duties of good faith, due care and loyalty after entry of the orders for relief in these proceedings by exercising their control over the Debtors to prevent the Debtors from acting to obtain any relief from one or more the defendants, including but not limited to relief sufficient to satisfy Debtors' obligations under the Judgment in whole or in part. Defendants also have exercised their control over the Debtors after the entry of orders for relief in these proceedings to cause Debtors to act in the best interests of the defendants rather than in the best interests of the Debtors and the Debtors' estates.

54. The defendants personally profited from the conduct alleged above to the detriment of the Debtors.

55. The Debtors were damaged as a result of defendants' breaches of fiduciary duty.

56. As a direct and proximate result of defendants' acts and omissions, the Debtors were injured and damaged by the loss of over $10.7 million upon incurring a judgment pursuant

11

to the Credit Agreement's Guaranty.

## SECOND CLAIM FOR RELIEF
### (Aiding & Abetting Breach of Fiduciary Duty)

57. Plaintiffs repeat and reallege paragraphs 1 through 56 above, as if fully set forth herein.

58. Each defendant gave substantial assistance, aided, abetted, encouraged, and/or caused the other defendants' breaches of fiduciary duty, knowing, or having reason to know, the nature of the injury to the Debtors brought about by such substantial assistance.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, plaintiffs respectfully demand that the Court enter a judgment in favor of the Debtors' estates against defendants:

(1) awarding the Debtors' estates compensatory and punitive damages in an amount to be determined at trial, with interest, at the maximum amount permitted by law;

(2) awarding plaintiffs their attorneys' fees, costs, and disbursements in prosecuting this action; and

(3) awarding such other and further relief as this Court deems just and proper.

Dated: June 3, 2011
Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Cory D. Kandestin (No. 5025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Mitchell A. Karlan (MK-4413)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
50th Floor
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Counsel for Eugenia VI Venture Holdings, Ltd. on behalf of debtors AMC Investors, LLC and AMC Investors II, LLC*

# EXHIBIT A

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------x
EUGENIA VI VENTURE HOLDINGS, LTD.,
                        Plaintiff,

    -against-

AMC INVESTORS, LLC and AMC INVESTORS II, LLC,

                        Defendants,
------------------------------------------------x

Index No. 603193/2005

J. Helen E. Freedman
Part 39

**AMENDED JUDGMENT**

       Plaintiff Eugenia VI Venture Holdings, Ltd., having moved (motion seq. no. 001) in this action for an order granting summary judgment in lieu of complaint against defendants AMC Investors, LLC and AMC Investors II, LLC pursuant to CPLR 3213, and this motion having been fully briefed and argued before the Court; the Court having rendered decision:

       GRANTING the motion for summary judgment in lieu of complaint in favor of plaintiff Eugenia VI Venture Holdings, Ltd. and against defendants AMC Investors, LLC and AMC Investors II, LLC, and summary judgment on liability having been affirmed by the Appellate Division on December 5, 2006; and this court

       HAVING set down a hearing on damages to be held on May 16, 2007, and

       HAVING held a hearing on damages, professional fees, expenses and costs and disbursements to plaintiff Eugenia VI Venture Holdings, Ltd., on May 16 and May 25, 2007, as taxed by the Clerk of the Court upon submission of an appropriate bill of costs; and

       HAVING directed the plaintiff on May 25, 2007 to submit judgment, it is

       ADJUDGED, that plaintiff Eugenia VI Venture Holdings, Ltd., Bessemer Trust Company (Cayman) Limited, CIBC Financial Centre Third Floor, 11 Dr. Roy's Drive,

Georgetown, Cayman Islands, recovers of defendants AMC Investors, LLC and AMC Investors II, LLC, both located at Maplewood Management, LP, 255 Aragon Avenue, Suite 300, Coral Gables, Florida, the sum of $6,958,861.00 in principal and interest, plus $1,000,504.00 for services rendered by KPMG LLP for forensic accounting and expert services, plus $2,750,000.00 for attorneys' fees for services rendered by Gibson, Dunn & Crutcher, LLP, together with costs and disbursements as taxed by the Clerk upon submission of an appropriate bill of costs, in the amount of $1,090.00, *For a Total sum of $ 10,710,455.00* and that plaintiff Eugenia VI Venture Holdings, Ltd. has execution therefor; and

WITH this Amended Judgment, the Court hereby vacates the judgment signed in this matter on June 20, 2007.

July 17, 2007

_____
Hon. Helen E. Freedman

_____
CLERK

**FILED**

JUL 18 2007

COUNTY CLERK'S OFFICE
NEW YORK

2

Supreme Court Records OnLine Library - page 2 of 4