UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| **AMC INVESTORS, LLC,** | ) | |
| | ) | Case No. 08-12264 (CSS) |
| Debtor. | ) | |
| In re: | ) | |
| | ) | Chapter 7 |
| **AMC INVESTORS II, LLC,** | ) | |
| | ) | Case No. 08-12265 (CSS) |
| Debtor. | ) | |
| **EUGENIA VI VENTURE HOLDINGS, LTD.,** | ) | Adv. Pro. No. 11-52317 (CSS) |
| **ON BEHALF OF AMC INVESTORS, LLC** | ) | |
| **AND AMC INVESTORS II, LLC,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adv. Pro. No. 11-52318 (CSS) |
| | ) | |
| **MAPLEWOOD HOLDINGS LLC,** | ) | |
| **MAPLEWOOD MANAGEMENT LP,** | ) | **Re: D.I. 100, 102** |
| **MAPLEWOOD PARTNERS LP,** | ) | |
| **ROBERT V. GLASER, AND ROBERT J.** | ) | |
| **REALE,** | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION (I) TO COMPEL THE PRODUCTION OF DOCUMENTS AND TESTIMONY; AND (II) FOR SANCTIONS

Eugenia VI Venture Holdings, Ltd. ("Eugenia"), on behalf of debtors AMC Investors, LLC and AMC Investors II, LLC (together, the "Debtors" or "Plaintiffs"), files this reply (the "Reply") to *Defendants' Response in Opposition to Plaintiffs' Corrected Motion (I) To Compel Documents and Testimony; and (II) For Sanctions and Incorporated Memorandum of Law* [Adv. Pro. Docket No. 102] (the "Defendants' Objection"), in support of *Plaintiffs' Corrected Motion (I) To Compel the Production of Documents and Testimony; and (II) For Sanctions* [Adv. Pro. Docket No. 100] ("Plaintiffs' Motion to Compel").

## PRELIMINARY STATEMENT

"Truth will ultimately prevail where there is pains to bring it to light."

—George Washington, August 10, 1794.

This is a quest for truth. Orders for relief were entered for the "valid bankruptcy purpose" of allowing the estates to bring "claims against the…Debtors' officers and directors in…a…derivative suit." *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009). The Bankruptcy "Code's goal of uncovering insider fraud would be substantially defeated" if the Debtors' former managers are able to hide behind claims of privilege in order to "effectively thwart an investigation into their own conduct." *CFTC v. Weintraub*, 471 U.S. 343, 353-354 (1985).

But that is exactly what Defendants are trying to do. Defendants ask this Court to disregard the corporate form by refusing to recognize that the Debtors are separate legal entities with their own legal rights, effectively reverse its recognition that these cases have been brought for a "valid bankruptcy purpose," and ignore Supreme Court and other precedent that demands turnover of documents that have been sought—all so that Defendants' misdeeds can stay hidden under the cloak of the Debtors' privilege. The Court must see through Defendants' efforts to hide the truth. The "bright light" of bankruptcy must be allowed to shine.

## RELEVANT BACKGROUND

An overview of the relevant background is set forth on pages 3 to 13 of Plaintiffs' Motion to Compel and will not be repeated here.

However, Plaintiffs must to respond to Defendants' assertion that Plaintiffs' Motion to Compel is predicated on "myriad falsities and misstatements." In support of this inaccurate averment, Defendants produce a chart of alleged "false statements" (which in most cases are

2

self-serving characterizations of what Plaintiffs said, and not actual quotes) and alleged "actual

facts." That chart is reproduced below with a third column added that explains the truth.

| ALLEGED "FALSE STATEMENT" | ALLEGED "ACTUAL FACTS" | THE TRUTH |
|---|---|---|
| "Chapter 7 Trustee waived 'any privilege.'" | "Trustee has waived the attorney/client privilege only.  At the hearing on the Rule 2004 discovery issues, Trustee's counsel clearly stated that the Trustee *'would respect the joint privilege.'* Transcript at 22:6-16.  Moreover, the Trustee has also never indicated he would waive work product.  Even the emails cited by Eugenia from the Trustee state that he waives the Debtors' 'privilege;' there is no mention of work product." | According to the trustee: "[A]s trustee of this bankruptcy estate **I waive any and all applicable privileges** of debtor as against Eugenia." *See* Plaintiffs' Motion to Compel, Exhibit D (emphasis added).  In an email sent after the hearing referenced by Defendants, the trustee's counsel later "reconfirm[ed] that the Trustee has agreed to waive the debtors' privilege – including attorney/client privilege – so as to permit Eugenia to access any information in the debtors' records that will assist in the prosecution of the litigation on behalf of the debtors' estates." *See* Plaintiffs' Motion to Compel, Exhibit C (emphasis added).  For the reasons explained herein, there is no "joint privilege" applicable to the requested documents.  Nonetheless, to put an end to the matter, the trustee has again confirmed that "**the Trustee agrees to waive any and all privilege and protections** as to the documents and other records of the AMC debtors **including, without limitation, any attorney/client privilege, co-client or joint defense privilege, protections afforded under the work product doctrine, and under any other similar privilege and/or protection**." *See* e-mail from D. Dube to M. Ramos, annexed hereto as Exhibit A. |
| "Eugenia is bringing these adversary claims 'on behalf of the Debtors;' therefore, Eugenia is entitled to privileged documents relating to cases in which Eugenia is | "This is a single creditor bankruptcy.  Despite Eugenia's undisguised attempt to gain access to privileged documents relating to cases in which Eugenia is directly adverse, Eugenia is the only creditor of the estate.  Eugenia represents no other interests but its | The Court appointed Eugenia "as estate representative **on behalf of the Debtors** to assert all estate causes of action set forth in the Adversary Complaint...." *Order Granting Eugenia VI Venture Holdings, Ltd. Standing to Assert Estate Fiduciary Duty Claims* ¶ 2 [Case No. 08-12264, Docket No. 79] (the "Standing Order") |

| ALLEGED "FALSE STATEMENT" | ALLEGED "ACTUAL FACTS" | THE TRUTH |
|---|---|---|
| directly adverse." | own; it is undeniable that Eugenia is attempting to gain an unfair tactical advantage by obtaining privileged documents to which it would never be entitled in the pending Guaranty Lawsuit." | (emphasis added). The Court has already rejected the argument that "the Court should abstain because the case is a two-party dispute." *In re AMC Investors, LLC*, 406 B.R. 478, 487-89 (Bankr. D. Del. 2009). |
| "Defendants 'belatedly claim reliance' on the Court's ruling at the Rule 2004 hearing." | "The Rule 2004 hearing took place on April 26, 2010, and all discovery in this adversary proceeding has taken place since that time. The Court's ruling at that hearing is a valid ruling that has a binding effect on these proceedings. In the parties' 'meet and confer' conference calls regarding discovery, Defendants made their position abundantly clear and, at Eugenia's request, this position was then reduced to writing. There is nothing 'belated' about Defendants' position and Eugenia has been aware of the Court's ruling at all relevant times." | Defendants served their objection to the Defendant Requests on February 11, 2013. *See* Plaintiffs' Motion to Compel, Exhibit G. The objection makes no mention of the Court's ruling issued in the chapter 7 cases in connection with Rule 2004 discovery as a basis for refusing to produce documents in these Adversary Proceedings; yet Defendants apparently withheld documents on this basis. Defendants first informed Plaintiffs of their position in October 2013. |
| "Circumstances have changed (given the filing of the adversary complaint), and the Rule 2004 hearing ruling is no longer applicable." | "The circumstances have not changed. At the Rule 2004 hearing, the Court acknowledged that Eugenia was 'acting under [Rule] 2004, in effect, on behalf of the estate[.]' Given that the Court acknowledged that, at the time of the hearing, Eugenia was acting on behalf of the estate, and given that in the adversary proceeding, Eugenia is <u>still</u> purporting to act on behalf of the estate, the ruling is unquestionably applicable and relevant. The parties are required to abide by this ruling." | The Court's ruling in the chapter 7 cases in the context of Rule 2004 discovery never applied in these Adversary Proceedings. At the time of the Rule 2004 hearing, the trustee controlled the Debtors' causes of action. After the Rule 2004, hearing the Court appointed Eugenia "as estate representative on behalf of the Debtors to assert all estate causes of action set forth in the Adversary Complaint...." Standing Order ¶ 2. |
| "Defendants attempted to 'avoid legitimate discovery' by | "At the hearing on Eugenia's motion to compel the Rule 2004 production, neither party prevailed | The Court ordered further productions from the Debtors (then under Defendants' control) because Defendants were causing |

4

| ALLEGED "FALSE STATEMENT" | ALLEGED "ACTUAL FACTS" | THE TRUTH |
|---|---|---|
| opposing the Rule 2004 production." | entirely.  In fact, the Court ruled in Defendants' favor regarding the documents relating to ongoing lawsuits in which Eugenia was the adverse party (holding that such documents need not be produced); therefore, Defendants' good faith opposition to the scope of the Rule 2004 discovery was substantiated and, in part, upheld by the Court." | the Debtors to avoid legitimate discovery. |
| "Defendants did not produce any new documents pursuant to the First Request for Production in this adversary proceeding." | "Defendants did produce additional documents, Bates-labeled AMC-INV 3540-3735, to Eugenia's counsel on February 18, 2013." | Defendants mailed 194 pages of publicly-filed documents from prior litigation involving Eugenia—mostly documents filed by Eugenia.  These documents were not "new."  Upon further review, Plaintiffs have realized that Defendants included in this production a single, one-page "new" document in response to the 31 multi-part Defendant Requests. |
| "Defendants and Akerman only told Eugenia that it did not produce the documents which were the subject of the Rule 2004 hearing ruling by way of its letters dated October 25, 2013." | "These letters were generated at the request of Eugenia after two lengthy 'meet and confer' conference calls which took place on October 10, 2013 and October 21, 2013.  During those conference calls, the parties discussed each other's discovery issues, and undersigned counsel made clear Defendants' reliance upon the Court's Rule 2004 ruling.  At the conclusion of the second call, Eugenia requested that Defendants' position be stated in writing.  Now, Eugenia disingenuously claims that these letters were their first indication of Defendants' reliance on that ruling with respect to their production.  That is simply not true." | Defendants do not dispute that they did not identify the Rule 2004 ruling as a basis for their failure to search for or produce responsive documents until October 2013.  As Plaintiffs stated in their Motion to Compel, it was only after Plaintiffs' counsel pointed out Defendants' failure to produce documents that Defendants even acknowledged their failure to produce.  This first took place 272 days after Defendants were served, during a teleconference that was held on October 10, 2013.  But Defendants did not respond in accordance with the Rules (i.e., in writing) until 287 days after Defendants were served, October 25, 2013. *See, e.g.*, Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond **in writing within 30 days** after being served.") (emphasis added). |
| "Defendants' waived their privilege | "The privileges set forth on Defendants' prior privilege logs | Plaintiffs never asserted that Defendants waived the right to argue for the |

| ALLEGED "FALSE STATEMENT" | ALLEGED "ACTUAL FACTS" | THE TRUTH |
|---|---|---|
| objections by failing to revise the privilege logs from their prior productions in the Related Litigation because those privileges are no longer applicable." | produced in the Related Litigation are all still applicable. Indeed, to the extent that the log entries do not include the Debtors, the privilege is absolute. To the extent that log entries do include the Debtors, the Trustee has not waived — and cannot waive — the joint privilege, and it is proper to continue to withhold those documents." | applicability of any privileges that were actually asserted. What Plaintiffs pointed out was that numerous documents produced by Akerman were heavily redacted, that the basis for the redactions was not identified on Akerman's log, and that therefore any alleged privilege is waived. *See. e.g., Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper,* 233 F.R.D. 1, 9 (D.D.C. 2005) ("where a party fails to assert a privilege on its privilege log or in any of its pleadings, the privilege is waived"). With respect to the privilege logs from the Related Litigation, Plaintiffs simply observed that "Defendants 're-adopt and re-assert' privilege logs that were provided in other litigations and fail to acknowledge the changed circumstance that the chapter 7 trustee has waived any privilege." Plaintiffs' Motion to Compel, at 2. This was and is a true statement. Defendants' logs continue to assert attorney-client privilege with respect to the Debtors' documents.[1] |
| "Defendants' withheld the privilege logs from their prior productions from Eugenia's counsel." | "All of the prior logs were originally produced directly to Gibson Dunn. Counsel's failure to locate documents in his own files is not Defendant's problem. Even so, during the 'meet and confer' conference calls, Defendants stated that they would re-produce the logs to Eugenia. Defendants did so on November 15, 2013." | Plaintiffs did not make the alleged "false statement." Instead, Plaintiffs made the following remark: "Despite their burden to prove the existence and applicability of any privileges in these Adversary Proceedings, Defendants ignored Plaintiffs' requests for copies of the logs. Plaintiffs are in the process of attempting to locate the logs, but as of the date hereof do not have all of the copies." Plaintiffs' Motion to Compel, at 14. In other words, Plaintiffs relied on Defendants' representation "that they |

---

[1] Since Defendants have now provided the logs, they can now be provided to the Court. Copies of the logs are annexed hereto as Exhibit B. Upon review of the logs, it appears that many improper assertions of privilege were made. For example, Defendants claim "Work Product Doctrine" as the basis for withholding an e-mail between Defendant Glaser and Defendant Reale—neither of whom are lawyers. Plaintiffs reserve their right to challenge these improper assertions of privilege on an item-by-item basis should the Court deny Plaintiffs' present Motion to Compel that seeks blanket turnover of the documents.

| ALLEGED "FALSE STATEMENT" | ALLEGED "ACTUAL FACTS" | THE TRUTH |
|---|---|---|
| | | would re-produce the logs to Eugenia" and did independently search to re-locate the logs that had been provided over the span of 8 years. The fact that Defendants provided copies of the logs after Plaintiffs' Motion to Compel was filed does not render Plaintiffs' statements false when made. |
| "Defendants improperly instructed deponents not to answer relevant questions." | "As to Mr. Augustin, the undersigned re-visited his instruction as part of the "meet and confer" calls, and Defendants have provided an affidavit to Eugenia answering the one question which Mr. Augustin was instructed not to answer.<br><br>As to Mr. Glaser, the undersigned instructed Mr. Glaser not to answer questions relating to his personal finances, because these questions clearly seek irrelevant discovery that could only possibly be relevant to future post-judgment discovery, if any. Given that Eugenia has never obtained a judgment against Mr. Glaser, in any lawsuit, these questions are harassing and irrelevant, and the instructions given were appropriate." | It is undisputed that Defendants' counsel instructed deponents not to answer questions on grounds of relevance. "[I]t is improper to instruct a witness not to answer a question based on form and relevancy objections." *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla. 1999). As a matter of law, Defendants' instructions were improper. In any event, the questions relating to Glaser's personal finances are plainly relevant given Defendants' defense based on their assertion that they did not personally profit from their breaches. *See* Defendants' Reply In Support of Motion To Dismiss, at 3 [Adv. Pro. Docket No. 29] ("Eugenia must adequately allege that Defendants...'receiv[ed] a personal benefit that was not received by the shareholders generally.'") (citation omitted). |

## ARGUMENT

### 1. Defendants and Debtors' Counsel Should Be Required To Produce <u>All</u> Relevant Documents

#### a. The Joint Defense <u>Privilege</u> Does Not Apply

"The joint defense privilege…is not really a separate privilege. Rather, it is a limited exception to the general rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party outside the attorney-client relationship." *ECDC*

7

*Envtl., L.C. v. New York Marine & Gen. Ins. Co.*, 1998 U.S. Dist. LEXIS 8808, at \*46 (S.D.N.Y. June 4, 1998); *see also, e.g., Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432, 443 (E.D. Tex. 2003) *rev'd on other grounds*, 387 F.3d 416 (5th Cir. 2004) ("The 'joint defense' privilege…is not an independent privilege, but merely an exception to the general rule that no privilege attaches to communications that are made in the presence of or disclosed to a third party."). Thus, "**communications are not privileged between the joint clients**." *In re Hotels Nev., LLC*, 458 B.R. 560, 570 (Bankr. D. Nev. 2011) (emphasis added, citations omitted); *see also, e.g.*, Restatement (Third) of the Law Governing Lawyers, § 75 cmt. d ("As stated in Subsection (2), in a subsequent proceeding in which former co-clients are adverse, one of them may not invoke the attorney-client privilege against the other with respect to communications involving either of them during the co-client relationship."); Model Rules of Prof'l Conduct, Rule 1.7 cmt. 30 (2004) ("With regard to the attorney-client privilege, **the prevailing rule is that, as between commonly represented clients, the privilege does not attach**.").[2]

These Adversary Proceedings are being prosecuted on behalf of the Debtors—co-clients to the joint representation. Well-settled, black letter law demands that all documents and communications relating to the joint representation be turned over to the Debtors; regardless of whether the Debtors were party to the particular communication. *See, e.g., Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 2013 U.S. Dist. LEXIS 103309, at \*229-\*231 (S.D. Fla. July 15, 2013) ("[T]he Court finds that Plaintiffs and Defendant essentially were **co-clients** of Miller (and the related attorneys) as to the defense of the Underlying Matters and, thus, **have no privilege to assert** against the disclosure of communications or documents to each other which were **shared between any party and Miller** (and the related attorneys) on that subject. (emphasis added; footnotes omitted) (applying this rule to the MapleWood Defendants).

---

[2] Numerous other cases supporting this universal black-letter rule were cited in Plaintiffs' Motion to Compel.

(i)    *Defendants' Waiver Arguments Are A Red Herring*

In an effort to avoid this clear rule, Defendants make three flawed arguments. First, Defendants argue that "the Chapter 7 Trustee has not, and cannot waive the joint privilege...." Defendants' Objection, at 16. As noted above, the "joint defense privilege" isn't really a separate privilege. It is merely an exception to the rule that the presence of a third party destroys the attorney-client privilege. Since the Debtors were actual parties to the joint representation, **there simply is no "privilege" to be waived vis-à-vis the other parties to the joint representation**. Applying this rule in the bankruptcy context, a court recently observed:

> [T]he Trustee claims that the joint-client privilege does not apply to him, as the estate representative, with respect to joint communications. The debtors received these communications; he simply wants copies of them. Put another way, he wants property belonging to the estates. His theory that the content of joint communications belongs equally to the clients is recognized...by cases examining the issue.

*In re Hotels Nev., LLC*, 458 B.R. 560, 570-571 (Bankr. D. Nev. 2011) (citing numerous cases).

Defendants attempt to muddy the water by citing to cases which hold that one party to the joint representation may not unilaterally waive the attorney-client privilege that belongs to the group as a whole (the so-called "joint-defense" privilege) vis-à-vis outsiders to the group. As the numerous cases cited above and in Plaintiffs' Motion to Compel amply demonstrate, that rule does not apply as between the co-clients to the joint representation. Instead, each co-client has "an undivided ownership interest in, and equal right of access to, all of [the] files" related to the joint representation. *Scroggins v. Powell, Goldstein, Frazer & Murphy (In re Kaleidoscope, Inc.)*, 15 B.R. 232, 244 (Bankr. N.D. Ga. 1981) *rev'd on other grounds*, 25 B.R. 729 (N.D. Ga. 1982). In this sense, "waiver" (or non-waiver) of the joint defense privilege is a complete red herring because there is no joint defense privilege to be waived.

9

Nonetheless, to avoid any doubt about the matter, the trustee has waived any joint defense privilege (to the extent it applies).  *See* e-mail from D. Dube to M. Ramos, annexed hereto as Exhibit A ("[T]he **Trustee agrees to waive any and all privilege** and protections as to the documents and other records of the AMC debtors **including**, without limitation, any attorney/client privilege, **co-client or joint defense privilege**, protections afforded under the work product doctrine, and under any other similar privilege and/or protection.").

> (ii)    *Disclosure of the Debtors' Documents to the Debtors' Representatives Is Appropriate*

Defendants tacitly concede, as they must, that the joint defense doctrine does not prevent turnover to the chapter 7 trustee. So, Defendants move on to argue that even though the chapter 7 trustee could review and use the alleged "joint defense" documents in litigation against Defendants, Eugenia cannot because Eugenia "was and is not a party to the joint representation...." Defendants' Objection, at 15. This thin distinction does not hold water.  In the numerous cases where chapter 7 trustees have been given access to "joint defense" documents, the trustee was never a "party to the joint representation."  But that does not matter, the Debtors were a "party to the joint representation."  And, when an entity is placed in bankruptcy, the entity's documents and privilege are transferred to the estate.  According to the Supreme Court:

> [T]he trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors.  It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files. To the extent that management had wrongfully diverted or appropriated corporate assets, it could use the privilege as a shield against the trustee's efforts to identify those assets. The Code's goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own conduct.

*CFTC v. Weintraub*, 471 U.S. 343, 353-354 (1985) (citations omitted).

By order of the Court, Eugenia is prosecuting these Adversary Proceedings "as estate representative on behalf of the Debtors." Standing Order ¶ 2. Eugenia is no more a third party to the Debtors' joint representation than any trustee, committee, or other estate representative. *See, e.g., Whyte v. Williams*, 152 B.R. 123, 128 (Bankr. N.D. Tex. 1992) ("When a committee obtains court authorization to prosecute a…cause of action on behalf of the estate, that committee gains control over the exercise of the evidentiary privileges."). If the Court's appointment of Eugenia "as estate representative" did not include the authority to review and use the Debtors' documents, the "Code's goal of uncovering insider fraud would be substantially defeated." *Weintraub*, 471 U.S. at 354.

        (iii)   *Defendants' Efforts to Re-Litigate Entry of the Orders for Relief Should Be Rejected*

Third, Defendants parrot out their tired and flawed (and unsupported) argument that since Eugenia is the Debtors' only creditor, these bankruptcy cases are improper and bankruptcy doctrines of general application somehow should not apply to these cases.

Defendants have been making these arguments without success for years, first causing the admittedly-insolvent Debtors to oppose entry of orders for relief because "the petitions are nothing more than two-party disputes between a sole petitioning creditor and an alleged debtor." Debtors' Reply in Support of Motion to Dismiss the Chapter 7 Cases, Case No. 08-12264, Docket No. 16, at 4-5. The Court rejected that argument, finding that "Eugenia has a valid bankruptcy purpose" in using bankruptcy law to "pursue claims against the…Debtors' officers and directors in either a direct or derivative suit." *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009). Subsequently, the Court conferred standing on Eugenia to prosecute those claims "as estate representative on behalf of the Debtors." Standing Order ¶ 2.

The Debtors are separate legal entities with their own legal rights.   These Adversary Proceedings are being prosecuted "on behalf of the Debtors" with the permission of the Court and it is simply irrelevant that the Debtors only have one creditor.   As the Court observed in denying the Debtors' motion to dismiss the chapter 7 cases (that Defendants caused the Debtors to file):

> [T]he only entities that may be harmed by entering an order for relief in this case are the officers and directors of the Alleged Debtors.  While these individuals may desire to avoid the threat of lawsuits pursued by a chapter 7 trustee, their interests are not relevant in a decision to abstain under section 305(a)(1).

*In re AMC Investors, LLC*, 406 B.R. 478, 489 (Bankr. D. Del. 2009).

So, too, here:  Although the officers and directors of the Debtors would like to avoid discovery of their misdeeds, that is simply irrelevant to whether, as a matter of law, the Debtors' documents must be turned over to the representatives of the Debtors' estates.

### b. Work Product Protection Cannot Be Asserted By Akerman to Prevent Production to Its Client—the Debtors

Defendants and Akerman "do not dispute [the] black-letter law" that the work product "'doctrine protects an attorney's work product from being disclosed to the opposing party, but not from the client.'"  Defendants' Objection, at 17 (quoting *Teleglobe Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.)*, 2006 U.S. Dist. LEXIS 101309, at *51 (D. Del. Feb. 22, 2006)).  Yet, Akerman persists in refusing to provide its work product to its client—the Debtors.  Akerman's reasons for this refusal are not justified.

First, although Akerman argued in its Motion for Protective Order that the trustee could not waive work product protection and that instead "[o]nly Akerman has the ability to waive…work product," Defendants and Akerman now contend that turnover is inappropriate because "there is no indication that [the trustee] waived the protection of the work product doctrine."  Compare Akerman Motion for Protective Order, at 10-11, with Defendants'

12

Objection, at 17. Neither position is legally or factually correct. The subpoena was issued "on Behalf of AMC Investors, LLC and AMC Investors II, LLC." In other words, it is the Debtor clients that are seeking work product and the undisputed black-letter law compels production to these clients. That said, even if the chapter 7 trustee were required to affirmatively "waive" work product protection, he has done so. *See* e-mail from D. Dube to M. Ramos, annexed hereto as Exhibit A ("[T]he **Trustee agrees to waive any and all privilege and protections** as to the documents and other records of the AMC debtors **including**, without limitation, any attorney/client privilege, co-client or joint defense privilege, **protections afforded under the work product doctrine**, and under any other similar privilege and/or protection.").

Second, Defendants and Akerman argue that although the Debtors issued the subpoena, this was a "thinly veiled attempt" by Eugenia to "shroud[] itself under the pretext of acting 'on behalf of the Debtors'" in order to "improper[ly]" "gain access to privileged documents that it would never be entitled to obtain on its own accord." Defendants' Objection, at 2, 17; Akerman Motion for Protective Order, at 11. There is no "thin veil." The Debtors are separate legal entities with their own legal rights. Orders for relief were entered precisely for the "valid bankruptcy purpose" of allowing the estates to bring "claims against the…Debtors' officers and directors in…a…derivative suit." *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009). These Adversary Proceedings are being prosecuted "on behalf of the Debtors" (Standing Order ¶ 2) with the permission of the Court and it is simply irrelevant that the Debtors only have one creditor. *Cf. In re AMC Investors, LLC*, 406 B.R. 478, 487-89 (Bankr. D. Del. 2009) (rejecting the argument that "the Court should abstain because the case is a two-party dispute").

Third, Defendants and Akerman argue that disclosure of <u>any</u> work product is inappropriate because Eugenia is alleged to be adverse to the Debtors and Defendants with

13

respect to the Guaranty Litigation and the Bankruptcy Proceeding.[3]    Defendants provide no reason why work product unrelated to those actions should be held back and there is no reason that work product unrelated to those actions should be held back—the documents belong to the Debtors' estates and they must be turned over.[4]

With respect to the Guaranty Litigation and the Bankruptcy Proceeding, Defendants cite cases decided with respect to individual debtors (where the trustee does not control the privilege as a matter of law), and claim a rule of law that a debtor's work product may not be turned over to the debtor's representative if that representative remains adverse to the debtor. This rule has no application to a corporate debtor where the attorney-client privilege and right to access work product vest in the trustee as a matter of law. *Weintraub*, 471 U.S. at 358. *C.f. Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1265 (10th Cir. 1999) (distinguishing *Weintraub* on the basis that it "has no bearing on the problem of individual bankruptcy"); *In re Rice*, 224 B.R. 464, 471 (Bankr. D. Or. 1998) (observing that *Weintraub* "provides no basis for finding that control of the privilege in an individual Chapter 7 should lie with the trustee").

In any event, these actions are being prosecuted on behalf of the Debtors' estates and the Debtors' estates are not adverse to the Debtors. Even if the Court believes it is appropriate to consider whether the estates' representative, Eugenia, is adverse to the Debtors, the work product should still be turned over because Eugenia is not adverse to the Debtors—in fact, all of the Debtors' fiduciary duties are owed to Eugenia. With respect to the Guaranty Litigation, the Debtors do not dispute liability, the claim is "undisputed" to the tune of "approximately $6.9

---

[3]  Defendants also argue that Eugenia is currently adverse to Defendants with respect to what they define as the "Eugenia Lawsuit." This is a suit that was concluded years ago and therefore Eugenia does not remain adverse to Defendants with respect to that matter.

[4]  Defendants note in various places that "documents created after the initiation" of the Guaranty Litigation and the Bankruptcy Proceedings were not produced or identified on a log. If this means that Akerman and/or Defendants did not search for responsive documents unrelated to those proceedings that may have been created after the initiation of those suits, Akerman and the Debtors must be ordered to search for and produce such documents.

14

million" (*In re AMC Investors, LLC*, 406 B.R. 478, 482 n.3 (Bankr. D. Del. 2009)), and any discussions related to the final allowed amount of the claim will be between the trustee and Eugenia. The only real question remaining from the Guaranty Litigation is whether Defendants breached their fiduciary duties to the Debtors by causing the Debtors to act for and on behalf of Defendants to resist entry of that judgment. And that is precisely the question that the Debtors are seeking to answer by reviewing documents related to the Guaranty Litigation.

With respect to the Bankruptcy Proceedings, Eugenia "is the only creditor of the estate." Defendants' Objection, at 17. Thus, all of the Debtors' fiduciary duties are owed to Eugenia and the Debtors' estates are certainly entitled to work product that Defendants caused the Debtors' attorneys to create in breach of those fiduciary duties—such as by causing the Debtors to resist entry of orders for relief. *See, e.g., Official Comm. of Unsecured Creditors of High Strength Steel, Inc. v. Lozinski (In re High Strength Steel, Inc.)*, 269 B.R. 560, 569 (Bankr. D. Del. 2001) ("Under Delaware law, once a corporation becomes insolvent, its officers and directors owe unsecured creditors a fiduciary duty."). *C.f. In re AMC Investors, LLC*, 406 B.R. 478, 489 (Bankr. D. Del. 2009) ("[S]ince the Alleged Debtors are insolvent, non-operating limited liability companies that hold stock in a defunct computer company, it is not clear how a bankruptcy petition is harmful. In fact, the only entities that may be harmed by entering an order for relief in this case are the officers and directors of the Alleged Debtors.").

In short, the Debtors' real adversaries here are Defendants. Accordingly, the Debtors' documents related to the Guaranty Litigation and the Bankruptcy Proceedings should be produced to Plaintiffs. Alternatively, the Court should require turnover of the Debtors' work product related to the Guaranty Litigation and/or the Bankruptcy Proceedings to the trustee, and should authorize the trustee to share documents with Plaintiffs at his discretion.

15

### c. The Court's Prior Ruling Does Not and Should Not Prevent Production

The Debtors believe that the Court's prior ruling that documents relating to the Guaranty Litigation or the Bankruptcy Proceeding could not be produced to Eugenia as part of Rule 2004 discovery does not and should not apply to these Adversary Proceedings for the reasons set forth herein, in Plaintiffs' Motion to Compel, and in Plaintiffs' Objection to Akerman's Motion for Protective Order.

In Defendants' Objection, they acknowledge that the Court's prior ruling does not by its terms apply to many of the documents that have been requested. Nonetheless, they argue that the "logic" of the prior ruling applies to documents other than those related to the Guaranty Litigation and the Bankruptcy Proceedings. Not so. The burden remains on Defendants to demonstrate why other documents are privileged and they have not done so for the reasons discussed elsewhere herein.[5]

### d. Defendants and Debtors' Counsel Should Be Ordered to Produce Un-Redacted Copies of All Responsive Documents

Many of the documents produced by Debtors' counsel are heavily redacted. In some instances, the redaction is clearly marked on the document, but the basis for the redaction is not marked on the document or identified in Akerman's privilege log. For example, all but two paragraphs of the 7-page the letter annexed to Plaintiffs' Motion to Compel as Exhibit M are redacted without explanation. In other instances, the redactions are not even clearly marked on the applicable document. *See* Exhibit N to Plaintiffs' Motion to Compel.

---

[5] Defendants' complaints that such production would create an "unfair litigation advantage" or be "highly prejudicial" to Defendants are of no moment. Instead the "Code's goal of uncovering insider fraud would be substantially defeated" if the Debtors' managers were allowed to assert privilege to "effectively thwart an investigation into their own conduct." *Weintraub*, 471 U.S. at 353-354. The estate's right to these documents flows directly from Defendants' decision to cause the Debtors to be represented by the same counsel as Defendants—even after the Debtors' fiduciary duties shifted to the Debtors' creditors (Eugenia).

16

Defendants supply the alleged basis for these redactions for the first time in their Objection, observing that the "redactions were performed because the documents contained information irrelevant to the Debtors." Defendants' Objection, at 24 n. 30. Defendants do not even allege that the redacted information is privileged or highly confidential. Worse, from what little information has been provided, Plaintiffs believe that the redacted information is relevant to these Adversary Proceedings. For example, the personal benefits received by Defendants from their breaches of fiduciary duties are at issue in these cases. *See* Defendants' Reply In Support of Motion To Dismiss, at 3 [Adv. Pro. Docket No. 29] ("Eugenia must adequately allege that Defendants…'receiv[ed] a personal benefit that was not received by the shareholders generally.'") (citation omitted). Yet, the "irrelevant" information redacted from Exhibit N to Plaintiffs' Motion to Compel appears to relate to the amount of defense counsel fees and costs that were advanced on behalf of Defendants—a personal benefit to Defendants.

This Court should not countenance Defendants' efforts to game the system by selectively redacting portions of indisputably relevant documents (in many cases without even identifying the redaction). Responsive documents should be produced in un-redacted form so that Plaintiffs can understand the context of the indisputably relevant information and judge whether the redacted information is truly irrelevant. Since there is no claimed basis for the redactions other than relevance, there is no harm to Defendants in producing these documents directly to Plaintiffs.

### e. Defendants' Boilerplate Objections Should Be Overruled

Defendants do not dispute that a party resisting discovery must object to each particular request with specific reasoning. *See, e.g., Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) ("Mere recitation of the familiar litany that . . . a document production

17

request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice.") (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). Yet, Defendants contend that their objections to each and every Defendant Request as "vague and overbroad," and seeking "information the production of which would cause Defendants unreasonable burden or expense" were sufficiently explained in their objections. But according to Defendants, "[w]ith respect to the vague objection, the vagueness of the Requests is self-evident." Defendants' Objection, at 12 n. 16. In other words, Defendants have **no** reasoning to support this objection—which is unfounded. For example, what is vague about a request for "All Documents and Communications Concerning any and all amounts of money paid to any Defendant from any of the Debtors or AMC Computer"?

Defendants go on to note that the basis for their claim that each and every request is "overbroad" and "unreasonably burdensome" is set forth in the "general" objections to the document requests. *C.f. SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2006 WL 279073, at *2 (E.D. Pa. Jan. 31, 2006) ("The resisting party 'must show specifically' how the information requested 'is not relevant or how each question is overly broad, burdensome, or oppressive.'") (quoting *Josephs*, 677 F.2d at 992). Therein, Defendants claim that a request is "overbroad" if it seeks information prior to September 1, 2002. To ameliorate this objection, Plaintiffs will agree that Defendants need not produce documents created prior to that date. Defendants' "undue burden" objection is apparently that each request is part of a campaign to "gain an unfair tactical advantage." This is not a valid undue burden objection; nor is it true.

### f.  The Requested Discovery Is Not Unduly Burdensome

If Defendants' representations are to be believed, Defendants "have previously produced the documents responsive to the[] Requests" other than (i) the documents over which they

18

previously asserted privilege and/or work product protection, and (ii) the documents related to the Guaranty Litigation and the Bankruptcy Proceedings. *See* Plaintiffs' Motion to Compel, Exhibit K. To produce these documents, Defendants need only look at the privilege logs, produce all of the documents identified on those logs, and turnover to the Debtors' estates the Debtors' documents relating to the Guaranty Litigation and the Bankruptcy Proceedings. Such a production does not constitute an "undue burden."

### 2. Defendant Glaser Should Be Re-Deposed

#### a. Glaser Was Not Properly Prepared to Serve as Defendants' Rule 30(b)(6) Witness

As discussed in detail in Plaintiffs' Motion to Compel, Glaser was ill-prepared to discuss numerous issues that are of critical importance to these Adversary Proceedings. And Plaintiffs are not trying to make Glaser's deposition a "memory contest" (*see* Defendants' Objection, at 27), but are instead trying to discover facts that are relevant to the claims and defenses asserted in these Adversary Proceedings. Glaser had a duty to prepare himself to discuss these facts—a duty he did not fulfill. *See, e.g., Donald M. Durkin Contr., Inc. v. City of Newark*, No. 04-163 (GMS), 2006 U.S. Dist. LEXIS 68221, at *15 (D. Del. Sept. 22, 2006) (holding that a Rule 30(b)(6) witness has "an affirmative obligation to be prepared on the noticed topics so that she [can] give complete, knowledgeable, and binding answers on behalf of the party.").

For example, when asked what efforts he made to learn the answers to basic questions (that he could not answer) that almost recited one of the noticed topics verbatim, Mr. Glaser's response was unequivocal: "None." *See* Glaser Dep. 130:8-131:5, annexed as Exhibit O to Plaintiffs' Motion to Compel. Glaser's failures were not simply his inability to remember precise amounts and dates—by his own admission he did not prepare himself to answer questions on the topics that had been noticed for deposition, and could not even give estimates as

to what the answers might be. In these circumstances, Glaser should be ordered to actually prepare to discuss the noticed topics and then be re-deposed.

### b.   Glaser Was Improperly Instructed Not to Answer Relevant Questions

Defendants want to have their cake and eat it too. In connection with their Motion to Dismiss, Defendants argued that Plaintiffs "must adequately allege that Defendants…'receiv[ed] a personal benefit that was not received by the shareholders generally.'" Defendants' Reply In Support of Motion To Dismiss, at 3 [Adv. Pro. Docket No. 29] (citation omitted). Now that it has come time to discover facts relating to the "personal benefits" received by Defendant Glaser, Defendants vehemently claim that inquiries into such matters "bear no relevance to the allegations of this lawsuit." Defendants' Objection, at 28. Defendants have made an issue out of their personal finances and should not be allowed to now claim that discovery relating to their personal finances is "irrelevant."[6] Questions relating to Glaser's finances are relevant and counsel's instructions not to answer such questions were improper.

### CONCLUSION

When causes of action for breach of fiduciary duty are brought on behalf of an estate, the estate is always adverse to the former officers and directors. The officers and directors resisting an investigation into their actions are often upset when the party suing them seeks documents that were previously privileged. Nonetheless, under clear Supreme Court precedent, the estate gets access to the debtor's privileged documents. This case is no different.

---

[6]  If the Court does not order that Glaser be re-deposed, at a minimum it should enter an order conclusively finding as a fact that Glaser did receive a personal benefit that was not received by the shareholders generally. Otherwise, Defendants will turn around and argue on summary judgment that the Adversary Proceedings should be dismissed because there is no evidence that Defendants received any personal benefit that was not received by the shareholders generally.

20

Dated:  December 4, 2013
        Wilmington, Delaware

Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Cory D. Kandestin (No. 5025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, Delaware 19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan
200 Park Avenue
50th Floor
New York, New York 10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

Jeremy L. Graves
1801 California Street
Suite 4200
Denver, Colorado 80202
Telephone:  (303) 298-5700
Facsimile:  (303) 298-5907

*Counsel for Eugenia VI Venture Holdings,
Ltd. for and on behalf of debtors AMC
Investors, LLC and AMC Investors II, LLC*