# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 7 |
| AMC Investors, LLC, | ) Case No. 08-12264 (CSS) |
| Debtor. | ) |
| In re | ) Chapter 7 |
| AMC Investors II, LLC, | ) Case No. 08-12265 (CSS) |
| Debtor. | ) |
| EUGENIA VI VENTURE HOLDINGS, LTD. ON BEHALF OF AMC INVESTORS, LLC AND AMC INVESTORS, II, LLC, | ) Adv. Pro. No. 11-52317 |
| | ) **Re: D.I. 98, 101** |
| Plaintiffs, | ) |
| vs. | ) Adv. Pro. No. 11-52318 |
| MAPLEWOOD HOLDINGS LLC, MAPLEWOOD MANAGEMENT LP, MAPLEWOOD PARTNERS LP, ROBERT V. GLASER, AND ROBERT J. REALE, | ) **Re: D.I. 77** |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL
DISCOVERY RESPONSES AND INCORPORATED MEMORANDUM OF LAW**

Defendants MapleWood Holdings LLC, MapleWood Management LP, MapleWood Partners LP, Robert V. Glaser and Robert J. Reale (collectively, "**Defendants**"), by and through their attorneys, hereby file their Reply in Support of Their Motion to Compel Discovery Responses and Incorporated Memorandum of Law (the "**Reply**"). In support of this Reply, Defendants state as follows:

{27547908;2}

## I. **INTRODUCTION**

This discovery dispute centers around Eugenia's continued reliance upon procedural posture to avoid providing relevant discovery. Initially, Eugenia relied upon its status as "a nominal party only" to lend support for its failure to adequately respond to Defendants' written discovery requests. Eugenia then relied upon corporate formality to avoid discovery into Eugenia's relationship with Casita – its sister company and a member of one of the Debtors – even though both entities are managed by the same group (Eagle Advisors), even though both entities are run by the same individuals (Ekkehart Hassels-Weiler and David Alexander), and even though both entities obtained knowledge relevant to the claims asserted in this adversary proceeding (i.e., knowledge pertaining to the alleged accounting misstatements at AMC Computer) more than three years before bringing this action.

Now, Eugenia claims that its status as a derivative plaintiff, on behalf of the Debtors, completely shields it from discovery into any statute of limitations defense. Eugenia makes this claim despite the fact that both Eugenia and Casita (and its shared principals) had direct knowledge of facts that triggered the statute of limitations, and which would have allowed them to assert derivative claims within the applicable three-year period.[1] Eugenia essentially argues that the statute of limitations was tolled until Eugenia was granted standing by this Court to assert these adversary claims. This is not the law.

Eugenia's attempts to hide behind its contrived procedural posture are preposterous, and its arguments as to the relevancy of its knowledge of events are completely contradicted by Delaware case law, which states that the applicable three-year statute of limitation begins "at the time of the wrongful act" and continues to run where, as here, the derivative plaintiff (or a

---

[1] In its Response, Eugenia states that Hassels-Weiler cannot be "forced" to testify on behalf of Eugenia. But, Hassels-Weiler is the person who "acts" on behalf of Eugenia. Eugenia's ridiculous position should be rejected, outright.

shareholder) had knowledge or should have had knowledge of the alleged "wrongful act." It is clear that Eugenia understands that it has an uphill battle in relation to Defendants' statute of limitations argument, and Eugenia is making every effort to quash Defendants' ability to assert this defense – which may well be the death knell for Eugenia's adversary claims.

In this discovery dispute, Defendants seek discovery as to when Eugenia and/or Casita had knowledge of the alleged accounting misstatements at AMC Computer which form the basis for Eugenia's adversary claims, as well as testimony relating to Eugenia's and/or Casita's opportunities to timely assert these claims. They seek this information not only from Eugenia itself, but from Eugenia's decision-maker (and Casita limited partner), Ekkehart Hassels-Weiler. If the testimony or evidence establishes that Eugenia and/or Casita had knowledge of the alleged "wrongful acts" at AMC Computer in May/June 2005, then the claims asserted in these adversary proceedings are barred outright by the relevant statute of limitations.

As described in the Defendants' Motion to Compel Discovery Responses and Incorporated Memorandum of Law [D.I. 98] (the "**Motion to Compel**")[2] and further below, Defendants are unquestionably entitled to discovery into when Eugenia and/or Casita (through their principals) had knowledge of the "wrongful acts" for purposes of the statute of limitations analysis, and this Court should grant Defendants' Motion to Compel.

## II. ARGUMENT

### A. EUGENIA'S KNOWLEDGE IS DISCOVERABLE BECAUSE IT IS RELEVANT TO DEFENDANTS' STATUTE OF LIMITATIONS DEFENSE.

In its Response to the Motion Compel, Eugenia argues that its knowledge of any alleged wrongdoing at AMC Computer, before the Court granted it standing in these adversary proceedings, is irrelevant and therefore, immune from discovery. The crux of this theory, as

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion to Compel.

concocted by Eugenia, appears to be that standing is an element of Eugenia's causes of action, and without standing, the causes of action did not accrue for purposes of a statute of limitations analysis. This theory is incorrect as a matter of Delaware law.

As a derivative plaintiff, Eugenia has "stepped into the shoes" of the Debtors and takes their claims subject to all defenses and offsets (including the statute of limitations defenses). *See, e.g.*, *Drews v. E. Sausage & Provision Co.*, 142 F. Supp. 286 (S.D.N.Y. 1954); *see also In re Salomon Inc. S'Holders Deriv. Litig.*, 1994 WL 533595, at *4 (S.D.N.Y. 1994) ("[S]hareholders, 'standing in the shoes of the corporation' have no rights greater than those of the corporation, nor can those they choose to sue be deprived of defenses they could assert against the corporation's claims." (citing *Schleiff v. Balt. & Ohio R.R. Co.*, 130 A.2d 321, 327 (Del. Ch. 1955))). In this particular circumstance, the claims of breach of fiduciary duty brought by Eugenia are time-barred by Delaware's three year statute of limitations for such claims.

1. **The Statute of Limitations on Eugenia's Derivative Claims Began to Run at the Time of the Alleged Wrongful Act and Defendants are Entitled to Discovery on this Point.**

Under Delaware law, a three-year statute of limitations governs causes of action for breach of fiduciary duty. *See* Del. Code Ann. tit. 10, § 8106 (2013); *see also In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 560 (Bankr. D. Del. 2008). Moreover, "[a] claim for breach of fiduciary duty accrues at the time of the wrongful act, and the statute of limitations begins to run at the time that the cause of action accrues. This is true even if the plaintiff is unaware of the cause of action or harm." *Graulich v. Dell Inc.*, 2011 WL 1843813, at *6 (Del. Ch. May 11, 2011) (internal quotations and citations omitted); *see also In re Direct Response Media, Inc.*, 466 B.R. 626, 646-47 (Bankr. D. Del. 2012); *Pomeranz v. Museum Partners, L.P.*, 2005 WL 217039,

at *12 (Del. Ch. Jan. 24, 2005) (holding that the law does not require a plaintiff's awareness of all the facts necessary to articulate a wrong before the statute of limitations will begin running).

In its Response, Eugenia brashly claims that its knowledge (and that of its principal Hassels-Weiler), and/or the timing thereof, is irrelevant to the statute of limitations analysis, and that Defendants should not even be allowed to conduct discovery into these topic areas.[3] This position is not only belied by the Delaware authority regarding the relevant statute of limitations, but it is also completely inconsistent with the Federal Rules of Evidence, which state that evidence is relevant if:

(a) it has *any tendency to make a fact more or less probable* than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Fed. R. Evid. 401 (emphasis added); *see also* Fed. R. Civ. P. 37 ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

Given Delaware law on the accrual of the relevant statute of limitation on a breach of fiduciary duty claim, paired with the broad scope of discovery under the Federal Rules, it is clear that Defendants are entitled to conduct discovery into when the "alleged wrongful act" – which would trigger the statute of limitations – occurred.[4] There is no doubt that the information sought in the Motion to Compel will impact the viability of Defendants' statute of limitations defense. Eugenia – through its representatives, primarily Hassels-Weiler – was privy to all

---

[3] It is important to remember that this is a discovery dispute, not a dispositive motion regarding the standing issue. At this stage, Defendants are only seeking entitlement to discovery on one of their primary defenses. Granting the Motion to Compel would only permit Defendants to conduct discovery, not necessarily prevail in this lawsuit. Eugenia is in no way prejudiced by discovery into clearly relevant facts.

[4] In terms of relevance, it is important to point out that the allegations in the adversary complaint nearly all relate to an alleged fraud in connection with Eugenia's loan to AMC Computer; therefore, not only is Eugenia's knowledge relevant to the statute of limitations issues, but it is directly relevant to the substantive defense of the adversary claims (because Eugenia is the party that was allegedly defrauded).

relevant communications and disclosures in 2005 when the alleged accounting misstatements at AMC Computer came to light.

This is not surprising given the fact that Eugenia was AMC Computer's lender at that time; indeed, a federal judge has already found that Eugenia was in the possession of facts surrounding the allegedly wrongful acts Eugenia complains of in the complaint. *See In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105 (S.D.N.Y. 2008) ("The factual record leaves open no question that [Eugenia] had in its possession an abundance of information and unobstructed access to much more, and knew enough about AMC's precarious finances to warrant at least minimal scrutiny . . . . Plaintiff's reliance was unreasonable, and Plaintiff's claims to fraud under the Credit Agreement fail as a matter of law.").

As such, Eugenia's knowledge regarding AMC Computer is 2005 is both relevant and discoverable. *See infra*. p. 7-8.

**2.      The Statute of Limitations Was Not "Tolled."**

Perhaps recognizing that well-settled Delaware law contradicts its position, Eugenia argues that the statute of limitations in this matter was tolled until Eugenia was granted standing by this Court to assert its adversary claims because the Defendants controlled the Debtors up until that time. Eugenia, however, intentionally omits the term "tolling" from any of its arguments; not surprising in light of the fact that Delaware courts do not follow the so-called "adverse domination theory," which provides that a cause of action for breach of fiduciary duty cannot begin running while "the corporation's board of directors is controlled by culpable directors." *Marvel Entm't Grp., Inc. v. MAFCO Holdings, Inc. (In re Marvel Entm't Grp., Inc.)*, 273 B.R. 58, 74-77 (D. Del. 2002).

Under Delaware law, the statute of limitations in a derivative action may only be tolled (if at all) until the time at which such person with the ability to seek redress is aware of the facts giving rise to the cause of action. *See id*. at 76 ("[W]hen disclosures of the alleged harmful acts are made to *shareholders*, the corporate entity is no longer without redress against those who control it because the shareholders have both the knowledge and authority to protect the corporation's rights, and…therefore there is no reason to toll the statute of limitations." (emphasis added)); *Burtch v. Wendell (In re Allpoints Warehousing in Liquidation, Inc.)*, 259 B.R. 824, 829 (D. Del. 2001) ("[T]he statute of limitations applies, but is tolled in derivative actions charging actionable self-dealing, **until the shareholders knew or had reason to know of the facts constituting the alleged wrong**." (emphasis added)).[5]

Indeed, "[n]o theory will toll the statute beyond the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong." *Graulich*, 2011 WL 1843813, at *6 (internal quotations omitted); *see In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007). Eugenia "bears the burden of showing that the statute was tolled, and relief from the statute extends *only until the plaintiff is put on inquiry notice*." *Graulich*, 2011 WL 1843813, at *6 (emphasis added).

As set forth more fully in the Motion to Compel, Eugenia knew of the actions at AMC Computer forming the basis of the instant claims against Defendants as of May 2005. In May 2005, Defendants told Plaintiff and Casita (through their representative Eagle Advisors) that they

---

[5] Eugenia asserts that, under *CML V, LLC v. Bax*, 6 A.3d 238, 241 (Del. Ch. 2010), it did not have standing to assert claims on behalf of the Debtors at any time prior to the Court's Standing Order in June of 2011. This argument completely ignores the fact that the vast majority of Eugenia's adversary complaint alleges breaches of fiduciary duty *arising from allegedly wrongful acts at AMC Computer* – where Eugenia clearly **did** have standing to bring a claim. In fact, Eugenia **brought** those claims in 2005; and **lost** on those claims. *See In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105 (S.D.N.Y. 2008) (granting summary judgment in favor of defendants and against Eugenia on claims relating to the alleged misconduct at AMC Computer). Without a doubt, Eugenia's knowledge of facts related to an alleged fraud at AMC Computer are highly relevant.

had concern regarding potential accounting irregularities at AMC Computer. *In early June 2005, Defendants offered Eugenia the opportunity to take complete control of the Debtors*, by taking control of all of the equity interests in the Debtors. This offer, memorialized in the June 6, 2005 Letter,[6] was rejected by Eugenia.

Even further, Eugenia's sister company, Casita (a member of Debtor AMC Investors, LLC), also had the right to bring a derivative suit in May or June 2005. Notwithstanding, Eugenia sat back and chose to wait more than three years to bring suit or file the involuntary bankruptcy petition.

Eugenia cites to a number of cases regurgitating black-letter law for the proposition that standing cannot be conferred by "hypothetical" events. This case law is inapposite.[7] The facts set out above do not "hypothetically" confer standing; they conclusively demonstrate that Eugenia, the derivative plaintiff, and its sister company Casita, a member with the ability to bring derivative claims on behalf of the Debtors, had *express knowledge* of the facts given rise to the alleged wrongdoing as of May 2005; thus, triggering the relevant statute of limitations – regardless of whether or not a Court had granted Eugenia standing.

---

[6] A copy of the June 6, 2005 Letter from T. Klinghoffer to M. Karlan is attached to the Motion to Compel as **Exhibit "D."**

[7] In support of this argument, Eugenia relies heavily upon the Third Circuit's decision in *Kucera v. Metropolitan Life Ins. Co.*, 719 F.2d 678 (3d Cir. 1983), even going as far as to characterize its holding as "well-established" and "uniformly" held by courts. The *Kucera* decision, however, is based on easily distinguishable facts. The *Kucera* decision is focused upon the factual circumstances surrounding when an individual obtained rights pursuant to an insurance contract that only benefitted her spouse prior to his death. The instant dispute is certainly not in the insurance policy context; it is a derivative suit brought in an adversary proceeding pursuant to an involuntary bankruptcy. There are no individuals. There are no contractual rights. There is no insurance. There is no estate resulting from an individual's death. Here, derivative standing – which could have been asserted at any time by Eugenia – was eventually exercised to bring derivative claims against the Defendants. There was no "hypothetical" event; AMC Computer's demise, in May 2005, was the trigger for Eugenia claim of standing. To the extent Eugenia argues that *Kucera* should be interpreted more broadly, this Court should reject such an interpretation because it would fly directly in the face of the Delaware body of case law regarding derivative standing and the statute of limitations. *See., e.g.*, *In re Marvel Entm't Grp., Inc.*, 273 B.R. at 58; *Graulich*, 2011 WL 1843813, at *1.

Moreover, in determining whether the parties were on inquiry notice for purposes of applying any tolling of the applicable statute of limitations, this Court may look to whether hypothetical derivative plaintiffs had inquiry notice sufficient to give rise to a potential claim. *See In re Marvel Entm't Grp. Inc.*, 274 B.R. at 76-77 (holding that none of the tolling doctrines applied to save a reorganized debtor's otherwise time-barred fiduciary duty claims because its former minority shareholders possessed inquiry notice of the claims).

Given that Eugenia's and Casita's knowledge are relevant to whether a hypothetical derivative plaintiff had sufficient notice of the alleged wrongdoing, Defendants are entitled to discovery to further develop their statute of limitations defense.

### 3. Mr. Hassels-Weiler's Knowledge is Highly Relevant to the Statute of Limitations Defense.

Arguing that its knowledge is "not relevant" to the statute of limitations analysis, Eugenia has confirmed in its Response that will object to any deposition questioning of Hassels-Weiler in this subject area. Given that Eugenia's and Casita's knowledge is clearly relevant to the statute of limitations analysis (as set forth above), this Court should require that Hassels-Weiler answer this line of questioning.

#### i. Mr. Hassels-Weiler is the "Key Man" with Respect to Eugenia's (and Casita's) Knowledge.

As more fully explained above, when Eugenia and/or Casita were put on notice of the alleged accounting misstatements at AMC Computer in May/June 2005, the relevant statute of limitations was triggered, thereby barring the claims asserted in this adversary proceeding. This is the crux of Defendants' statute of limitations defense in this lawsuit, and Defendants should be entitled to discover all relevant facts which may tend to prove or disprove this defense. Sworn testimony relating to Eugenia's and/or Casita's knowledge is highly relevant.

Hassels-Weiler's knowledge is unquestionably relevant to the statute of limitations analysis because he is the key figure with respect to actions taken on behalf of Eugenia and Casita. Eugenia and Casita (which is a member of one of the Debtors) are sister companies. They are both investment arms of German billionaire, Hans Werner Hector, and both are managed and operated by Eagle Advisors, Inc., Ekkehart Hassels-Weiler and David Alexander. Hassels-Weiler is the President of Eagle Advisors (the entity that manages Eugenia and Casita), and he also owns a limited partnership interest in Casita.

Given the fact that the statute of limitations was triggered by what Eugenia and/or Casita knew (or were on notice of) in May/June 2005, and given the fact that Hassels-Weiler is the primary individual who would have gleaned that knowledge on behalf of these two entities, this Court should require Hassels-Weiler to answer the lines of questioning set forth in the Motion to Compel.

### ii. The Testimony Sought is a New Topic Area, Not a Re-hashing of Prior Depositions.

Eugenia claims that Hassels-Weiler has already been asked all relevant questions relating to the statute of limitations defense at his prior depositions. This is untrue. While Hassels-Weiler has been questioned about some of the events that occurred in the May/June 2005 time-frame during his prior deposition in the Eugenia Lawsuit, there was no statute of limitations at issue in that case. The Eugenia Litigation asserted against some of the instant Defendants regarding the alleged misconduct at AMC Computer — which Eugenia lost on summary judgment — was filed in 2005, only months after the alleged accounting misstatements were disclosed to Eugenia. As such, during that deposition, there was no need for counsel to delve into questions germane to a statute of limitations analysis.

Defendants should now be allowed full discovery on all issues which may be relevant to their statute of limitation defense, or any other defense asserted by Defendants.

### iii. Eugenia Already Allowed Mr. Hassels-Weiler's Colleague to Answer Questions on These Exact Same Topics.

Eugenia has already permitted Hassels-Weiler's colleague, David Alexander, to answer questions in this same line of questioning, and there is no reason why Hassels-Weiler should not be required to answer these questions as well. Even if, as Eugenia contends, its failure to object at the Alexander deposition does not create a legal waiver of their objection to Hassels-Weiler's testimony, the simple fact that Alexander was allowed answer these questions evidences the fact that Eugenia did not find the line of questioning inappropriate and is grasping at straws to now obfuscate relevant discovery.

[*Remainder of Page Intentionally Blank*]

### III. CONCLUSION

For the reasons set forth above and in the Motion to Compel, Defendants respectfully request that the Court enter an order: (a) granting Defendants' Motion to Compel; and (b) granting any further relief that the Court deems just and necessary.

Dated: December 4, 2013
Wilmington, Delaware

                                      Respectfully submitted,

*/s/ Curtis S. Miller*
Curtis S. Miller (Bar No. 4583)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: CMiller@MNAT.com

and

AKERMAN LLP (f/k/a Akerman Senterfitt)
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1714
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
Attn: Brian P. Miller, Esq.

*Attorneys for MapleWood Holdings, LLC,*
*MapleWood Management LP, MapleWood Partners*
*LP, Robert V. Glaser, and Robert J. Reale*