# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| AMC INVESTORS, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor | ) | Case No. 08-12264 (CSS) |
| ———————————————— | ) | |
| | ) | |
| In Re: | ) | |
| | ) | |
| AMC INVESTORS II, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor | ) | Case No. 08-12265 (CSS) |
| ———————————————— | ) | |
| | ) | |
| EUGENIA VI VENTURE HOLDINGS, LTD., | ) | |
| ON BEHALF OF AMC INVESTORS, LLC | ) | |
| AND AMC INVESTORS II, LLC, | ) | |
| | ) | Adv. Case No. 11-52317 |
| | ) | **Related Adv. Docket Nos.: 281, 283** |
| Plaintiff, | ) | |
| | ) | Adv. Case No. 11-52318 |
| v. | ) | **Related Adv. Docket Nos.: 236, 238** |
| | ) | |
| MAPLEWOOD HOLDINGS LLC, | ) | |
| MAPLEWOOD MANAGEMENT LP, | ) | |
| MAPLEWOOD PARTNERS LP, | ) | |
| ROBERT V. GLASER, AND ROBERT J. | ) | |
| REALE | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## OPINION[1]

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.  To the extent that any of the findings of fact herein are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent that any of the conclusions of law herein are determined to be findings of fact, they are adopted, and shall be deemed, findings of fact.

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
Curtis S. Miller
1201 North Market Street
Wilmington, Delaware 19899

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins
Marcos A. Ramos
Cory D. Kandstein
One Rodney Square
902 North King Street
P.O. Box 551
Wilmington, Delaware 19899

-and-

-and-

AKERMAN LLP
Brian P. Miller
Samantha J. Kavanaugh
James A. Bombulie
One Southeast Third Avenue
25th Floor
Miami, Florida 33131

GIBSON, DUNN, & CRUTCHER LLP
Mitchell A. Karlan
200 Park Avenue
50th Floor
New York, New York 10166

Counsel for Defendants

Counsel for Plaintiff

Date: January 27, 2022

Sontchi, J. _____

## INTRODUCTION[2]

Before the Court are *Defendants' Motion for Summary Judgment on Threshold Affirmative Defenses*[3] and *Defendants' Motion for Summary Judgment on the Merits*.[4]

Defendants argue that summary judgment on their affirmative defenses is appropriate

---

[2] The Court's Opinion will only cite to Adversary Proceeding No. 11-52317 unless otherwise stated, as the filings in both Adversary Proceedings are largely identical. Thus, citations to both Adversary Proceedings would be duplicative and unnecessary. Main docket citations will be made to Case No. 08-12264.

[3] Adv. Pro. No.: 11-52317 D.I. 283.

[4] Adv. Pro. No.: 11-52317 D.I. 281.

because, not only are Plaintiff's breach of fiduciary duty claims statutorily time-barred, but they are also precluded under the doctrines of *res judicata* and collateral estoppel.

Independently, Defendants argue that summary judgment should be granted in their favor on the merits of Plaintiffs' claims.

For the reasons stated herein, the Court finds that Plaintiffs' breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims are barred by Delaware's statute of limitations, *res judicata*, and collateral estoppel. Accordingly, Defendants' *Motion for Summary Judgment on Threshold Affirmative Defenses* is granted, and the *Motion for Summary Judgment on the Merits* is moot.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in the Bankruptcy Court for the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, thus, this Court has the judicial power to enter a final order.[5]

---

[5] Defendants do not consent to entry of final orders by this Court should it be determined that this Court does not have the authority to enter final orders.

## STATEMENT OF FACTS[6]

### A.    Factual Background

These related but unconsolidated Adversary Proceedings allege breaches of fiduciary duties and aiding and abetting breaches of fiduciary duties in connection with the Defendants' alleged mismanagement of AMC Computer Corp. ("AMC Computer").[7]

Eugenia VI Venture Holdings, Ltd. ("Eugenia") filed suit derivatively on behalf of the Debtors, AMC Investors, LLC ("Investors") and AMC Investors II, LLC ("Investors II") (collectively, the "Debtors" and together with Eugenia, the "Plaintiffs").[8] At all pertinent times, the Debtors were shareholders of AMC Computer, and the Defendants were officers, directors, and/or shareholders of AMC Computer and controlled both the Debtors and AMC Computer.[9]

Investors has five members: Casita, L.P. ("Casita"), General Electric Capital Corp., Emirates Insurance Co., MapleWood Equity Partners LP, and MapleWood Equity

---

[6] Given the long-winded history of this litigation, spanning over the course of sixteen years, the Court assumes the parties and counsel are familiar with the facts and procedural history surrounding this dispute. For purposes of brevity and completeness, the Court will incorporate the relevant background set forth in its Opinion, dated January 23, 2015 (Adv. Pro. 11-52317 D.I. 180; Adv. Pro. 11-52318 D.I. 133), and will summarize the relevant facts and procedural history herein.

[7] *See generally* Adv. Pro. 11-53217 D.I. 1; Adv. Pro. 11-53218 D.I. 1 ("This is an action for breach of fiduciary duty. The Debtors were shareholders of AMC Computer ("Computer"). The defendants managed the Debtors and effectively ran Computer. Defendants owed Debtors a duty to provide oversight of Computer's governance and monitor the performance of the company.").

[8] *See* 08-12264 D.I. 79. This Court granted Eugenia derivative standing on behalf of Debtors on June 3, 2011, the same day that Eugenia filed the Complaints at issue against the Defendants.

[9] *See* Adv. Pro. 11-52317 D.I. 292, pg. 2. Defendants are two individuals and three private equity firms they own and control. The Debtors were managed and controlled by the three private firms, which were ultimately owned and controlled by the individual defendants.

Partners Offshore Ltd. ("MapleWood Offshore").[10] Investors II has two members: MapleWood Offshore[11] and MapleWood Equity Partners LP.[12] The Debtors' sole purpose was to effectuate an investment in the equity of AMC Computer.

The facts here are largely undisputed. On September 4, 2001, Eugenia entered into a revolving line of credit with AMC Computer. Subsequently, in January 2003, Eugenia and AMC Computer entered into a Credit Agreement whereby Eugenia agreed to lend AMC Computer up to $16 million to finance its operations, secured by AMC Computer's working capital (the "Credit Agreement").[13] The Debtors executed an unconditional guaranty of AMC Computer's obligations under the Credit Agreement.[14]

Pursuant to the terms of the Credit Agreement, AMC Computer was permitted to borrow up to 85% of its of its eligible accounts receivable (as defined in the Credit Agreement).[15]  According to Eugenia, the Defendants misrepresented the size of AMC Computer's collateral by falsifying information in borrowing base certificates, permitting it to borrow more money than the Credit Agreement allowed. It is alleged that, on May 5, 2005, "Eugenia was informed by other members of [AMC Computer's] board of directors that [AMC Computer] had submitted falsified borrowing base certificates in

---

[10] Adv. Pro. 11-53217 D.I. 284, Miller Decl., Ex 4 (Schedule I to Limited Liability Agreement of AMC Investors LLC).

[11] *See* Adv. Pro. 11-52317 D.I. 265.  Casita is MapleWood Offshore's majority shareholder.

[12] Adv. Pro. 11-53217 D.I. 284, Miller Decl., Ex 2 (Limited Liability Company Agreement of AMC Investors II LLC).

[13] *See* Adv. Pro. 11-52317 D.I. 286, Ex. 6

[14] *In re AMC Investors, LLC*, 406 B.R. 478 (Bankr. D. Del. 2009).

[15] Adv. Pro. 11-53217 D.I. 284, Miller Decl., Ex. 6 (Amended and Restated Credit Agreement among AMC Computer Corp., and Eugenia VI Venture Holdings, Ltd.).

order to fraudulently obtain greater funding from [Eugenia] under the Credit Agreement."[16]

Specifically, it is undisputed that, on May 5, 2005, Defendant Robert V. Glaser ("Glaser"), who was the managing member of the general partner of the Debtors' manager,[17] informed Mr. Hassels-Weiler, who controlled Eugenia and Casita[18], of potential accounting misstatements at AMC Computer.[19] As a result, on May 6, 2005, Eugenia declared a default under the Credit Agreement, putting AMC Computer out of business. Thereafter, starting in June 2005, Eugenia filed a slew of lawsuits against various individuals and entities involved with AMC Computer, including Debtors, in New York State and federal courts alleging, among other things, fraud, breach of contract, and breach of fiduciary duties.[20]

## B.    Procedural History[21]

Starting around June 2005, Eugenia brought several related suits in the District Court for the Southern District of New York, suing both directly, and derivatively, on behalf of AMC Computer. Eugenia alleged fraud and breaches of fiduciary duty in

---

[16] *Eugenia VI Venture Holdings Ltd. v. Chabra*, Case No. 05-CV-5277 (S.D.N.Y.).

[17] *See* Adv. Pro. 11-52317 D.I. 286, Ex. 9. Glaser is the managing member of MapleWood Holdings, LLC, which is, in turn, the general partner of MapleWood Management, LP, and MapleWood Partners, LP. MapleWood Management, LP was the manager of Debtors at all pertinent times.

[18] Mr. Hassels-Weiler controls these entities, among others, on behalf of Mr. Hans-Werner Hector.

[19] Adv. Pro. 11-53217 D.I. 284, Miller Decl., Ex. 3 (Hassels-Weiler Dep. at 166:24-167:23).

[20] *See* Adv. Pro. 11-52317 D.I. 286, ¶¶ 22-31.

[21] The procedural history of this *specific* litigation spans over the course of roughly eleven years. The Court will only discuss the events that are pertinent to its discussion herein.

connection with AMC Computer's default under the Credit Agreement. The defendants in those actions were officers, directors, and/or shareholders of AMC Computer.[22]

Eventually, the Southern District of New York granted the defendants' joint motion for summary judgment, finding that Eugenia had suffered no damages in connection with its breach of fiduciary duty claims, and that Eugenia had not proven reasonable reliance in connection with its fraud claims.[23] The Second Circuit affirmed.[24]

Also, in June[25] and September 2005, Eugenia filed suit against the Debtors in New York State court to collect on the unconditional guaranty. Although the Debtors did not contest liability, they did contest the amount of damages being sought. Eventually, in July 2007, the New York State court entered a judgment in Eugenia's favor in the amount of roughly $10.7 million (the "Guaranty Judgment"),[26] which Eugenia claims as Debtors' damages against Defendants in these actions.[27] The Debtors appealed, but prior to oral argument, on September 30, 2008, Eugenia filed Involuntary Petitions against the Debtors in this Court.

On June 3, 2011, after this Court granted Eugenia standing to sue derivatively on behalf of Debtors,[28] Eugenia filed the instant Adversary Proceedings for breach of

---

[22] *In re AMC Investors, LLC*, 524 B.R 62, 67 (Bankr. D. Del. 2015).

[23] *See In re Eugenia VI Venture Holdings Ltd. Litigation*, 649 F.Supp.2d 105 (S.D.N.Y. 2008).

[24] *Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 F. App'x 197, 199 (2d Cir. 2010).

[25] Eugenia voluntarily dismissed the June 2005 lawsuit for lack of subject matter jurisdiction.

[26] Adv. Pro. 11-53217 D.I. 284, Miller Decl., Ex. 10 (Amended Judgment dated July 17, 2007).

[27] Adv. Pro. 11-52316 D.I. 1, ¶¶ 33, 45-56.

[28] *See* 08-12264 D.I. 79.

fiduciary duty and aiding and abetting fiduciary duty. The Defendants answered together and raised the affirmative defenses of statute of limitations, as well as claim and issue preclusion.[29] Plaintiffs then filed a motion for partial summary judgment as to these defenses.[30] On January 23, 2015, this Court issued an Opinion with respect to Plaintiffs' motion for partial summary judgment.[31]

### a.    This Court's January 23, 2015 Opinion[32]

In denying Plaintiffs' motion for partial summary judgment in its entirety, with respect to *res judicata*, this Court found that:

- The parties agree that the Second Circuit's grant of summary judgment in the AMC Computer litigation constitutes a final judgment on the merits.

- The prior and present actions are the same claim because both arise out of the same transaction, the alleged mismanagement of AMC Computer during the life of the Credit Agreement.

- Whether the parties are in privity is a genuine question of fact and more information would be necessary to determine the extent to which either the Debtors or Eugenia controlled the earlier litigation.[33]

---

[29] Adv. Pro. 11-52317 D.I. 44.

[30] Adv. Pro. 11-52317 D.I. 145.

[31] Adv. Pro. 11-52317 D.I. 180.

[32] *Id.*

[33] Although this Court found that there was a genuine dispute of material fact as to privity, the Court stated that it believed Eugenia suing on behalf of the Debtors as AMC Computer shareholders in these current actions is in privity with Eugenia suing as an AMC Computer shareholder in the Southern District of New York pursuant to the reasoning set forth in *Parkoff v. Gen. Tel. & Electronics Corp.*, 425 N.E.2d 820 (N.Y. 1981).

Next, in denying Plaintiffs' motion with respect to collateral estoppel, this Court found that:

- The Second Circuit's finding that AMC Computer was already insolvent when it entered into the Credit Agreement was both actually determined and necessary to the dismissal of Eugenia's claims for breach of fiduciary duty.

- The timing of AMC's insolvency is decisive because, "[i]f the company was already insolvent, then it is immaterial whether it was this set of defendants or the previous that was responsible for mismanaging AMC during the life of the Agreement."[34]

- Gibson, Dunn & Crutcher represented Debtors previously and represent Debtors now, which indicates that the Debtors do not question adequacy of legal representation.

- There is a genuine dispute as to whether Debtors have had a full and fair opportunity to represent their interests in the previous litigation.

- The same privity issue that the Court discussed with respect to *res judicata* is present with respect to collateral estoppel.

Lastly, in denying Plaintiffs' motion with respect to statute of limitations, this Court found that:

- Delaware's three-year statute of limitations is applicable to the breach of fiduciary duty claims.

---

[34] *In re AMC Investors, LLC*, 524 B.R. at 79.

- The limitations period runs from the date of the alleged harm, which is January 2003-May 2005 under the circumstances presented.

- Plaintiffs brought this action in June 2011, so, without a basis for tolling the statute of limitations, its claims are barred as untimely.

- Delaware does not recognize adverse domination or lack of standing as reasons to toll the statute of limitations.

- The record did not justify tolling the statute of limitations because it was clear that Eugenia knew about Defendants' conduct by June 2005, when it commenced litigation in the Southern District of New York.

Based on this Court's ruling with respect to the statute of limitations, the parties stipulated that Defendants were entitled to summary judgment dismissing the Complaint as untimely.[35] Thereafter, on September 30, 2015, this Court entered a final Order granting summary judgment in favor of Defendants on their statute of limitations defense.[36] On October 13, 2015, Plaintiffs appealed this Court's decision to the District Court.[37]

### b.    The District Court's Narrow Reversal and Remand

On June 22, 2016, the District Court issued an Opinion reversing and remanding this matter on "extremely limited" grounds.[38] More specifically, the District Court ruled

---

[35] Adv. Pro. 11-52317 D.I. 189-190.

[36] Adv. Pro. 11-52317 D.I. 201.

[37] Adv. Pro. 11-52317 D.I. 205.

[38] *Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings, LLC (In re AMC Investors, LLC)*, 551 B.R. 148, 155 (D. Del. 2016) ("This is an extremely limited holding.").

that this Court's "determination that none of Delaware's tolling doctrines are available to Debtors was incorrect to the extent that this determination was based solely on Eugenia's knowledge. Eugenia's knowledge is not imputed to the Debtors for purposes of the statute of limitations analysis."[39] According to the District Court, on remand, this Court should evaluate "when Debtors discovered facts constituting the basis for the breach of fiduciary duty claims, or the existence of facts sufficient to put Debtors on inquiry notice."[40]

The District Court expressed no opinion as to "whether summary judgment in favor of Defendants on the timeliness defenses may be proper based on Debtors' knowledge of facts constituting the basis for this cause of action, or may be proper on some other basis."[41] The District Court also expressed no opinion with respect to this Court's findings on the issues of *res judicata* and collateral estoppel.

Subsequently, the Defendants appealed the District Court's ruling to the Third Circuit Court of Appeals, which dismissed the appeal for lack of jurisdiction and remanded the Adversary Proceedings to this Court.[42] Thereafter, Defendants filed the within *Motion for Summary* Judgment *on Threshold Affirmative Defenses* and *Motion for*

---

[39] *Id.*

[40] *Id.*

[41] *See id.* ("The Court expresses no opinion as to whether summary judgment in favor of Defendants on the timeliness defenses may be proper based on Debtors' knowledge of facts constituting the basis for this cause of action, or may be proper on some other basis, including, but not limited to, the knowledge and standing of Eugenia's affiliated entity, Casita, to pursue litigation against the Defendants, and/or earlier opportunities Eugenia had to gain control of the Debtors, and/or the state and federal litigation in New York ….").

[42] *In re AMC Investors, LLC*, 2016 WL 9412513 (3d Cir. Oct. 19, 2016).

*Summary Judgment on the Merits*.[43] A hearing was held on March 31, 2021. At this time, the evidentiary record is complete, and this matter is ripe for determination.

## STANDARD OF REVIEW

"Summary judgment is a mechanism used to ascertain the existence of a genuine factual dispute between the parties that would necessitate a trial."[44] Federal Rule of Civil Procedure 56, made applicable to these proceedings through Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact …."[45] When considering a motion for summary judgment, the court views the facts in a light most favorable to the non-movant, and "draws all inferences in that party's favor."[46]

"When requesting summary judgment, the moving party must "put the ball in play, averring an absence of evidence to support the nonmoving party's case."[47] Once the moving party has met its burden of showing that there is no genuine dispute of material fact, the burden then shifts to the nonmovant to demonstrate the existence of a genuine

---

[43] Post-remand, and prior to the filing of these *Motions for Summary Judgment*, the parties were exchanging discovery. *See* Adv. Pro. 11-52317 D.I. 227, 231. Thus, although the Third Circuit Court of Appeals remanded these Adversary Proceedings on October 19, 2016, the Defendants did not file these *Motions for Summary Judgment* until October 2, 2020, and briefing was not complete until February 5, 2021. *See* Adv. Pro. 11-52317 D.I. 306.

[44] *In re FBI Wind Down, Inc.*, 614 B.R. 460, 472 (Bankr. D. Del. 2020) (internal citations omitted).

[45] Fed. R. Civ. P. 56(c).

[46] *In re FBI Wind Down, Inc.*, 614 B.R. at 473.

[47] *In re U.S. Wireless Corp., Inc.*, 386 B.R. 556, 559 (Bankr. D. Del. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

issue of material fact. To do so, the nonmovant must "supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." The same principles apply in a bench trial where the judge is the ultimate trier of fact."[48]

"If the opposition evidence is merely colorable or not significantly probative, summary judgment may be granted."[49] However, where the record could lead reasonable minds to draw "conflicting inferences, summary judgment is improper, and the action must proceed to trial."[50] Summary judgment is proper only where one reasonable inference or interpretation of the facts can be drawn in favor of the moving party. [51]

## ANALYSIS

### A.    Tolling Delaware's Statute of Limitations

"Equity follows the law and in appropriate circumstances will apply a statute of limitations by analogy."[52] Delaware recognizes a three-year statute of limitations for breach of fiduciary duty claims.[53] When a plaintiff files suit for breach of fiduciary duty more than three years from the date of the alleged wrong, that plaintiff's claims are time-

---

[48] *Id.*

[49] *In re Ashinc Corp.*, 629 B.R. 154, 174 (Bankr. D. Del. 2021).

[50] *Id.* (internal citations and quotations omitted).

[51] *Id.* (internal citations omitted).

[52] *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007); *see In re AMC Investors, LLC*, 524 B.R. at 80. ("Because breach of fiduciary duty claims are equitable claims bearing a close resemblance to … legal claims, a statute of limitations analysis is appropriate here.") (internal citations and quotations omitted).

[53] *Id.*

barred absent a basis for tolling Delaware's statute of limitations. Plaintiffs bear the burden of proving that a statute was tolled.[54]

There are three tolling doctrines recognized in Delaware: inherently unknowable injuries, fraudulent concealment, and equitable tolling.[55] Regardless of which theory is pursued, for all three, the statute of limitations "begins to run upon the discovery of facts constituting the basis for the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudent on inquiry which, if pursued, would lead to the discovery of such facts."[56] Put otherwise, "no theory will toll the statute beyond the point where the plaintiff was aware, or should have been aware, of facts giving rise to the wrong."[57]

### a.    Undisturbed Findings

As a preliminary matter, the District Court did not disturb this Court's findings (in fact the parties agree)[58] that Delaware's three-year statute of limitations applies to

---

[54] *Id.*

[55] *Id.* ("Under the doctrine of inherently unknowable injuries, the statute will not run where it would be practically impossible for a plaintiff to discover the existence of a cause of action. No objective or observable factors may exist that might have put the plaintiffs on notice of an injury, and the plaintiffs bear the burden to show that they were "blamelessly ignorant" of both the wrongful act and the resulting harm. Similarly, the statute of limitations may be disregarded when a defendant has fraudulently concealed from a plaintiff the facts necessary to put him on notice of the truth. Under this doctrine, a plaintiff must allege an affirmative act of "actual artifice" by the defendant that either prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth. Finally, the doctrine of equitable tolling stops the statute from running while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary.").

[56] *In re AMC Investors, LLC,* 524 B.R at 81.

[57] *In re Tyson*, 919 A.2d at 584.

[58] *See In re AMC Investors, LLC,* 551 B.R. at 152. ("The parties agree that Delaware's three-year statute of limitations for breach of fiduciary duty claims applies, and that the limitations period starts to run from the occurrence of the alleged wrong.").

Plaintiffs' breach of fiduciary duty claims and that the alleged wrong, i.e., Defendants' mismanagement of AMC Computer, occurred from January 2003-May 2005.

Further, it remains the case that Eugenia's lack of standing until June 3, 2011[59] is not a recognized basis to toll the statute of limitations in Delaware, and, that Delaware does not recognize the adverse domination doctrine.[60]   Accordingly, any arguments based on Eugenia's inability to obtain standing and the adverse domination doctrine are without merit and warrant no further discussion, as these arguments have already been decided by this Court and upheld on appeal.

Instead, the narrow issue before the Court with respect to the timeliness of Plaintiffs' claims is when the Debtors knew, or should have known, of the facts underlying the Complaints for purposes of determining whether to toll the statute of limitations.

### b.    Limited Issue on Remand

Because the alleged wrong here occurred between January 2003-May 2005 and the Complaints were not filed until June 3, 2011, the claims are time barred absent tolling of the statute of limitations.

---

[59] *See* 08-12264 D.I. 79. This Court granted Eugenia derivative standing on behalf of Debtors on June 3, 2011.

[60] *In re AMC Investors, LLC*, 551 B.R. at 154. ("As noted by this Court in *Marvel*, adverse domination is not a tolling doctrine recognized by Delaware…. As set forth in *Bren*, a plaintiff's lack of standing is not an independent basis to toll the statute of limitations either."); *see Marvel Entm't Group, Inc. v. Mafco Holdings, Inc. (In re Marvel Ent'mt Group, Inc.)*, 237 B.R. 58, 58 ("Because the court believes that Delaware's tolling mechanisms, in combination with the availability of shareholder derivative actions, already address the concerns that underlie the adverse domination doctrine, the court declines to recognize adverse domination as a viable tolling mechanism in Delaware."); *see also Bren v. Capital Realty Grp. Senior House., Inc.*, 2004 Del. Ch. LEXIS 20, 2004 WL 370214, at *5 (Del. Ch. 2004) ("[I]f the Court were to accept Bren's further argument that his cause of action did not arise until the expiration of the statute of limitations, it would effectively double the statute of limitations for breaches of fiduciary duty to creditors from three years to six.").

Accordingly, the issue to be determined by this Court on remand is "when the *Debtors* discovered facts constituting the basis for the breach of fiduciary duty claims, or the existence of facts sufficient to put *Debtors* on inquiry notice" of these claims.[61] As put by the District Court, the inquiry turns on a "plaintiff's ability to discover the claim."[62] Thus, according to this Court's understanding of the District Court's ruling, it is solely the knowledge of the Debtors, not Eugenia's, derivatively suing on behalf of the Debtors' estates, that is relevant to the statute of limitations analysis. With that background, the Court turns to the substance of its analysis.

### *Imputing Casita's Knowledge*

It is undisputed that Casita knew of the facts which make up the basis for the current breach of fiduciary duty claims by May 2005. However, whether Casita's knowledge may be imputed to both of the Debtors, specifically, to Investors II, is unclear. Nevertheless, the issue of imputing Casita's knowledge is not dispositive as the Court finds, *infra*, that the Debtors were directly on notice of the facts giving rise to these actions within the applicable statute of limitations period such that their claims are time-barred. Nonetheless, for purposes of completeness, the Court will discuss the issue of imputing Casita's knowledge, briefly.

---

[61] *Id.* at 155.

[62] *Id.* (Discussing that, under Delaware's tolling doctrines, the statute of limitations begins to run upon the discovery of facts constituting the cause of action or the existence of facts sufficient to put a reasonable person on notice of such facts which, if pursued, would lead to the discovery of such facts).

"Delaware law states that the knowledge of an agent acquired while acting within the scope of his or her authority is imputed to the principal."[63] "[I]t is the general rule that knowledge of an officer or director of a corporation will be imputed to the corporation."[64] "" This basic principle of agency law applies with equal force to LLCs."[65] However, "in a case where the agent's action is totally adverse to the interests of his principal, the law will not impute knowledge of the bad act to the principal …."[66]

Indeed, even Plaintiffs agree that "[i]nquiry notice can be imputed to an LLC only through a managing agent or member who is not himself a wrongdoer," and that the "statute of limitations runs against an LLC only once a blameless agent or member of the LLC has at least inquiry notice that the LLC has a claim."[67]

Notwithstanding Plaintiffs' argument that Glaser somehow obscured his role in the alleged fraud at AMC Computer,[68] the parties do not dispute that Glaser informed Mr. Hassels-Weiler, an innocent party, of the potential accounting fraud at AMC

---

[63] *ASB Allegiance Real Est. Fund v. Scion Breckenridge Managing Member, LLC*, 2012 WL 1869416 at *15 (Del. Ch. May 16, 2012), *judgment entered*, (Del. Ch. 2012), and *aff'd*, 68 A.3d 665 (Del. 2013).

[64] *Id.*

[65] *Id.*

[66] *In re Am. Int'l Grp., Consol. Derivative Litig.*, 976 A.2d 872, 891 n. 50. (Del. Ch. 2009).

[67] Adv. Pro. 11-52317 D.I. 291, pg 19.

[68] Assuming *arguendo* that Glaser did obscure his role in the alleged fraud at AMC Computer, he nevertheless informed Hassels-Weiler of potential accounting fraud on May 5, 2005. Accordingly, even if he suggested that he was getting to the bottom of what happened after the fact, it remains the case that, as of May 5, 2005, Hassels-Weiler was fully aware of the potential issues at AMC Computer which prompted Eugenia to declare a default under the Credit Agreement the next day. Thus, Glaser's actions after informing Hassels-Weiler of the potential fraud are irrelevant for purposes of tolling the statute of limitations under the "inherently unknowable injury" doctrine. The injury – potential fraud at AMC Computer – was, or should have been, known at the time Eugenia declared a default.

Computer upon which the claims at issue are based on May 5, 2005.[69] Since Mr. Hassels-Weiler was not a wrongdoer,[70] and undisputedly was an agent of[71] and controlled Casita,[72] and since Casita is a member of Investors, it logically follows that Mr. Hassels-Weiler's knowledge is imputed to Casita,[73] and Casita's knowledge is thereby imputed to Investors.[74]

However, this issue is more complicated with respect to Investors II. Casita, which the Court already established knew of the facts underlying the claims at issue in May 2005 (through Hassels-Weiler), is the majority shareholder of MapleWood Offshore[75], which is a member of Investors and Investors II.  Thus, the issue comes down to whether a majority shareholder's knowledge may be imputed to a private equity fund.[76] If so, then

---

[69] Adv. Pro. 11-52317 D.I. 312, ¶ 14.

[70] *See* Adv. Pro. 11-52317 D.I. 291, pg. 19.

[71] *See id.* at pg. 23 ("Glaser gave *Casita's agent Hassels-Weiler* …."); *See also In re Color Tile Inc.*, F.3d 508, 513 (3d Cir. 2007) ("[K]nowledge of an agent is ordinarily to be imputed to the principal").

[72] Adv. Pro. 11-52317 D.I. 312, ¶ 9.

[73] *See Am. Int'l Grp. Consol. Derivative Litig.*, 976 A.2d at 889. ("[A] corporation must act through its human agents….").

[74] *In re AMC Investors, LLC*, 551 B.R. at 151, n.2 ("[I]f Casita was a member of Investors with knowledge of the misconduct in 2005, then it appears that judgment against Eugenia in regards to Investors would be appropriate because the statute of limitations would not have been tolled").

[75] Adv. Pro. No 11-52317 D.I. 282, pg. 22 ("Casita is the majority shareholder of MapleWood Equity Partners (Offshore) Ltd.").

[76] Defendants' *Reply in Support of Motion for Summary Judgment on Threshold Affirmative Defenses* erroneously states that Casita is a "member" of MapleWood Offshore, *see* Adv. Pro. 11-52317 D.I. 302, pg. 7 ("Casita's knowledge is imputed to MapleWood Offshore because Casita is indisputably a member of MapleWood Offshore; likewise, MapleWood Offshore's knowledge is imputed to Investors II because MapleWood Offshore is indisputably a member of Investors II."). This seems to be factually and legally incorrect because MapleWood Offshore is a private equity fund and Casita is its shareholder, not its member. This is significant because members of an LLC are considered agents of an LLC, whereas shareholders are typically not considered agents.

18

Casita's knowledge would be imputed to MapleWood Offshore, and MapleWood Offshore's knowledge would likely be imputed to Investors II.

The parties have not briefed this issue and the Court is unaware of case law addressing whether a majority shareholder's knowledge may be imputed to a private equity fund. It is well settled that Delaware corporate law treats majority shareholders akin to directors.[77] The general rule is that a director's knowledge is imputed to the corporation because directors have the authority and ability to act on behalf of the corporation.[78] However, whether a majority shareholder's knowledge may be imputed to a private equity fund for similar reasons and, specifically, for purposes of a tolling the statute of limitations analysis, is unclear.[79]

Because the Court finds, *infra*, that the Debtors were directly on notice of the facts comprising these Complaints within the applicable statute of limitations, the Court need not determine whether a majority shareholder's knowledge may be imputed to a private equity fund.

### The New York Actions

Regardless and independent of whether Casita's knowledge may be imputed to the Debtors, when viewing the facts in a light most favorable to Plaintiffs, the undisputed

---

[77] *See Firefighters' Pension Sys. of City of Kansas City, Missouri Tr. v. Presidio, Inc.,* 251 A.3d 212 (Del. Ch. 2021) ("When a shareholder presumes to exercise control over a corporation, to direct its actions, that shareholder assumes a fiduciary duty of the same kind as that owed by a director to the corporation.").

[78] *Teachers' Ret. Sys. of La. V. Aidinoff,* 900 A.2d 654, 671 n. 23 (Del. Ch. 2006) ("[I]t is the general rule that knowledge of an officer or director of a corporation will be imputed to the corporation").

[79] *See* 18A Am.Jur.2d *Corporations* § 1444 (knowledge of individuals at a certain level within a corporation will be imputed to the corporation).

facts establish that the Debtors had direct knowledge of the facts underlying these breach of fiduciary duty claims by or around September 8, 2005, at the *very latest*.[80] The basis for this Court's finding is that Eugenia filed several lawsuits against these Debtors in New York premised on the very facts that encompass its current claims in order to recover on the Debtors' unconditional guaranty in connection with the Credit Agreement.[81]

Eugenia filed suit in the Southern District of New York against the Debtors on June 6, 2005 to recover on the unconditional guaranty on a breach of contract theory. However, on September 8, 2005, Eugenia voluntarily dismissed this lawsuit due to lack of subject matter jurisdiction.[82]

On the very same day, Eugenia filed another lawsuit in its individual capacity against the Debtors in New York Supreme Court by filing its motion for summary judgment in lieu of complaint.[83] That suit was also to recover on the guaranty. In that lawsuit, Eugenia claimed that, "[o]n May 6, 2005, representatives of AMC informed plaintiff that AMC had knowingly submitted false borrowing certificates," and that

---

[80] It is more likely that the Debtors were aware of the facts underlying these Adversary Proceedings in or around June – July, 2005, *see infra*. However, giving Plaintiffs the benefit of all reasonable inferences, the Court finds that everyone was aware of the facts underlying these actions by September 8, 2005, at the latest.

[81] Adv. Pro. 11-52317 D.I. 312, Ex.s J, K.

[82] *Eugenia Venture IV Holdings Ltd. v. AMC Investors, LLC, & AMC Investors II, LLC*, Case No. 05-CV-5362 (S.D.N.Y.).

[83] Adv. Pro. 11-5317 D.I. 312, Ex. K (*Eugenia VI Venture Holdings Ltd. v. AMC Inv'rs, LLC & AMC Inv'rs II, LLC*, Index No. 603193/05 (N.Y. Sup. Ct.)).

"[u]pon learning of AMC's fraud, … plaintiff notified AMC of its default of the Credit Agreement …."[84]

The Debtors "conceded liability but opposed the amount of damages sought by Eugenia,"[85] thereby demonstrating their active participation in the lawsuit.[86] The New York Court eventually awarded Eugenia an amended judgment of approximately $10.7 million in connection with its lawsuit against the Debtors in July 2007.[87] The Debtors appealed this judgment on August 17, 2007, but, several days prior to oral argument, Eugenia filed Involuntary Petitions against the Debtors.

Plaintiffs argue that the Debtors were not on notice of the facts comprising this lawsuit by way of the New York actions because the facts underlying those actions were to recover on the guaranty, fraud, or breach of fiduciary duties owed to AMC Computer, whereas this action is for breach of fiduciary duties owed to the Debtors. Although that may be true, the law does not require the facts, parties, or legal theories to be identical for purposes of determining whether to toll the statute of limitations. Instead, the law simply

---

[84] *Id.*

[85] *See In re AMC Investors, LLC*, 406 B.R. at 481.

[86] Although Plaintiffs argue that there is "no support … for the contention that corporate entities are automatically imbued with knowledge of the allegations made against them," Adv. Pro. 11-52317 D.I. 291, pg. 30, this is not the proposition the Court is stating. Rather, the Court relies on the fact that the Debtors were active participants in the September 8, 2005 New York state action, and were, thus, obviously aware of the facts underlying that action. Were it the case that, for example, Eugenia received its judgment by way of default and the Debtors were never served with process or not on notice of the New York State action, the Court would likely find that the Debtors were *unaware* of the facts underlying this action at that time. However, that is not the case. It is clear the Debtors knew of the facts underlying the New York action in September 2005 since they actively participated in that litigation.

[87] *See In re AMC Investors, LLC*, 406 B.R. at 478. The Debtors appealed a portion of this judgment, but while their appeal was pending, Eugenia filed Involuntary Petitions for relief under Chapter 7 of the Bankruptcy Code.

asks whether the Debtors were on notice of "the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts."[88]

The relevant facts here are that Eugenia declared a default under its Credit Agreement with AMC Computer after being alerted of potential accounting fraud there in May 2005. Those facts are sufficient to put Debtors, as shareholders of AMC Computer and guarantors of AMC Computer's obligations to Eugenia under the Credit Agreement, on notice of potential breach of fiduciary duty claims that they themselves may have against their directors or officers for causing them to enter into the guaranty on behalf of an entity that was alleged to have been insolvent and engaging in fraudulent activities.[89]

Moreover, the Debtors were named as Third-Party Defendants on July 6, 2005 in connection with Eugenia's lawsuit against Surinder, Narinder, and Parvinder Chabra, and AMC Computer, in the Southern District of New York.[90] The Third-Party Complaint had the same factual predicate as these proceedings.[91]

It is clear that the New York lawsuits and this lawsuit stem from the alleged fraud that occurred at AMC Computer, Eugenia's declaration of default under the Credit Agreement, and Eugenia's mission to monetarily recover as a result of that default. The

---

[88] *In re AMC Investors, LLC*, 524 B.R at 81.

[89] *See* Adv. Pro. 11-52317 D.I. 291, pg. 6 ("[I]f AMC Computer had not breached the Credit Agreement by committing fraud, the Debtors never would have been exposed on the Guaranty ….").

[90] *See* Adv. Pro. 11-5317 D.I. 312, Ex. G, ¶ 17-21.

[91] *See In re Fruehauf Trailer Corp.*, 250 B.R. 168, 189 (D. Del. 2000) ("Disclosure of wrongful acts in publicly filed documents … is deemed to put a plaintiff on inquiry notice of the wrongful acts.").

facts in the Third-Party Complaint against the Debtors reveal that they were expressly put on notice of the existence of facts surrounding the current breach of fiduciary duty claims.

Accordingly, the Court finds that Debtors discovered, or should have discovered, the existence of facts to put them on inquiry notice of the basis of these lawsuits by September 8, 2005, at the latest.

### The Purported Tolling Agreement

The parties dispute the existence of a tolling agreement.   At the summary judgment stage, once the movant has produced evidence to show that the material facts are not at issue, the non-movant bears the burden of establishing the existence of a material issue of fact.[92] The Court finds that Plaintiffs have not met their burden of showing a genuine issue of material fact as to the existence of a tolling agreement.

Tolling agreements are governed by principles of contract law.[93] It is well-settled that every contract requires an offer and acceptance. "An offer is any display of willingness to enter into a contract on specified terms."[94] While an acceptance "results when a party expresses his or her intent to accept the offer, by word, sign, writing or act,

---

[92] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979) ("[T]he moving party initially bears the burden of showing that [no material issues of fact] are present. When a motion for summary judgment is supported by such a showing … the burden shifts to a non-moving party to demonstrate that there are material issues of fact.") (internal citations and quotations omitted).

[93] *In re Com. Fin. Servs., Inc.*, 294 B.R. 164, 170 (Bankr. N.D. Okla. 2003) ("Determining the validity of the Tolling Agreement requires consideration of basic principles of contract law.").

[94] *Id.*

communicated or delivered to the person making the offer."[95] "It is basic that overt manifestation of assent … controls the formation of a contract."[96] Once an offer is accepted, there is a binding contract.

On the other hand, mere negotiations do not form a contract because negotiation is not acceptance. Although agreements on certain provisions may be made (and often are) through the negotiation process, they are treated as "provisional and tentative."[97]  It is only when "all of the terms that the parties themselves regard as important have been negotiated that a contract is formed."[98] When parties have not finished their negotiations, they have not formed a contract. This is because, "[i]n order to constitute an acceptance, a response to an offer must be on identical terms as the offer …." A response to an offer that is not on the terms set forth by the offeror constitutes a rejection of the original offer and a counteroffer."[99]

First and foremost, this particular litigation has been ongoing since June 3, 2011. Accordingly, the parties have had nearly *eleven years* to exchange discovery with respect to a controlling tolling agreement.[100] Discovery is over, and the evidentiary record before the Court merely establishes that there were drafts and negotiations back and forth with regards to a tolling agreement, but that one was never agreed upon.

---

[95] *Id.* (internal citations and quotations omitted).

[96] *Leeds v. First Allied Connecticut Corp.*, 521 A.2d 1095, 1101 (Del. Ch. 1986).

[97] *Id.*

[98] *Id.* (citing *Corbin on Contracts* § 29 at 87-88 (1963)).

[99] *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1015 (Del. Ch. 2004).

[100] In fact, the Court required the production of certain privileged materials in this matter, including the draft tolling agreements.

Defendants point the Court to Mr. Miller's Affidavit,[101] which states that, "[w]hile the attorneys to various defendants in the past litigation discussed entering into a potential tolling agreement as part of our defense of that litigation during February and March 2006, that draft agreement was never executed." Accordingly, while Mr. Miller acknowledges (in a sworn statement) that there were ongoing negotiations with respect to a tolling agreement, one was ultimately never finalized.

On the other hand, at oral argument, the Plaintiffs pointed the Court to various confidential email exchanges attempting to establish that the parties had come to an agreement with respect to tolling the statute of limitations.[102] Based on the Court's thorough review of those exchanges, it seems that a tolling agreement with respect to the claims at issue was never mutually agreed to. Indeed, the email exchanges reference "first draft[s] or "drafts,"[103] versions with "Peter's comments to Jt Defense and Tolling Agreement,"[104] a draft for "final review agreed to among *counsel*," on February 17, 2006,[105] which was, in fact, not a final version of the proposed tolling agreement because, between February 23 and March 2, 2006, there were still communications back and forth

---

[101] Adv. Pro. 11-52317 D.I. 148; 3/31/21 Hearing Transcript ("Hr'g Tn.") 25:1-9.

[102] Adv. Pro. 11-52317 D.I. 293, Ex. 16.

[103] *Id.*, Ex. 16, 2/8/06 Emails from Miller.

[104] *Id.*, Ex. 16, 2/17/06 Emails from Miller.

[105] *Id.*

discussing revisions that needed to be made.[106] In fact, there are communications discussing revisions to a tolling agreement in 2007.[107]

While the Court acknowledges an email exchange in February 2009 where Mr. Miller states that the parties "definitely agreed to a standstill," that same email exchange references that the standstill was with respect to claims for "indemnification and contribution," not claims for breach of fiduciary duty.[108]

Although Plaintiffs argue that there is a question of material fact as to whether the parties entered into an oral tolling agreement, the Court disagrees. This situation is somewhat akin to that of *Columbia Pictures*,[109] where the parties were engaged in ongoing settlement negotiations over such time that the plaintiff's claims were becoming time barred. There, the plaintiff relied on equitable estoppel in an attempt to toll the statute of limitations and argued that it had relied on an oral statement made by defendants' general counsel that the statute of limitations would not be invoked.

In rejecting the plaintiff's argument that a verbal tolling agreement was reached, the Court focused on the fact that the parties were sophisticated business entities represented by counsel and could have directed counsel to obtain a signed tolling agreement. The Court noted that there was no evidence that such a conversation ever

---

[106] *Id.*, Ex. 16, 2/23/06 Email and Fax; 2/24/06 Email from Kavanaugh; 3/2/06 Email from Kavanaugh.

[107] *Id.*, Ex. 17, 3/9/07 Email from Miller.

[108] *Id.*, Ex. 16, 2/3/09 Email Exchange Between Miller and Motzenbecker.

[109] *Columbia Pictures Indus., Inc. v. Persky-Bright Ord.*, 1993 WL 497845 at *2 (S.D.N.Y. Dec. 2, 1993).

occurred or that the plaintiff relied on that representation in deciding not to sue. Also, the parties could not recall when such conversation occurred.

Here, there is similarly no evidence that there was ever a verbal tolling agreement with respect to the claims at issue. Instead, what is shown is that sophisticated parties, represented by counsel, were engaged in extensive negotiations back and forth with numerous revisions, red-lines, and the like, with regards to a tolling agreement. However, there is no evidence that a final agreement, oral or written, was ever reached. What the Court does have, on one side, is a sworn statement by defense counsel that a final tolling agreement was never finalized, and drafts and revisions of a purported tolling agreement on the other side.

In sum, the evidentiary record shows only that there were ongoing negotiations, offers, and counteroffers, between sophisticated parties with respect to a tolling agreement, but that one was never mutually agreed to. There are no emails or evidence of a "final" version of the tolling agreement between the parties, none of the draft agreements are signed by any party, counsel for the Debtors conceded that he did not "have an executed copy,"[110] and there is no evidence to suggest that the parties entered into an oral tolling agreement with respect to the claims at issue. At the most, viewing the facts in a light most favorable to Debtors, the parties *may* have had an oral tolling

---

[110] Hr'g Tn. 58:22-23.

agreement with respect to indemnification and contribution claims, as referenced in the February 2009 emails.[111]

### Equitable Tolling

Plaintiffs argue that this Court should toll the statute of limitations for the Defendants' post-September 2005 acts and because the Debtors relied on Glaser, who pretended to be innocent in the alleged fraud at AMC Computer.

More specifically, Plaintiffs argue that the Defendants breached fiduciary duties to the Debtors by delaying the ability of the Debtors' creditors to bring a derivative action. To support their position, the Plaintiffs point to the Defendants' efforts to appeal the March 2006 judgment Eugenia initially received against the Debtors and to Defendants' efforts to dismiss the Debtors' Involuntary Petitions. Plaintiffs also argue that "the Debtors needed to rely on Glaser, who was holding himself out as blameless, [while he] was in fact working towards his own personal profit."[112]

In Delaware, courts will employ equitable tolling following a breach of fiduciary duties where manifest justice would otherwise result. "[T]he doctrine of equitable tolling stops the statute [of limitations] from running while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary."[113] Delaware courts may also equitably toll the statute of limitations "where the plaintiff in some extraordinary way has been

---

[111] The Court expresses no opinion as to whether the parties did, in fact, have an oral tolling agreement with respect to indemnification and contribution claims and whether such agreement would be subject to the Statute of Frauds or other contractual defenses.

[112] Adv. Pro. 11-52317 D.I.291, pg. 24.

[113] *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 813 (Del. Ch. 2009) *aff'd sub nom., Teachers' Ret. Sys. Of Louisiana v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011).

prevented from asserting his or her rights."[114] If equitable tolling applies, "the statute of limitations is tolled until … [p]laintiffs were objectively aware of the facts giving rise to the wrong, i.e., on inquiry notice."[115]

First, while Plaintiffs argue that the Debtors were left to rely on Glaser, who was personally profiting from the alleged fraud at AMC Computer, the Court is left puzzled as to *what* the Debtors were relying on. Defendant Glaser informed Hassels-Weiler that there was potential fraud at AMC Computer in May 2005, which caused Eugenia to declare default under the Credit Agreement. At that point, regardless of how Glaser was painting the picture, innocent or not, Hassels-Weiler was put on notice of potential fraud,[116] and the Debtors, as guarantors of AMC Computer's obligations, should have been aware of the facts underlying this litigation, given that Eugenia's declaration of default exposed them to liability.

Moreover, when Hassels-Weiler started filing lawsuits in June 2005, the Debtors were or should have been aware of Glaser's role, given the allegation that Glaser controlled AMC Computer, which was allegedly submitting false borrowing base certificates.[117] Indeed, Hassels-Weiler caused Eugenia to sue Glaser derivatively on behalf

---

[114] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (internal citations omitted).

[115] *In re Am. Int'l Grp., Inc.*, 965 A.2d at 813 (citing *In re Dean Witter P'ship Litig.*, 1998 WL 442456 at *6 (Del. Ch. July 17, 1998)).

[116] *See* Adv. Pro. 11-52317 D.I. 291, pg. 23 ("As an agent of Casita, a member of AMC Investors, Hassels-Weiler was entitled to rely on Glaser, AMC Investors' manager ….").

[117] *In re: IH 1, Inc. Miller v. Kirkland & Ellis LLP*, 2016 WL 6394296 at *17 (Bankr. D. Del. Sept. 28, 2016) ("Delaware courts have consistently rejected equitable tolling when the facts underlying the claim were disclosed in publically filed documents.") (internal citations and quotations omitted).

of AMC Computer on August 16, 2005 based on the alleged fraud at AMC Computer.[118] Since it has been alleged that Glaser, among others, controlled both AMC Computer and the Debtors, it would follow that Debtors would be aware of Glaser's role when he was sued in connection with the alleged fraud at AMC Computer.[119]

Also, none of the post-September 2005 acts which the Plaintiffs point to warrant any equitable tolling of the statute of limitations, especially when the Defendants offered to turn over the equity interests of both Debtors to Eugenia in 2005 (thereby giving Eugenia control over the Debtors),[120] and when Eugenia could have forced the Debtors into bankruptcy once it received its judgment in 2006 (as amended in 2007) within the applicable limitations time frame.

Plaintiffs also argue that the Debtors could not have been put on notice until the Guaranty Judgment was entered against them in July 2007 or, alternatively, until "sometime after September 2005, when payments to the AMC Computer lockbox finally stopped."[121] However, it is well-settled that a claim "accrues at the moment of the wrongful act … not when the harmful effects of that act are felt."[122] Thus, although the Debtors' were not adjudged liable until the Guaranty Judgment, and payments to the lockbox did not stop until after September 2005, the Debtors were nonetheless already

---

[118] Adv. Pro. 11-52317 D.I. 312, Ex. H (*Eugenia VI Venture Holdings v. Glaser, et al.* Case No. 05- CV-7262 (S.D.N.Y.)).

[119] Adv. Pro. 11-52317 D.I. 1, ¶ 1 ("The defendants managed the Debtors and effectively ran Computer.").

[120] *See* Adv. Pro. 11-52317 D.I. 265, ¶¶ 15-17, *see also* Letter Dated June 6, 2005 from Klinghoffer to Karlan.

[121] Adv. Pro. 11-52317 D.I. 291, pg. 21.

[122] *In re Coca-Cola Enters., Inc.*, WL 3122370 at *5 (Del. Ch. Oct. 17, 2007).

exposed to liability and, thus, their claims accrued, at the time Eugenia declared a default under the Credit Agreement.

Even were that not the case, Eugenia filed a lawsuit against these Debtors on June 6,2005 to recover on the guaranty based on the same factual predicate. Thus, the Debtors cannot claim that their risk of ever being exposed on the guaranty was slim or unknown until after September 2005 when they were already named as defendants in a suit by Eugenia to recover on the guaranty.[123] Such an argument is nonsensical.

For all the foregoing reasons, the Court finds that there is no basis upon which to toll the statute of limitations[124], as the Debtors were, or should have been, aware of the facts encompassing these lawsuits by September 8, 2005, at the very latest, and there was never a mutually agreed-upon controlling tolling agreement.

In sum, because the alleged wrong occurred by May 2005, these Complaints were not filed until June 3, 2011, and there is no basis to toll the statute of limitations, Plaintiffs' claims are time-barred.[125]

---

[123] Adv. Pro. 11-52317 D.I. 291, pg. 21-22. ("Although Eugenia filed a complaint against the Debtors on June 6, 2005, substantial amounts of money continued to be paid into the lockbox through September 2005, reducing AMC Computer's indebtedness and, in turn, the Debtors' risk of ever being exposed on the guaranty.").

[124] Since the Debtors were on notice of the pertinent facts by September 8, 2005, and the Complaints were not filed until June 3, 2011, none of Delaware's three tolling doctrines would apply to save the Debtors' Complaints from being time barred. Accordingly, they will not be discussed in further detail.

[125] Because the Court finds that September 8, 2005 is the very latest that Debtors could have known of the facts underlying this lawsuit, 11 U.S.C. § 108(a) is inapplicable (given that Eugenia filed the Involuntary Petitions on September 30, 2008) and will not be discussed.

**B.      Res Judicata**

Independent of the foregoing, *res judicata* bars the Plaintiffs' claims for the reasons stated in the Court's January 23, 2015 Opinion, as well as for the reasons stated herein.

The purpose of the doctrine of *res judicata* is "to promote finality."[126] Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[127]

Under New York law, [128] *res judicata* is an affirmative defense if: 1) the earlier decision was a final judgment on the merits; 2) plaintiffs in both suits are the same or in privity; and 3) the claims raised are the same.[129]

**a.      Law of the Case**

At the outset, it is imperative to note that certain findings the Court made in its January 23, 2015 Opinion are law of the case and will not be revisited herein. Accordingly, the only issue left for this Court to decide with respect to *res judicata* is whether the element of privity is met.

---

[126] *In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 594 (Bankr. S.D.N.Y. 2017)

[127] *Penthouse Media Grp., Inc. v. Pachulski Stang Ziehl & Jones LLP*, 406 B.R. 453, 458 n. 40 (S.D.N.Y. 2009) (citing *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621 (2d Cir.2007)).

[128] *In re AMC Investors, LLC*, 524 B.R at 70. ("As the earlier action came into the District Court under diversity jurisdiction, the parties agree that New York preclusion law governs.").

[129] *Penthouse Media Grp., Inc.*, 406 B.R. at 458.

Put simply, the law of the case doctrine "requires that matters previously ruled upon by the same court should be put to rest."[130] Otherwise stated, "[u]nder the law of the case doctrine, once an issue has been decided, parties may not relitigate that issue in the same case[;]"[131] instead, "that decision should continue to govern the same issues in subsequent stages of the same case."[132]  However, the doctrine does not "act as an absolute bar on re-litigation (in contrast to the doctrines of claim and issue preclusion). Rather, the law of the case doctrine merely directs the court's discretion not to rehear matters ad nauseam."[133]

In the case at bar, this Court has already found that two elements of the *res judicata* test have been satisfied. Specifically, the Court found (and the parties never disputed) that the Second Circuit's affirmance of the Southern District of New York's grant of summary judgment in the AMC Computer litigation constitutes a final judgment on the merits.[134] Similarly, the Court already found that "the prior and present actions clearly arise out of the same transaction."[135]

---

[130] *In re Broadstripe, LLC*, 435 B.R. 245, 255 n. 34 (Bankr. D. Del. 2010) (citing *Odyssey Partners v. Fleming Co.*, 1998 WL 155543 at *1) (Del. Ch. Mar. 27, 1988)).

[131] *Id.*

[132] *Id.*

[133] *Id.* at 255, n. 38.

[134] *In re AMC Investors, LLC*, 524 B.R at 71. ("Here, the parties agree that the Second Circuit's grant of summary judgment in the AMC Computer litigation constitutes a final judgment on the merits.").

[135] *Id* at 76.

While the Court's previous Opinion specifically mentioned that it was not finding that Defendants were entitled to judgment on any of the elements of *res judicata*,[136] this is because it was ruling on <u>Plaintiffs'</u> *Motion for Summary Judgment* at the time.[137] However, nothing warrants changing the Court's prior findings that "[b]oth [the prior and present actions] focus on the alleged mismanagement of AMC Computer during the life of the Credit Agreement," and that "Plaintiff here pleads the same conduct – self dealing, lack of ordinary corporate governance, and accounting improprieties – as in the earlier case." Accordingly, now, in ruling on <u>Defendants'</u> *Motion for Summary Judgment,* the Court finds that the Defendants are entitled to judgment on both the "final judgment on the merits" and the "same claim" prongs of *res judicata.*

### b.    Privity

In light of the foregoing, the only element of *res judicata* that warrants discussion is whether there is privity among the parties. For the following reasons, the Court finds that the element of privity is satisfied such that *res judicata* acts as a bar to the Plaintiffs' claims.

In its January 23, 2015 Opinion, this Court engaged in a thorough analysis of what New York courts evaluate when determining the issue of privity. It noted that, "privity does not have a single well-defined meaning. Rather, privity is an amorphous concept

---

[136] *Id*. at 77, n. 74.

[137] Otherwise stated, the Court was determining whether Plaintiff was entitled to a ruling that *res judicata* <u>did not</u> apply. Therefore, the Court was not making any findings as to whether *res judicata* <u>did</u> apply.

not easy of application."[138] Then, the Court went on to analyze the facts of this case under different tests used in New York courts.[139] To that end, the Court explained that the issue of privity under the circumstances presented here can be looked at under two different lenses.

On one hand, Eugenia has been acting on its own behalf despite filing suit derivatively; first, on behalf of AMC Computer; second, on behalf of the Debtors currently. The Court reasoned that the practical reality is that Eugenia seeks to recover on its $10.7 million judgment. Thus, under that scenario, Eugenia "is in privity with … Eugenia."[140]

On the other hand, looking at each action as truly derivative, the Court found that there is privity between AMC Computer (on whose behalf Eugenia filed suit derivatively in New York) and the Debtors (on whose behalf Eugenia filed suit derivatively here) under New York's "totality of the circumstances" test and under the test which asks, "whether a plaintiff's interests were represented in the earlier action."[141]

---

[138] *In re AMC Investors, LLC*, 524 B.R. at 70 (citing *Buechel v. Bain*, 766 N.E.2d 914, 920 (N.Y. 2001)) (internal quotations and citations omitted).

[139] In concluding its analysis, the Court found that there was a material issue of genuine fact as to whether the "alternative" test of privity was satisfied, that is, whether Debtors or Eugenia controlled the prior litigation.

[140] *In re AMC Investors, LLC*, 524 B.R. at 74.

[141] *Id*. at 75-77. As for the totality of the circumstances test, the Court found that Eugenia itself emphasized the link between the Debtors and AMC Computer by including facts in its Complaint that show the Debtors were shareholders of and controlled AMC Computer. Under the test that asks whether a plaintiff's interest was represented in the earlier action, the Court found that, "as shareholders, Debtors' interest in the present case is to recover for the alleged mismanagement and eventual collapse of AMC Computer". Since Eugenia had previously brought suit as a shareholder for the alleged mismanagement of AMC Computer, "[b]oth actions were brought to vindicate the interests of AMC Computer shareholders."

However, the Court found a genuine issue of material fact as to the "alternative" test, which focuses on whether a party, though not formally involved, nevertheless exercised control over the earlier litigation. Specifically, the Court found that "the extent to which either the Debtors or Eugenia controlled the earlier litigation," was unclear and that more information would be needed about both Eugenia's and the Debtor's involvement with the prior litigation.[142]

The parties have exchanged additional discovery after this Court issued its January 23. 2015 Opinion, and that information is helpful to the very issue the Court left open – the Debtors and Eugenia's involvement in the New York AMC Computer litigation. It has become apparent that Mr. Hassels-Weiler acted on behalf of Eugenia (acting derivatively on behalf of AMC Computer) and exerted control over the previous action, and also controls these current actions.

Specifically, Mr. Hassels-Weiler testified that he made the decision to file the previous lawsuits in 2005 and that he made the decision to file the within lawsuit.[143] Moreover, Mr. Hassels-Weiler used the same counsel in this and the prior proceedings – Gibson, Dunn & Crutcher LLP.[144] Accordingly, it is clear that the same party – Mr. Hassels-Weiler – controlled both the previous and current litigation, controlled the

---

[142] *Id.* at 76.

[143] *See* EHW Tr. at 57:22-58:24, 60:8-12, 86:17-20.

[144] *See Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 317 N.Y.S. 2d 315, 265 N.E.2d 739, 743 (1970) (explaining that privity extends to "those who control an action although not formal parties to it."); *See also Green v. Santa Fe Industries, Inc.*, 514 N.E,2d 105, 108 (N.Y. 1987) (explaining that it is significant, for purposes of privity, that two actions were prosecuted by the same people through the same law firm).

litigation through the same counsel, and that his high level control of both litigations is sufficient to satisfy New York's alternative test of privity.

Accordingly, consistent with the foregoing, the claims here are barred under principles of *res judicata*.

### C.      Collateral Estoppel

Lastly, for the reasons stated herein, the Court finds that the doctrine of collateral estoppel bars the Plaintiffs from relitigating the issue of AMC Computer's insolvency, which is fatal to their breach of fiduciary duty claims.

Under New York law, "[c]ollateral estoppel, or issue preclusion, precludes a party from relitigating in a subsequent proceeding or action an issue that was raised in a prior action or proceeding and decided against that party or those in privity."[145] Collateral estoppel applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action."[146] "Finally, a prerequisite to collateral estoppel is that both actions involve the same parties or their privies. The analysis of privity under collateral estoppel is the same as under *res judicata*."[147]

It is the party "seeking the benefit of collateral estoppel," who has the "burden of demonstrating the identity of issues, whereas the party attempting to defeat its

---

[145] *Bruno v. Bank of New York*, 172 A.D.3d 992, 101 N.Y.S. 3d 124, 127 (2019) (citing *SSJ Dev. of Sheepshead Bay I, LLC v. Amalgamated Bank*, 123 A.D.2d 674, 676, 10 N.Y.S.3d 105 (2015)).

[146] *Id.*

[147] *In re AMC Investors, LLC*, 524 B.R. at 79

application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action."[148]

### a.    Law of the Case

Similar to the *res judicata* discussion, certain findings have previously been made with respect to elements of collateral estoppel and will not be revisited herein. Specifically, this Court's January 23, 2015 Opinion explained that the Second Circuit made a factual finding that AMC Computer was already insolvent when it entered the Credit Agreement, and that this finding was "actually determined" and "necessary" to the Court's dismissal of Eugenia's breach of fiduciary duty claims.[149]

Accordingly, the Court reasoned that "[i]f the company was already insolvent, then it is immaterial whether it was this set of defendants or the previous that was responsible for mismanaging AMC [Computer] … [t]he bottom line is that, as decided by the Second Circuit, AMC's insolvency predated the Agreement…. Thus, the problem of causation and damages persists."[150]

Therefore, the first element of collateral estoppel – that is – identity of issue which was actually determined and necessary, is now law of the case and will not be rehashed.

Also, given the Court's discussion and findings with respect to privity in the *res judicata* context, and given that the same analysis applies to privity in the collateral estoppel context, the Court will adopt its findings and conclusions and will not re-discuss

---

[148] *Bruno*, 101 N.Y.S. 3d at 127.

[149] *In re AMC Investors, LLC*, 524 B.R. at 79.

[150] *Id.*

the issue of privity herein. The element of privity is satisfied for the same reasons articulated *supra*.

### b.    Whether the Debtors Have Had Their Day in Court

As to whether the Plaintiffs have had a full and fair opportunity to litigate the issue of AMC Computer's insolvency, this Court found that there was "a genuine dispute as to whether Debtors have had their day in court."[151]

That being said, the Court found that "[m]ost of the factors enunciated in *Schwarts v. Public Admr. of Bronx Co.*[152] come out in favor of Defendants,"[153] but that the Defendants themselves pointed to "[s]ignificant fact discovery [that] remaine[d] outstanding," such that summary judgment was inappropriate at that time.[154]

As mentioned previously, the parties have exchanged additional discovery since this Court rendered its January 23, 2015 Opinion. That additional discovery has revealed that Mr. Hassels-Weiler, who controls this litigation, has controlled all the previous New York actions, including the action that resulted in the Second Circuit's 2010 affirmance. Further, the Plaintiffs do not "contend that [its counsel] … provided inadequate

---

[151] *Id.* at 80.

[152] 246 N.E.2d 725, 729 (N.Y. 1969). The nine *Schwartz* factors are: the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law, and foreseeability of future litigation.

[153] *In re AMC Investors, LLC*, 524 B.R. at 79.

[154] *Id.* at 80, n. 91.

representation … in [this] proceeding" or in any of the prior proceedings related to this case.[155]

The fact that the same party and counsel that control this litigation controlled the prior litigation, taken together with the Court's findings that: (1) the amount involved in the New York action was significant and ensured that there was a "vigorous fight on the issue of liability,"; and (2) the same factual allegations in this proceeding were at the center of previous litigation, strongly suggest that the Plaintiffs did in fact have their day in Court and had the opportunity to contest the prior litigation.

Consequently, because the timing of AMC Computer's insolvency is critical to the Plaintiffs' breach of fiduciary duty claims (for purposes of causation and damages), it has already been determined that AMC Computer was insolvent at the time the parties entered into the Credit Agreement such that the parties are barred from relitigating this issue,[156] and because New York law requires more than "deepening insolvency," to demonstrate that a company has been damaged,[157] the Plaintiffs claims fail and Defendants are entitled to judgment as a matter of law.

---

[155] Adv. Pro. 11-52317 D.I. 265, ¶ 43.

[156] *See Eugenia VI Venture Holdings, Ltd.*, 370 F. App'x at 199. ("[A]t the time the parties entered the Credit Agreement, AMC was already insolvent. As a result, Eugenia cannot demonstrate that thereafter defendants-appellees' mismanagement rendered the corporation insolvent.").

[157] *See In re AMC Investors, LLC*, 524 B.R. at 68. (Discussing how the Southern District of New York found that Eugenia's breach of fiduciary duty claims fail as a matter of law because it could not prove damages, and, more specifically, because "deepening a company's insolvency does not, on its own, demonstrate that the company has been damaged.").

**CONCLUSION**

For all the foregoing reasons, Defendants' *Motion for Summary Judgment on Threshold Affirmative Defenses* is granted and the *Motion for Summary Judgment on the Merits* is moot. An order will be entered.